NITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONALD INGRASSELINO,

                        Plaintiff,

            v.                                      Case No. 1:25-cv-7980-VSB-HJR

MADISON SQUARE GARDEN
ENTERTAINMENT CORP. and JOHN
EVERSOLE, individually,

                        Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Shawn Patrick Regan
James J. La Rocca
Evan L. G. Weisberg
HUNTON ANDREWS KURTH LLP
200 Park Avenue, 52nd Floor
New York, New York 10166
Tel: (212) 309-1000
Fax: (212) 309-1100
sregan@hunton.com
jlarocca@hunton.com
eweisberg@hunton.com

Christopher M. Pardo
HUNTON ANDREWS KURTH LLP
60 State Street, Suite 2400
Boston, Massachusetts 02109
Tel: (617) 648-2800
Fax: (617) 433-5022
cpardo@hunton.com

*Attorneys for Defendants*

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

FACTS ................................................................................................................................. 3

    A.  Plaintiff was Hired by MSG after Working for MSG Affiliate, TAO. ....................... 3

    B.  Plaintiff's Age and Condition Were Known to MSG and Eversole. .......................... 3

    C.  Plaintiff Alleges That Others Who Did Not Suffer from Diabetes Were Not Treated Well By Eversole Either. ............................................................................... 4

    D.  Plaintiff Alleges That He Disagreed with MSG Business Decisions But Generally Does Not Allege That He Reported His Disagreement to Defendant Eversole. ..................................................................................................................... 5

        1.  Plaintiff,  a Shared Security Services Employee, Takes Issue with Providing Security Services. ................................................................... 5

        2.  Plaintiff Allegedly Makes Other Complaints Regarding MSG Security Practices. .................................................................................... 5

        3.  Plaintiff Did Not Like MSG's Use of Facial Recognition Technology, a Tool Common at Venues across the Country, and Other Technology. ....................................................................................... 6

        4.  Plaintiff Purportedly Raised Concerns about Eversole's Treatment of Other Employees and Restriction on the Use of Police Dogs. ................... 7

        5.  Plaintiff Alleges Other Disagreements with Management. ......................... 8

    E.  Plaintiff is Written Up In February 2024 after Not Performing His Duties Consistent With Expectations. ................................................................................... 9

    F.  Following Plaintiff's Write-Up, and Another Infraction, Plaintiff is Fired. ............. 10

    G.  MSG Conditioned Its Agreement to Mediate on the Quality of the Evidence Plaintiff Provided, and the Evidence Did Not Support Plaintiff's Claims. .............. 10

    H.  Plaintiff Files the Complaint. .................................................................................. 11

ARGUMENT ..................................................................................................................... 12

  I.    LEGAL STANDARD. ................................................................................................ 12

  II.   PLAINTIFF FAILS TO STATE A DISCRIMINATION OR RETALIATION CLAIM UNDER ANY LAW (FIRST AND SECOND CAUSES OF ACTION). ......... 12

    A.  Plaintiff Fails to State An Employment Discrimination Claim. ............................... 13

        1.  Plaintiff fails to state a claim for hostile work environment or discriminatory discharge. ......................................................................... 13

        2.  Plaintiff Fails to State an Accommodation Claim. .................................... 15

B.  Plaintiff Fails to State a Retaliation Claim. .............................................. 16

C.  Plaintiff Fails to State a Claim for Aiding and Abetting Discrimination. ................. 17

III.  PLAINTIFF FAILS TO STATE A DISCRIMINATION CLAIM UNDER SECTION 201-D OF THE NEW YORK LABOR LAW (NYLL) (SEVENTH CAUSE OF ACTION). ............................................................................. 17

IV.  PLAINTIFF FAILS TO STATE A RETALIATION CLAIM UNDER SECTION 740 OF THE NYLL (THIRD CAUSE OF ACTION). ............................... 19

A.  Plaintiff Fails to State a Retaliation Claim Based on Plaintiff's Purported Complaints Regarding Provision of Security Services. ............................... 19

B.  Plaintiff Fails to State a Retaliation Claim Based on His Purported Concerns with the Technology MSG Used. .......................................................... 21

C.  Plaintiff Fails to State a Retaliation Claim Based on Alleged Concerns of Eversole's Treatment of Others. ...................................................... 22

D.  Plaintiff Fails to State a Retaliation Claim Based on Other Disagreements He Had, Most of Which Plaintiff Does Not Claim He Complained Of. ................. 23

E.  Plaintiff Fails to State a Retaliation Claim Based on Personal Disagreements He Had with Other Business Decisions about Which He Never Complained. ......... 23

V.  PLAINTIFF'S CONTRACT AND QUASI-CONTRACT CLAIMS FAIL. ................. 24

A.  Plaintiff Fails to State a Breach of Contract Claim (Fourth Cause of Action). ......... 24

B.  Plaintiff Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Sixth Cause of Action). ....................................... 25

C.  Plaintiff Fails to State a Promissory Estoppel Claim (Fifth Cause of Action). ......... 25

VI.  PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT OR CONVERSION. ......................................................................... 26

A.  Plaintiff Failes to State a Claim for Unjust Enrichment (Eighth Cause of Action). ............................................................................... 26

B.  Plaintiff Fails to State a Conversion Claim (Ninth Cause of Action). ................. 27

CONCLUSION ................................................................................. 28

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                          **Page(s)**

*511 9th LLC v. Credit Suisse USA, Inc.*,
   69 A.D.3d 497 (N.Y. App. 1st Dep't 2010)............................................................................26

*Acala v. Mintz Levin Cohn Ferris Glovsky & Popeo, P.C.*,
   201 N.Y.S.3d 202 (N.Y. App. 2d Dep't 2023) .....................................................................14

*Adams v. Equinox Holdings, Inc.*,
   2020 WL 5768921 (S.D.N.Y. Sept. 28, 2020)......................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................................12

*C.C. v. Google, LLC*,
   2025 WL 1938809 (S.D.N.Y. July 15, 2025) .......................................................................17

*Carrington v. City of N.Y. Hum. Res. Admin.*,
   223 N.Y.S.3d 518 (N.Y. Sup. Ct. 2024) ...............................................................................14

*Cheng v. N.Y. Tel. Co.*,
   64 F. Supp. 2d 280 (S.D.N.Y. 1999), *aff'd* 225 F.3d 645 (2d Cir. 2000) .............................18

*Fenner v. News Corp.*,
   2013 WL 6244156 (S.D.N.Y. Dec. 2, 2013) ...........................................................................3

*Gallagher v. NYC Health & Hosps. Corp.*,
   2017 WL 4326042 (S.D.N.Y. Sept. 20, 2017).......................................................................26

*Gehlaut v. NYC Dep't of Educ.*,
   2025 WL 2586770 (2d Cir. Sept. 8, 2025) ......................................................................13, 17

*Goldberg v. Pace Univ.*,
   88 F.4th 204 (2d Cir. 2023) .................................................................................................25

*Hardwick v. Auriemma*,
   116 A.D.3d 465 (1st Dep't 2014) .........................................................................................17

*JN Contemporary Art LLC v. Phillips Auctioneers LLC*,
   507 F. Supp. 3d 490 (S.D.N.Y. 2020), *aff'd*, 29 F.4th 118 (2d Cir. 2022)............................24

*Kurtanidze v. Mizuho Bank, Ltd.*,
   2025 WL 1898927 (S.D.N.Y. July 9, 2025) .........................................................................16

*Lent v. City of N.Y.*,
   209 A.D.3d 494 (N.Y. App. 1st Dep't 2022).........................................................................15

*Mangiafico v. Blumenthal*,
    471 F.3d 391 (2d Cir. 2006)..................................................................12

*Mohrman v. Johns*,
    210 A.D.3d 1075 (N.Y. App. 2d Dep't 2022) .........................................27

*Morales v. North Shore—LIJ*,
    2019 WL 13409226 (E.D.N.Y. Jan. 16, 2019) ........................................16

*Mumin v. City of N.Y.*,
    760 F. Supp. 3d 28 (S.D.N.Y. 2024)..................................................13, 14

*Pattanayak v. Mastercard Inc.*,
    2023 WL 2358826 (2d Cir. Mar. 6, 2023)...............................................14

*Ramos v. Palm W. Corp.*,
    2024 WL 3228449 (S.D.N.Y. Jun. 27, 2024) ..........................................15

*Rhino v. FedEx Ground Package Sys., Inc.*,
    2025 WL 2773065 (E.D.N.Y. Sept. 29, 2025) (appeal filed) ..................18

*Romanello v. Shiseido Cosmetics Am. Ltd.*,
    2002 WL 31190169 (S.D.N.Y. Sept. 30, 2002).......................................16

*Ruiz v. Credit Agricole Corp. & Inv. Bank*,
    2025 WL 1642406 (S.D.N.Y. June 10, 2025) (Broderick, J.) ..................15

*Spinelli v. Nat'l Football League*,
    96 F. Supp. 3d 81 (S.D.N.Y. 2015) ........................................................12

*Stadt v. Fox News Network LLC*,
    719 F. Supp. 2d 312 (S.D.N.Y. 2010).....................................................27

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)................................................................................26

*Wachtel v. Nat'l R.R. Passenger Corp.*,
    2012 WL 292352 (S.D.N.Y. Jan. 30, 2012) ...........................................24

*Whitfield-Ortiz v. Dep't of Educ. of City of N.Y.*,
    116 A.D.3d 580 (1st Dep't 2014) ...........................................20, 21, 22, 23

*Williams v. MTA Bus Co.*,
    2020 WL 1922911 (S.D.N.Y. Apr. 20, 2020)..........................................13

*Witchard v. Montefiore Med. Ctr.*,
    103 A.D.3d 596 (1st Dep't 2013), *leave denied* 22 N.Y.3d 854 (N.Y. 2013) .........................16

*Woodhams v. Allstate Fire & Cas. Co.*,
    748 F.Supp.2d 211 (S.D.N.Y. 2010), *aff'd*, 453 F. App'x 108 (2d Cir. 2012).......................25

*Zottola v. Eisai Inc.*,
    564 F. Supp. 3d 302 (S.D.N.Y. 2021)........................................................................................27

**Statutes**

N.Y. Lab. Law § 201-d ...........................................................................................................11, 17, 18

N.Y. Lab. Law § 740 ......................................................................................................... *passim*

N.Y. Exec. Law §§ 290 to 301.............................................................................................. *passim*

N.Y.C. Admin. Code § 8-107 ............................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...............................................................................................................12

Defendants Madison Square Garden Entertainment Corp. and John Eversole submit this Memorandum of Law in support of their motion to dismiss the Complaint filed by former MSG employee, Plaintiff Donald Ingrasselino (the "Motion").

## PRELIMINARY STATEMENT

Stripped of the conclusory and non-factual allegations, Plaintiff's nine-count, 60-page, 179-paragraph Complaint asserts very little substance and not a single viable cause of action.

Plaintiff, at the time he was dismissed, was a 48 year-old Vice President (VP) of Shared Security Services at MSG—a position he held for a grand total of five months. Plaintiff was fired after he was caught moonlighting as a security guard in violation of MSG policy, as well as after failing to timely respond to emails, among other things. Following Plaintiff's discharge, Plaintiff's counsel tried to convince MSG to mediate, but was unsuccessful. Put simply, Plaintiff has an ax to grind—following his termination, his failure to convince MSG to mediate and his failure to gouge money from MSG—so filed this case asserting a desperate, kitchen-sink of claims in hope that bombast and scandalous allegations will generate media attention and bring MSG to the table. Indeed, while this Motion stands on its own and does not rely on such facts, it is telling that Plaintiff's own LinkedIn page contravenes so much of his Complaint, as reflected by the below photo and his bragging that he "re-engineer[ed] MSG's facial recognition system," which he claims in this suit is "unlawful," "has not aided law enforcement" and is mere "pretext" to exclude certain patrons.



Plaintiff's gambit will not work, not only because most of the sensationalized allegations in the Complaint have no bearing on the nine causes of action he asserts, but also because each and every one of those causes of action suffer from fatal legal deficiencies necessitating their dismissal on their face, without even needing to consider reality.

So, even putting the real facts aside—by way of further example, Plaintiff alleges age discrimination but ignores that his supervisor and Defendant in this lawsuit (Eversole) routinely hired and promoted individuals significantly older than Plaintiff—Plaintiff does not assert allegations sufficient to establish a viable claim for discrimination or retaliation under *any* law. Instead, Plaintiff attacks the management style of Eversole—basing the Complaint, essentially, on the fact he was not treated with kid gloves, alleging that supposed one-off comments are enough to establish a cause of action (they are not), and ignoring that one of the foundational tenants of a role in security is to not only be physically present but also responsive when needed, especially at a venue where games and shows run constantly and often late.

Plaintiff also accuses MSG of breaching a purported agreement to mediate and withholding Plaintiff's property, but similarly ignores that MSG never entered into any agreement whatsoever—meaning there was nothing to breach—and that MSG has returned property to Plaintiff and is engaged in ongoing dialogue to identify any additional property belonging to Plaintiff so it can be returned.  Here too, then, Plaintiff fails to assert facts sufficient to plausibly establish such claims.

The Court should dismiss the Complaint in its entirety.

## FACTS[1]

### A.    Plaintiff was Hired by MSG after Working for MSG Affiliate, TAO.

In August 2021, the TAO Hospitality Group—which was owned by MSG at the time—hired Plaintiff to be TAO's senior director of security.[2] ECF No. 1 ("Compl.") ¶30. At the time, Plaintiff was 45 years old and had Type 1 diabetes. *See id.* ¶34. Approximately 20 months later, MSG sold TAO. *Id.* ¶31. Plaintiff continued working for TAO for four months, until August 2023. *Id.* At some point during Plaintiff's employment with TAO, Plaintiff disclosed to TAO that he owned a limited liability company that provided security services. *Id.* ¶94.

In September 2023, Eversole offered Plaintiff a position as MSG's VP of Shared Security Services, fully aware of his age. *Id.* ¶31. Plaintiff began working for MSG the following month. *Id.* ¶94. He was 47 years old at the time and still a diabetic. *Id.* ¶¶2, 34. Eversole was "Plaintiff's sole supervisor." *Id.* ¶27.

### B.    Plaintiff's Age and Condition Were Known to MSG and Eversole.

Plaintiff's coworkers were aware Plaintiff had diabetes because Plaintiff would openly inject himself with insulin and discuss it with them. *Id.* ¶35. In November 2023, Plaintiff specifically told Eversole that he had an in-person doctor's appointment concerning his diabetes. *Id.* ¶36. The two had a discussion about whether a doctor's appointment qualifies for a "sick day" if the employee was not actually sick. *Id.* ¶37. Eversole concluded that it could and told Plaintiff he could use sick days to attend doctors' appointments. *Id.* ¶¶37–38.

---

[1] Defendants accept the factual, non-conclusory allegations set forth in the Complaint only for purposes of this motion.

[2] Plaintiff pleads that his employment with TAO also constituted employment with MSG without alleging any facts that would warrant such a finding. MSG's purported ownership stake in TAO, by itself, does not create an employment relationship. *See, e.g., Fenner v. News Corp.*, 2013 WL 6244156, at *8 (S.D.N.Y. Dec. 2, 2013) ("A parent company is not ordinarily liable for the employment discrimination of its subsidiary, except if the requirements of the single employer doctrine or the joint employer doctrine are satisfied.").

Despite Plaintiff's age being known to MSG and Eversole when he was hired by MSG, following his employment with TAO, and despite the fact that Eversole hired and promoted individuals many years older than Plaintiff in the security space,[3] Plaintiff alleges that Eversole referred to Plaintiff as "old" on occasion, though the Complaint admits Plaintiff was not sure whether Eversole's comments were "serious." *Id.* ¶¶4, 46, 49, 50, 53, 56, 57, 61.

Despite Plaintiff's diabetes being known at his time of hire by MSG, Plaintiff alleges that, a couple of times during Plaintiff's employment, Eversole allegedly referred to Plaintiff as "sick" and that Plaintiff would "die if he eats sugar." *Id.* ¶¶3, 39.

**C.**     **<u>Plaintiff Alleges That Others Who Did Not Suffer from Diabetes Were Not Treated Well By Eversole Either.</u>**

Plaintiff alleges that Eversole treated him like he treated other employees who were not the same age as or older than Plaintiff, did not have diabetes, and were not disabled. For example, according to the Plaintiff:

- Eversole put an employee who received a high performance review on a performance improvement plan. *Id.* Ex. B ¶¶4.d, 5.

- Eversole "discussed how he had decided to 'phase out' [an] employee" after the employee asked to work from home. *Id.* ¶41.

- Eversole mistreated two employees by calling them names and having the doors from their offices removed. *Id.* ¶¶13, 86, 88.

- Eversole denied one employee adequate time off. *Id.* ¶¶14, 89.

- Eversole cancelled time off for at least one other employee. *Id.* ¶50.

- Eversole had numerous other "targets." *Id.* ¶¶49, 62.

- Eversole terminated numerous individuals for "policy violations" in the absence of any written policy. *Id.* Ex. B ¶4.e.

---

[3] This includes Brian Conroy and Joseph Doherty, both of whom Plaintiff mentions in the Complaint. *Id.* ¶¶7, 54, 67, 70, 77.

Plaintiff does not allege that these individuals were the same age as or older than Plaintiff, had diabetes, or were disabled.

> **D.**    **Plaintiff Alleges That He Disagreed with MSG Business Decisions But Generally Does Not Allege That He Reported His Disagreement to Defendant Eversole.**

Plaintiff alleges that he questioned several business decisions during his employment. *Id.* ¶¶7–16, 65–92.

> 1.    Plaintiff, a Shared Security Services Employee, Takes Issue with Providing Security Services.

On an unidentified date, Plaintiff purportedly "forwarded" complaints made by another employee to Eversole. *Id.* ¶¶7, 65–68. The complaints allegedly concerned Eversole's directions that Plaintiff and Plaintiff's team—whose jobs were to provide security—"imbed themselves in the middle of protests and riots," including at the outskirts of MSG property. *Id.* Plaintiff asserts that these directions were contrary to MSG policies without ever identifying the MSG policies at issue or their contents. *Id.* ¶¶65, 66. Plaintiff claims that he raised the other employee's "concerns" with Eversole. *Id.* ¶68. In response, Eversole purportedly told Plaintiff that the employee who complained needed to do her job. *Id.* ¶69. Plaintiff does not allege MSG took any adverse employment action against that individual.

> 2.    Plaintiff Allegedly Makes Other Complaints Regarding MSG Security Practices.

Plaintiff also contends that, on another unspecified date during his approximately 150 days of employment, he complained to an unidentified person both that "his direct reports [were] armed on behalf of MSG" and that Eversole openly carried a gun.[4] *Id.* ¶8. Although Plaintiff concedes

---

[4] In December 2023, Plaintiff told Eversole that Plaintiff "did not feel comfortable carrying a firearm in acting in an enforcement capacity for MSG's benefit." *Id.* ¶75. Plaintiff acknowledges that he was "legally allowed to carry a firearm," but apparently did not trust himself with one. *Id.* ¶73.

that he believed the employees in question were allowed to carry firearms, he thought they lacked appropriate "guidance as to when or if firearms could be used," *id.* ¶71, and claims that Eversole failed to "articulate or enforce any protocol" that may have existed, *id.* ¶72. Plaintiff further believed Eversole's open gun carrying violated "the intent and limitations" of the law based on Plaintiff's speculation that Eversole lacked some unidentified "license" to openly carry. *Id.* ¶74. Because of this, Plaintiff claims he asked Eversole and other VPs on an unknown date if Plaintiff could "put in writing clear standards and guidelines" concerning the use of firearms. *Id.* ¶75. The request was allegedly ignored. *Id.* Plaintiff alleges that he has "become aware of many other former and current employees who expressed similar feelings," *id.*, but does not claim MSG took any adverse action against them.

Plaintiff next alleges that, on another unspecified time, he complained to Eversole and "numerous Directors at MSG" that Eversole directed him "to perform full and intrusive background checks," and/or that information he and his team gathered when conducting surveillance was not properly safeguarded (without substantiation). *Id.* ¶¶9, 10, 76, 77. Plaintiff claims that he believed the background checks violated individual privacy solely because he did not know the underlying reason for these directives.[5] *Id.* Plaintiff alleges that his direct reports similarly questioned these work assignments, *id.* ¶77, but again does not allege MSG took any adverse employment action against them.

3.    Plaintiff Did Not Like MSG's Use of Facial Recognition Technology, a Tool Common at Venues across the Country, and Other Technology.

---

[5] Plaintiff further alleges that he was part of a discussion about recording a conversation with only one party consent, which is lawful in New York. *Id.* ¶¶78, 79. Plaintiff does not allege he raised any complaint or objection about the conversation. Instead he says sat quietly in a meeting when this was discussed and told Eversole that he had to go to another meeting after returning from a store he visited to purchase a recording device for MSG. *Id.*

Plaintiff supposedly complained to an unidentified person on an unidentified date about "MSG's facial recognition software," though Plaintiff provides no specifics as to the substance of the purported complaint. *Id.* ¶11. His Complaint later alleges that, in December 2023/January 2024, he asked Eversole questions about the software and Eversole provided answers Plaintiff found inadequate. *Id.* ¶81. Plaintiff pleads that he opposed MSG's use of the software because he did not believe the technology would aid the Federal Bureau of Investigations (FBI) as MSG claimed it would and/or because MSG did not have policies in place that would enable the software to effectively do so. *Id.* ¶¶11, 80, 81. Plaintiff also surmised that MSG was using the technology to keep a transgender individual away from certain athletes. *Id.* ¶82.

Plaintiff alleges that, on yet another unidentified date, he complained to Eversole regarding MSG's use of Xtract One Technologies' weapons detection system. *Id.* ¶¶12, 84. Plaintiff claims the technology had shortcomings in detecting certain weapons, which Plaintiff shared with Eversole. *Id.* ¶¶12, 85. Eversole purportedly instructed Plaintiff to refrain from discussing "the technology failures" and to send him "any notes [Plaintiff] had reflecting" such failures. *Id.* ¶¶12, 84. Plaintiff claims he thought the software did not comply with major league sports' security protocols, *id.* ¶¶12, 85, and that—because an MSG employee sat on Xtract One's advisory board— there were some "conflicts of interest," which Plaintiff raised with his peers (but not Eversole). *Id.* ¶83. Plaintiff admits that MSG uses multiple weapons technology systems, *id.* ¶85, and he had no complaints about the other systems.

### 4.    Plaintiff Purportedly Raised Concerns about Eversole's Treatment of Other Employees and Restriction on the Use of Police Dogs.

At some point, Plaintiff "attempted to" complain to Eversole about Eversole's treatment of two female employees because Eversole allegedly called them names and had "ordered that the doors to [their] offices be removed." *Id.* ¶¶13, 86, 87, 88. Eversole purportedly told Plaintiff "not

to engage" with those employees. *Id.* ¶¶13, 86, 88. When Plaintiff allegedly "voiced concerns" to directors and other VPs about Eversole's treatment of these two employees, they purportedly told him "to keep quiet." *Id.* ¶¶13, 88.

Plaintiff then alleges that, on yet another unidentified date, he opined to Eversole that a female co-worker was not provided "adequate time off when requested," and asked Eversole about the employee's "job description, schedule, and responsibilities." *Id.* ¶89. Plaintiff alleges that (i) Eversole told Plaintiff that he (Eversole) would address the situation, *id.*, and (ii) Plaintiff then approached MSG's human resources (HR) department with his concern about the employee's insufficient time off. *Id.* ¶¶14, 89.[6]

Plaintiff next asserts that he purportedly complained to an unidentified person on an unidentified date that he believed Eversole wanted to restrict the use of police dogs at MSG sporting events. *Id.* ¶¶15, 90. Plaintiff claims that, if his suspicions about Eversole's plan were correct, then such a restriction may not comply with sports leagues' protocols. *Id.* ¶90. Plaintiff pleads that others expressed similar concerns. *Id.* He does not allege MSG took any adverse employment action against them.

5.    Plaintiff Alleges Other Disagreements with Management.

Plaintiff contends that Eversole purportedly issued two other directives with which he disagreed: (i) that Plaintiff and other employees identify how MSG could track employees' personal email accounts, *id.* ¶¶16, 91, and (ii) that Plaintiff report to HR that he worked seven hours per workday though he worked more. *Id.* ¶¶16, 92. Plaintiff ***does not allege*** that he ever complained about either instruction, nor does he allege any adverse or retaliatory action was taken against him for these thoughts that he kept to himself. *Id.* ¶¶16, 91, 92.

---

[6] Plaintiff claims he complained to HR about "his own mistreatment" too, but provides no specifics. *Id.* ¶89.

E.    **Plaintiff is Written Up In February 2024 after Not Performing His Duties Consistent With Expectations.**

Eversole required Plaintiff to (i) report to work early a few times, (ii) work later than Plaintiff wanted (when Plaintiff served in a security role for a venue that hosts concerts and sports games, among other things); and (iii) check his emails. These basic work requirements presented challenges for Plaintiff.

According to Plaintiff, Eversole asked him to arrive to work at 9:00 or 9:30 a.m. on a few occasions, which was 30 to 60 minutes earlier than Plaintiff planned to arrive based on what Plaintiff wanted his start time to be. *Id.* ¶46. When Plaintiff failed to arrive at work on time, Eversole let Plaintiff know that his tardiness was a problem. *Id.* Eversole also required Plaintiff to work later than Plaintiff wanted—an unsurprising request given the role Plaintiff was in (VP of Shared Security Services) and the company for and industry in which he worked. *Id.* ¶47.

Plaintiff next alleges that, on the morning of February 2, 2024, Eversole "proceeded to yell and curse" at Plaintiff for failing to respond promptly to an email reporting a female employee's assault in Pennsylvania Station. *Id.* ¶¶54-55, 59-60, Ex. C ¶2. Plaintiff—whose title was VP of Shared Security Services—alleges various excuses: that the email was "strictly informational" and "did not require any action," *id.* ¶55; that it was "sent prior to his work hours," ¶56; that he'd been occupied "diligently completing other time-sensitive assignments," *id.* ¶55; and that Plaintiff's supervisee had "failed to" inform him "immediately" and via "text or telephone call," *id.* ¶54-55. But his Complaint also reflects that Plaintiff "typically woke up around 8:00 a.m.," that his neighbor was visiting Plaintiff's apartment that morning "for breakfast . . . at about 9:00 a.m.," that he "typically checked work emails every one or two hours after the start of his day" and that he "did not see the email until later in the morning," *Id.* ¶¶55, 56, Ex. C ¶2. Plaintiff alleges that Eversole made two disparaging comments about Plaintiff's age during their discussions. *Id.* ¶¶56,

61. Plaintiff admits that that he signed a written warning for his oversight and then "implement[ed] proactive measures to prevent such a situation from occurring again," notwithstanding his continued view of "there being zero negative effect in his delayed review of the email." *Id.* ¶¶56, 59-60.

### F.    Following Plaintiff's Write-Up, and Another Infraction, Plaintiff is Fired.

Days after Plaintiff missed the email, Plaintiff left work to go to an event attended by an "A-list" celebrity at the request of the celebrity's security team while Eversole was away on business. *Id.* ¶¶94, 95. Before stepping away from the office, Plaintiff put others from his team in charge, telling them he "would be available by phone if needed." *Id.* ¶95. Upon arriving at the venue, Plaintiff gathered with the security team, and, unlike an invited guest/spectator, waited outside the venue for crowd and paparazzi to subside. *Id.* ¶97.

MSG learned of and looked into Plaintiff's whereabouts. *Id.* ¶¶98, 99. It concluded that Plaintiff violated its conflict of interest and outside employment policy,[7] and, about a week after the event, terminated Plaintiff's employment on February 20, 2024. *Id.* ¶¶2, 100. Following Plaintiff's employment termination, Plaintiff claims that he left personal property in his office. *Id.* ¶100. He pleads that MSG has already returned property to him, and that MSG has inquired as to what property of Plaintiff's it still has. *Id.* Plaintiff's counsel purportedly provided "an itemized list." *Id.*

### G.    MSG Conditioned Its Agreement to Mediate on the Quality of the Evidence Plaintiff Provided, and the Evidence Did Not Support Plaintiff's Claims.

Plaintiff's Complaint asserts a novel claim that MSG breached an agreement to mediate Plaintiff's grievances and termination. *Id.* ¶104. For support, the Complaint attaches, as Exhibit

---

[7] Plaintiff alleges MSG was aware of and has allowed two employees to conduct outside business. *Id.* ¶101. Those individuals hold different positions than Plaintiff, *id.*, and Plaintiff does not allege that that their purported work for such outside businesses interfered with their work for MSG or otherwise violated MSG policy.

A, an earlier email exchange between the parties' then-counsel about mediation, which Plaintiff's counsel misleadingly redacted before appending it to the Complaint.

Prior to filing the Complaint, Plaintiff claimed he had evidence to support legal claims against Defendants and put his hand out. As reflected by the content Plaintiff's counsel inappropriately redacted, MSG's counsel notified Plaintiff's counsel on September 3, 2024, that mediation was "contingent" upon MSG's review of "documentary or other evidence . . . supporting [Plaintiff's] position." *Id.* MSG made clear that such "information is critical to MSG being able to obtain settlement authority to assist us in settling the matter, so the sooner you get this information to me the more likely we can have a successful mediation." Declaration of Shawn Patrick Regan ("Regan Decl.), Ex. A. Thereafter, Plaintiff merely resent documents that he had already provided to MSG along with two affirmations, one from Plaintiff's neighbor and one from a former MSG employee, which Plaintiff attached to the Complaint as Exhibits B and C, respectively. Compl. ¶¶105–108; *id.* Exs. B and C. The affirmations were dated December 27, 2024 and January 11, 2025, just weeks before the mediation date. *Id.* Exs. B and C. Shortly after receiving the affirmations and purported documentary evidence, MSG notified Plaintiff that mediation was not worthwhile. *Id.* ¶108.

### H.    Plaintiff Files the Complaint.

Plaintiff's Complaint asserts *nine* causes of action: (1) violations of the New York State Human Rights Law (NYSHRL), N.Y. Exec. Law §§ 290 to 301, based on Plaintiff's age and diabetes; (2) violations of the New York City Human Rights Law (NYCHRL), N.Y.C. Admin. Code § 8-107, also based on Plaintiff's age and diabetes; (3) violation of New York Labor Law (NYLL) § 201-d(c)(2), which prohibits discrimination based on lawful recreational activity, in light of the February 12th "A-list" celebrity event; (4) violation of NYLL § 740 based on retaliation he purportedly endured for disagreeing with MSG business decisions; (5) breach of contract based

on the September 3rd email between Plaintiff's counsel and MSG about mediation; (6) breach of

the implied covenant of good faith and fair dealing also based on the September 3rd email; (7)

promissory estoppel based on the September 3rd email; (8) conversion based on property Plaintiff

purportedly left at MSG; and (9) unjust enrichment based on such property.

Each claim fails as a matter of law.

## ARGUMENT

## I.    LEGAL STANDARD.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quotation marks and citation omitted); *see also* Fed. R. Civ. P. 12(b)(6). If the

complaint fails to contain "factual content that allows the court to draw the reasonable inference

that the defendant is liable," and merely shows a "possibility that a defendant has acted

unlawfully," it warrants dismissal. *Iqbal*, 556 U.S. at 678. Determining whether a complaint states

a claim for relief that is plausible on its face is "a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense." *Id.* at 679.[8]

Here, the Complaint does not recite facts that would plausibly give rise to an entitlement

of relief.

## II.    PLAINTIFF FAILS TO STATE A DISCRIMINATION OR RETALIATION CLAIM UNDER ANY LAW (FIRST AND SECOND CAUSES OF ACTION).

Plaintiff asserts claims of age and disability discrimination, including failing to

accommodate a disability, in violation of the NYSHRL and NYCHRL.[9] The Court should dismiss

---

[8] A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quotation marks and citation omitted). This would include the unredacted version of the email Plaintiff attached to the Complaint as well as the affirmations. *See Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 91 n.1 (S.D.N.Y. 2015).

[9] Defendants do not challenge whether Plaintiff was disabled under the NYSHRL and NYCHRL for purposes of this motion.

these claims as a matter of law.

**A.** **Plaintiff Fails to State An Employment Discrimination Claim.**

To state an employment discrimination claim under the NYSHRL and NYCHRL, a plaintiff must plausibly allege that s/he "was treated less well than other employees because of a protected characteristic." *Gehlaut v. NYC Dep't of Educ.*, 2025 WL 2586770, at *2 (2d Cir. Sept. 8, 2025) (quotation marks and citation omitted); *Mumin v. City of N.Y.*, 760 F. Supp. 3d 28, 55 (S.D.N.Y. 2024). For a disability discrimination claim based on an alleged failure to accommodate, a plaintiff must show: (1) s/he is a person with a disability; (2) the employer had notice of the disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job; and (4) the employer refused to make such accommodations. *Williams v. MTA Bus Co.*, 2020 WL 1922911, at *5 (S.D.N.Y. Apr. 20, 2020).

The Complaint fails to state an age or disability discrimination claim of any kind.

1.    Plaintiff fails to state a claim for hostile work environment or discriminatory discharge.

The Court should dismiss Plaintiff's hostile work environment and discriminatory discharge claims because the Complaint does not plausibly allege discrimination due to Plaintiff's age or diabetes.

As an initial matter, the same person who hired Plaintiff—namely Eversole—fired Plaintiff barely five months later. Compl. ¶¶2, 31, 34, 94. This alone renders Plaintiff's employment discrimination claim highly suspect. *See Adams v. Equinox Holdings, Inc.*, 2020 WL 5768921, at *5 (S.D.N.Y. Sept. 28, 2020) (dismissing NYCHRL discrimination claim and citing Second Circuit for proposition that "[w]hen the same actor hires a person already within the protected class, and then later fires that same person, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire"). Eversole was aware of Plaintiff's age when

he hired Plaintiff. Compl. ¶31. And, Eversole hired and promoted employees who are the same age and older than Plaintiff. *See id.* ¶¶4, 46. Plaintiff further alleges that he openly injected himself with insulin in front of colleagues to treat his diabetes, which, during his prior employment with TAO, would include individuals at MSG. *Id.* ¶¶30, 33, 35.

In addition, Plaintiff alleges that Eversole treated numerous other employees poorly, irrespective of their ages or whether they had disabilities, further undermining the assertion that Eversole targeted Plaintiff due to his age or diabetes. *See, e.g.*, Compl. ¶¶13, 14, 41, 49, 50, 62, 86, 88, 89, Ex. B ¶¶4.d, 4.e, 5. It is well-settled that allegations reflecting "the reality that many bosses are harsh, unjust, and rude" are not actionable absent a causal "link" to "the claimed ground of discrimination." *Pattanayak v. Mastercard Inc.*, 2023 WL 2358826 at *4 (2d Cir. Mar. 6, 2023) (quotation marks and citation omitted); *see also Carrington v. City of N.Y. Hum. Res. Admin.*, 223 N.Y.S.3d 518 (N.Y. Sup. Ct. 2024) ("the judiciary is not a 'super-personnel department'"). Likewise, courts have not hesitated to dismiss employment discrimination claims under the NYSHRL and NYCHRL absent allegations that the employer treated employees not similarly-situated to the plaintiff better. *See, e.g., Mumin*, 760 F. Supp. at 56 (dismissing claims because plaintiff "provides an insufficient level of detail about the comparability of the [other] employees she identifies to raise an inference that she was treated 'less well' because of her" status in protected class); *Acala v. Mintz Levin Cohn Ferris Glovsky & Popeo, P.C.*, 201 N.Y.S.3d 202, 204 (N.Y. App. 2d Dep't 2023) (affirming dismissal of claims because "plaintiff failed to allege acts sufficient to establish that similarly situated persons . . . were treated more favorably").

Plaintiff alleges that Eversole occasionally referred to him as "old," Compl. ¶¶4, 46, 49-53, 56, 57, 61, and "sick," *id.* ¶¶3, 39, but these assertions do not save his claims, especially in light of the foregoing. Instead, the remarks amount to "mere inconveniences," "personality

conflicts," "petty slights," and "stray remarks," which courts have deemed insufficient to state claims of discrimination. *See, e.g., Ruiz v. Credit Agricole Corp. & Inv. Bank*, 2025 WL 1642406, at *7 (S.D.N.Y. June 10, 2025) (Broderick, J.) (" . . . the 'conduct alleged must exceed what a reasonable victim of discrimination would consider petty slights and mere inconveniences, and mere personality conflicts will not suffice to establish a hostile work environment' under the NYCHRL." (citation omitted)); *Ramos v. Palm W. Corp.*, 2024 WL 3228449, at *3 (S.D.N.Y. Jun. 27, 2024) (dismissing plaintiff's age discrimination claims where supervisors called plaintiff "dinosaur" and "old man" and asked plaintiff "when he was going to retire"); *Lent v. City of N.Y.*, 209 A.D.3d 494, 494 (N.Y. App. 1st Dep't 2022) (explaining statement that plaintiff was "old enough to retire" amounted to "stray remark" and affirming dismissal of age discrimination claims). The same holds true for Eversole's purportedly annoying conduct during an overnight trip to Canada, which included poking Plaintiff in the chest, taking Plaintiff's phone out of Plaintiff's hands, and lunging at Plaintiff (without actually making contact) to make him flinch. Compl. ¶52.[10] Such horseplay is not actionable, and has no nothing to do with age or disability.

All told, the Complaint's factual, non-conclusory allegations make it implausible that Eversole discriminated against Plaintiff due to his age or diabetes.

### 2. Plaintiff Fails to State an Accommodation Claim.

The Complaint also fails to state a claim for failure to accommodate a disability. Plaintiff alleges that he told Eversole he needed to take time off on occasion to attend doctor's appointments due to his diabetes and Eversole **told Plaintiff that he could do so**. *Id.* ¶¶35–38. Plaintiff cannot maintain a failure to accommodate claim because Eversole agreed to the accommodation Plaintiff

---

[10] Plaintiff's allegation that TAO, which MSG owned, provided Plaintiff positive feedback during his employment" further renders the discrimination claims implausible. *Id.* ¶¶31, 32, 34. Plaintiff was approximately the same age and had diabetes at that time.

requested. *Morales v. North Shore—LIJ*, 2019 WL 13409226, at *8 (E.D.N.Y. Jan. 16, 2019) ("far from stating a failure to accommodate, [p]laintiff's [c]omplaint sets forth facts in support of the precisely opposite conclusion. Thus, [p]laintiff's [c]omplaint states that the [h]ospital granted every accommodation for her disability that [p]laintiff requested . . . ."); *see also Romanello v. Shiseido Cosmetics Am. Ltd.*, 2002 WL 31190169, at *8–10 (S.D.N.Y. Sept. 30, 2002) (dismissing claim because employer provided plaintiff time off to accommodate disability).

### B.    <u>Plaintiff Fails to State a Retaliation Claim.</u>

Plaintiff further alleges that Defendants retaliated against him in violation of the NYSHRL and NYCHRL because he requested an accommodation for his diabetes. Compl. ¶¶122, 138. This claim fails for a few reasons.

Preliminarily, the NYSHRL does not recognize a claim for retaliation based on an accommodation request. *Witchard v. Montefiore Med. Ctr.*, 103 A.D.3d 596, 596 (1st Dep't 2013) ("Under both [NYSHRL and NYCHRL], a request for reasonable accommodation is not a protected activity for purposes of a retaliation claim"), *leave denied* 22 N.Y.3d 854 (N.Y. 2013). The Court should dismiss the NYSHRL claim for this reason.

The NYCHRL claim fares no better despite a 2019 amendment providing for such a claim. As noted earlier, Defendants granted Plaintiff the accommodation he requested, and that is fatal to the claim. Compl. ¶¶35-38; *cf. Kurtanidze v. Mizuho Bank, Ltd.*, 2025 WL 1898927, at *24 (S.D.N.Y. July 9, 2025). In addition, many months passed between the time Plaintiff made the request—in/around October/November 2023—and Plaintiff's employment termination on February 20, 2024. Compl. ¶¶36, 100. Therefore, the Complaint fails to establish a causal connection between the two events, which is a necessary element of the claim. *Gehlaut*, 2025 WL 2586770 at *2 (affirming dismissal of retaliation claim, noting that "when a plaintiff relies on temporal proximity alone to establish causation, courts uniformly hold that the temporal proximity

16

must be very close, which usually means less than three or four months" (quotation marks and citation omitted)); *C.C. v. Google, LLC*, 2025 WL 1938809, at *11 (S.D.N.Y. July 15, 2025) (granting motion to dismiss retaliation claim due to four month gap).

### C.    Plaintiff Fails to State a Claim for Aiding and Abetting Discrimination.

To the extent the Court does not dismiss the NYSHRL claims for the reasons set forth above (which it should), the Court should nonetheless dismiss the aiding and abetting claims brought against Eversole. The claims are based entirely on Eversole's own alleged conduct, Compl. ¶¶34–63, 114, 115, 120, 122-125, and, therefore, Eversole cannot be liable for aiding and abetting as a matter of law. *See Hardwick v. Auriemma*, 116 A.D.3d 465, 468 (1st Dep't 2014) ("an individual cannot aid and abet his or her own violation" of NYSHRL or NYCHRL).[11]

### III.    PLAINTIFF FAILS TO STATE A DISCRIMINATION CLAIM UNDER SECTION 201-D OF THE NEW YORK LABOR LAW (NYLL) (SEVENTH CAUSE OF ACTION).

Plaintiff claims Defendants terminated his employment based on his "lawful recreational activity" in violation of NYLL § 201-d(2)(c) because Plaintiff "attend[ed] a concert as a guest of his friends." Compl. ¶¶168–171. This claim fails for any of three reasons.

*First*, the factual allegations in the Complaint demonstrate that Plaintiff was not attending a concert as a guest of his friends, but rather working. *See Cheng v. N.Y. Tel. Co.*, 64 F. Supp. 2d 280, 285 n.2 (S.D.N.Y. 1999) (deeming NYLL § 201-d(2)(c) claim "patently frivolous" because plaintiff was working, not engaged in recreational activity), *aff'd* 225 F.3d 645 (2d Cir. 2000). Plaintiff, who has his own private security company, was either providing security services or engaged in networking for his company. Compl. ¶¶94–99. More specifically, Plaintiff's "friends"

---

[11] To the extent the Court reads the Complaint as asserting a claim against Eversole for aiding and abetting under the NYCHRL, those allegations should be dismissed for the same reason. Compl. ¶¶34–63, 130, 131, 135, 138–140.

were providing security services for an "A-list" celebrity that evening, Plaintiff congregated with them before the show started, and, unlike an invited guest or spectator, Plaintiff waited outside the venue with the A-list celebrity's mother for the crowd and paparazzi to subside before entering the venue. *Id.* ¶¶94, 97.

*Second*, Plaintiff was not "outside work hours" as is required to state a claim. NYLL § 201-d(2)(c) ("[I]t shall be unlawful for any employer . . . to discharge from employment . . . an individual . . . because of: . . . an individual's legal recreational activities, . . . outside work hours . . . ."). He was the VP of Shared Security Services at a major venue with no "set" hours. Compl. ¶¶46, 47, 55, 92, Ex. C ¶¶4, 5. Plaintiff pled that he stepped out of the office to attend the event, ***leaving others from his team in charge*** while Eversole was out-of-the-office on a business trip. *Id.* ¶95. He further made clear that he would not be physically available to perform his duties but was, instead, only "available by phone if needed." *Id.*

*Third*, Defendants did not terminate Plaintiff due to the nature of the event. *Id.* ¶¶98-100; *Rhino v. FedEx Ground Package Sys., Inc.*, 2025 WL 2773065, at *5 (E.D.N.Y. Sept. 29, 2025) (granting motion to dismiss because " employer does not violate Section 201-d(2)(c) when it fires an employee 'not for the [recreational] activity' itself but for other information revealed by the recreational activity" (citation omitted) (alterations in original)) (appeal filed). Indeed, Plaintiff makes no effort to explain what kind of event Plaintiff attended, let alone that Defendants had some aversion to such an event and took action against Plaintiff for that reason. Instead, the Complaint alleges Defendants discriminated against Plaintiff for violating MSG's conflicts of interest and/or outside employment policies.

IV.    **PLAINTIFF FAILS TO STATE A RETALIATION CLAIM UNDER SECTION 740 OF THE NYLL (THIRD CAUSE OF ACTION).**

In relevant part, NYLL § 740 prohibits an employer from taking a "retaliatory action" against an employee because the employee:

> discloses, or threatens to disclose to a supervisor . . . an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety; [or] objects to, or refuses to participate in any such activity, policy or practice.

NYLL § 740(2).[12]

Plaintiff bases his whistleblower retaliation claim on personal disagreements he purportedly had with various actions by Eversole and/or MSG. The Complaint fails to state a claim as to any of them, each time for multiple reasons.

A.    **Plaintiff Fails to State a Retaliation Claim Based on Plaintiff's Purported Complaints Regarding Provision of Security Services.**

One basis for Plaintiff's whistleblower retaliation claim is that another employee complained about Eversole's directives to provide security services that were allegedly inconsistent with MSG policy and Plaintiff "forwarded" the complaint to Eversole. Compl. ¶¶7, 65–68. The allegation fails for one or more reasons. For starters, Plaintiff did not engage in protected activity. Nowhere in the Complaint does Plaintiff assert that he disclosed or threatened to disclose Eversole's directives to a supervisor, or that he objected or refused to participate in any such directive. Instead, he claims he "forwarded" complaints by another employee and "advise[d] and caution[ed]" Eversole about the directives. *Id.* ¶67; *see Whitfield-Ortiz v. Dep't of Educ. of City of N.Y.*, 116 A.D.3d 580, 581 (1st Dep't 2014) (dismissing NYLL § 740 claim because

---

[12] A "retaliatory action" is "an adverse action taken by an employer," including "adverse employment actions or threats to take such adverse employment actions against an employee in the terms or conditions of employment. § 740(1)(e).

plaintiff "did not state the substance of her alleged complaints"). In addition, it is not plausible that Plaintiff had a reasonable belief that his employer, MSG, engaged in any unlawful or sufficiently dangerous activity because he admits that he believed the purported directives were contrary to MSG policy. *Id.* ¶66. Section 740 concerns an "activity, policy or practice of the employer" and Plaintiff acknowledges here that he had no issue with the policy of his employer, MSG. Plaintiff also fails to plead causation. He never identifies the date he purportedly "forwarded" a colleague's complaint or "advice[d] and caution[ed]" Eversole about the directives. Absent such timeframe, Plaintiff cannot allege that MSG took any adverse action against him because of Plaintiff's conduct. *See Whitfield-Ortiz*, 116 A.D.3d at 581 (dismissing claim because plaintiff failed to plead when she purportedly complained, "or how those incidents were causally connected to any protected activity").

Plaintiff further alleges that Eversole ignored Plaintiff's request to put written firearm guidelines in place. Compl. ¶¶8, 71–75. Here too Plaintiff fails to allege that he engaged in protected activity or causation. Plaintiff alleges that he asked Eversole if he could write firearm guidelines and the request was ignored. *Id.* ¶75. That's not protected activity. Asking to write a guideline is not the same as disclosing, threatening to disclose, objecting, or refusing to participate in unlawful or dangerous conduct. Plaintiff also fails to plead causation as he does not identify the date he purportedly requested to write the guidelines. *Whitfield-Ortiz*, 116 A.D.3d at 581. In addition, Plaintiff claims others raised the same or similar feelings, Compl. ¶75, but not that they suffered any adverse employment action as a result. This demonstrates that any adverse action Plaintiff suffered had nothing to do with Plaintiff's written guidelines request as others who actually raised concerns (as opposed to Plaintiff's request to merely write a policy) did not suffer any adverse action.

As to certain surveillance assignments, Plaintiff fails to state a claim either because Plaintiff does not plausibly allege that he had a reasonable belief the assignments were unlawful/sufficiently dangerous or fails to plead causation. *Id.* ¶¶9, 10, 76, 77. As to Plaintiff's belief, Plaintiff acknowledges that he did not even know the underlying reason for the assignments. *Id.* Not knowing the underlying reason for an assignment is not the same as an assignment being unlawful or dangerous. And Plaintiff does not plead he had any reason to believe the assignments were unlawful, so could not have a reasonable belief that they were.[13] With respect to causation, Plaintiff again fails to identify the date he allegedly complained to Eversole and MSG directors, and, therefore fails to state a claim for that reason. Compl. ¶¶9, 10, 76, 77; *Whitfield-Ortiz*, 116 A.D.3d at 581. And, he pleads that others similarly questioned the reasoning for the assignments, but not that they suffered any adverse action as a result. Compl. ¶77. In other words, accepting these allegations as true, any employment action taken against Plaintiff had nothing to do with his complaints about the assignments.

### B.    Plaintiff Fails to State a Retaliation Claim Based on His Purported Concerns with the Technology MSG Used.

Plaintiff claims that he asked Eversole questions about MSG's facial recognition software. Compl. ¶¶11, 80–82. He purportedly "inquired as to how MSG would handle a [hypothetical] situation where a fugitive from the FBI 'Most Wanted' list was identified . . . ." *Id.* ¶81. This allegation fails to state a claim because Plaintiff did not engage in protected activity or have a reasonable belief MSG's conduct was unlawful or sufficiently dangerous. Asking questions certainly cannot and does not constitute protected activity, which is fatal to Plaintiff's claim. *Id.* ¶81. In addition, Plaintiff's issue was that he did not think MSG was using the software to help the

---

[13] Plaintiff's approximately 25 years of law enforcement and security experience further undermines Plaintiff's purported beliefs that MSG was violating the law or endangering the public. Compl. ¶30.

FBI, that MSG did not have policies in place that would that would enable MSG to help the FBI, and/or that MSG was using the software to keep an individual away from certain athletes for any number of reasons—not that he thought MSG's conduct was unlawful or there was a substantial and specific danger to the public health or safety.

The Xtract One technology claim fails because Plaintiff's allegations make it implausible that he had a reasonable belief that MSG's conduct was unlawful/sufficiently dangerous or that any protected activity in which he engaged resulted in any adverse action. As to Plaintiff's belief, Plaintiff only says that he thought the technology did not comply with sports leagues' protocols and that MSG's use of the technology may have constituted a conflict of interest because another MSG VP sat on Xtract One's advisory board—not that the Xtract One technology was unlawful. *Id.* ¶¶12, 83, 85. Plaintiff further acknowledges that MSG uses other weapons technology systems about which he had no complaints. *Id.* ¶85. Therefore, Plaintiff could not possibly have had a reasonable belief that there was substantial and specific danger to public health or safety based on the pleading. With regard to causation, Plaintiff never identifies the date he purportedly complained to Eversole about the technology, which independently sinks Plaintiff's claim as well. *Id.* ¶¶12, 84; *Whitfield-Ortiz*, 116 A.D.3d at 581.

### C.    Plaintiff Fails to State a Retaliation Claim Based on Alleged Concerns of Eversole's Treatment of Others.

This allegation fails to state a claim because Plaintiff does not plausibly plead that he had a reasonable belief that Eversole's treatment of a few female employees violated any law, rule, or regulation, or was sufficiently dangerous to state a claim. He alleges that Eversole treated many people poorly—both men and women.

**D.**     **Plaintiff Fails to State a Retaliation Claim Based on Other Disagreements He Had, Most of Which Plaintiff Does Not Claim He Complained Of.**

Plaintiff alleges that he believed Eversole wanted to restrict the use of police dogs at MSG sporting events. Compl. ¶¶15, 90. The claim fails for any of three reasons.. *First*, as to protected activity, there is no allegation that Plaintiff disclosed or threatened to disclose Eversole's purported plan to restrict police dogs to a supervisor, or that he objected or refused to participate in any such plan. He merely alleges that he complained to some unidentified person. *Id.*; *Whitfield-Ortiz*, 116 A.D.3d at 581 (dismissing claim because plaintiff failed to plead "to whom she allegedly complained."). *Second*, regard to Plaintiff's belief, he admits that the claim rests on nothing more than his rank speculation that Eversole wanted to restrict police dogs—not that Eversole actually wanted to do so (let alone that he actually did so). In addition, Plaintiff merely claims that he thought such a restriction would violate sports leagues' protocols, not the law. Compl. ¶90. Plaintiff also acknowledges that MSG had sufficient weapons technology systems such that Eversole's suspected plan could not have endangered the public for that reason. *Id.* ¶85. *Third*, as to causation, Plaintiff does not identify the date he purportedly lodged his complaint about Eversole's alleged plan, *Whitfield-Ortiz*, 116 A.D.3d at 581, and further acknowledges that others expressed similar concerns, Compl. ¶90, without claiming MSG took adverse action against such people.

**E.**     **Plaintiff Fails to State a Retaliation Claim Based on Personal Disagreements He Had with Other Business Decisions about Which He Never Complained.**

Plaintiff notes that he disagreed with two other directives Eversole gave him: one about tracking employees' personal email accounts and the other about reporting his work hours to HR. *Id.* ¶¶16, 91, 92. Plaintiff admits that he never disclosed such directives to a supervisor, threatened to disclose them to a supervisor, or objected or refused to participate in such directives. *Id.* While that's enough to warrant dismissal of the claim, Plaintiff does not plead that he had a reasonable

belief that such directions were unlawful or sufficiently dangerous, or causation between any protected activity and any adverse action either.

## V.    PLAINTIFF'S CONTRACT AND QUASI-CONTRACT CLAIMS FAIL.

Plaintiff's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel all fail as a matter of law. The email exchange Plaintiff cites, and deceivingly redacts, refutes the claims.

### A.    <u>Plaintiff Fails to State a Breach of Contract Claim (Fourth Cause of Action).</u>

Plaintiff asserts MSG had a contractual obligation to mediate Plaintiff's claims by ignoring critical language from the underlying email exchange forming the basis for the claim—language Plaintiff redacted from the email he attached to the Complaint. *Id.* ¶¶104-108, 153-155, Ex. A. The email demonstrates that Plaintiff's claim fails for either of two reasons: (1) Plaintiff and MSG had no binding agreement because "the conditions precedent to the formation of a contract" were not met, *see, e.g.*, *Wachtel v. Nat'l R.R. Passenger Corp.*, 2012 WL 292352, *2 (S.D.N.Y. Jan. 30, 2012) (dismissing claim for this reason); or (2) to the extent there was a contract, MSG exercised its right under the contract not to proceed. *See, e.g.*, *JN Contemporary Art LLC v. Phillips Auctioneers LLC*, 507 F. Supp. 3d 490, 500 (S.D.N.Y. 2020) (dismissing claims where defendant's actions were permitted by provision), *aff'd*, 29 F.4th 118 (2d Cir. 2022).

By email dated September 3, 2024, MSG notified Plaintiff's counsel that any mediation was "contingent" upon MSG's review of "documentary or other evidence . . . supporting [Plaintiff's] position." Compl. ¶104, Ex. A. MSG emphasized that such "information is critical to MSG being able to obtain settlement authority to assist us in settling the matter, so the sooner you get this information to me the more likely we can have a successful mediation." Regan Decl. Ex. A. Thereafter, Plaintiff merely resent documents he already provided to MSG, which were then followed by two affirmations. Compl. ¶¶105–108, Exs. B and C. Plaintiff provided MSG the

affirmations—the only new documents—just a couple of weeks before the mediation date. *Id.* ¶108, Exs. B and C. Consistent with MSG's previous caveat, MSG promptly notified Plaintiff that the mediation was not worthwhile after reviewing the materials. As such, Plaintiff's claim fails because if there was a contract, MSG didn't breach it.

**B.**    **Plaintiff Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Sixth Cause of Action).**

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails for the simple reason that it is premised on the same facts as Plaintiff's breach of contract claim. *See, e.g.*, *Woodhams v. Allstate Fire & Cas. Co.*, 748 F.Supp.2d 211, 223 (S.D.N.Y. 2010) (dismissing claim because "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract, based on the same facts, is also pled" (alteration in original) (quotation marks and citation omitted)), *aff'd*, 453 F. App'x 108 (2d Cir. 2012). The Complaint makes no distinction whatsoever between Plaintiff's breach of contract claim and Plaintiff's breach of the implied covenant claim. *See* Compl. ¶¶164, 165. Accordingly, the Court should dismiss the claim.

**C.**    **Plaintiff Fails to State a Promissory Estoppel Claim (Fifth Cause of Action).**

Plaintiff's promissory estoppel claim similarly fails for either of two reasons. *First*, the claim is duplicative of Plaintiff's breach of contract claim (*see id.* ¶¶158–161), and, therefore, cannot continue unless the Court dismisses Plaintiff's breach of contract claim. *See, e.g.*, *Goldberg v. Pace Univ.*, 88 F.4th 204, 214 (2d Cir. 2023) (deciding district court properly dismissed claim because "[i]n New York, claims in quasi-contract such as . . . promissory estoppel are ordinarily precluded if a valid and enforceable written contract . . . govern[s] the relevant subject matter." (quotation marks and citation omitted)). *Second*, even if the Court were to dismiss Plaintiff's breach of contract claim, the promissory estoppel claim still fails because the plain terms of the

underlying email demonstrate that Plaintiff cannot meet two required elements to state a claim, namely, that there be a "clear and unambiguous promise" and "reasonable reliance on that promise." *See, e.g., Gallagher v. NYC Health & Hosps. Corp.*, 2017 WL 4326042, at *7 (S.D.N.Y. Sept. 20, 2017) (dismissing promissory estoppel claim because there was neither clear and unambiguous promise nor reasonable reliance in light of email's plain language); *511 9th LLC v. Credit Suisse USA, Inc.*, 69 A.D.3d 497, 497 (N.Y. App. 1st Dep't 2010) (dismissing claim because " complaint does not allege that the conditions precedent were satisfied or contradict defendants' assertion that they determined not to proceed due to an adverse change in the syndicated debt market" such that "plaintiff could not reasonably have relied on any alleged representations by defendants").[14] Consequently, the Court should dismiss the claim.

## VI.    PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT OR CONVERSION.

Plaintiff's claims for unjust enrichment and conversion are based on allegations that he left personal property at MSG. Compl. ¶100. These claims fail as a matter of law.

### A.    Plaintiff Fails to State a Claim for Unjust Enrichment (Eighth Cause of Action).

Plaintiff's unjust enrichment claim fails for two independent reasons. *First*, Plaintiff lacks Article III standing to bring the claim as he has not suffered any injury in fact—that is, a "concrete harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 428 (2021). Plaintiff pleads that "*if* MSG is not required to return [Plaintiff's] property and/or reimburse him for his property, *then* MSG will be unjustly enriched." Compl. ¶176 (emphasis added). That is an abstract, hypothetical, and/or theoretical dispute that federal courts don't entertain. *Second*, to the extent Plaintiff had standing

---

[14] Plaintiff's belated production of documents to MSG on the heels of the mediation date—knowing that MSG needed to review those documents before agreeing to mediate—further underscores the unreasonableness of Plaintiff's purported reliance. Compl. ¶¶105–108; Regan Decl. Ex. A.

to bring an unjust enrichment claim, it would be ripe for dismissal as duplicative of the conversion claim. *See, e.g.*, *Zottola v. Eisai Inc.*, 564 F. Supp. 3d 302, 318 (S.D.N.Y. 2021) (dismissing unjust enrichment claim that relied on same theory of liability as tort claims including conversion). Plaintiff's unjust enrichment and conversion claims are based on the same facts such that the unjust enrichment claim cannot survive. *See* Compl. ¶¶174–176. The Court should dismiss the claim.

**B.  Plaintiff Fails to State a Conversion Claim (Ninth Cause of Action).**

Plaintiff has failed to state a claim for conversation for any of three reasons. *First*, Plaintiff fails to identify the specific property MSG allegedly has converted, which is necessary to state a conversion claim. *See Mohrman v. Johns*, 210 A.D.3d 1075, 1077 (N.Y. App. 2d Dep't 2022) (dismissing claim because plaintiff "did not identify the specific property allegedly converted"). Although Plaintiff alleges that he left numerous specified items at MSG, he then asserts that "[s]ome belongings were packed up and mailed to him days later." Compl. ¶100. The Complaint does not identify the specific property of his that MSG allegedly still has. *Second*, Plaintiff fails to allege that he made a demand for return of his property, which is also required to state a claim. *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 324 (S.D.N.Y. 2010) (plaintiff "cannot currently state a claim for conversion because he has yet to demand return of the physical copies of the [v]ideo . . . ."). Instead, Plaintiff claims that *MSG* inquired as to what property of Plaintiff's it may have, and, in response, Plaintiff's counsel provided "an itemized list of the specific property." Compl. ¶100. *Third*, Plaintiff fails to allege that MSG is refusing to return Plaintiff's property to him, yet another requisite element of conversion. *Stadt*, 719 F.Supp.2d at 324 (plaintiff "cannot currently state a claim for conversion because . . . [defendant] has yet to refuse"). To the contrary, Plaintiff pleads that MSG already has returned property to Plaintiff and is trying to identify whether it has any other property to return. Compl. ¶100. The Court should dismiss the claim.

## CONCLUSION

For the reasons set forth above, the Court should dismiss the Complaint.

DATED:    New York, New York        Respectfully submitted,
          November 24, 2025

                                    By:    */s/ Shawn Patrick Regan*
                                           Shawn Patrick Regan
                                           James J. La Rocca
                                           Evan L. G. Weisberg
                                           HUNTON ANDREWS KURTH LLP
                                           200 Park Avenue, 52nd Floor
                                           New York, New York 10166
                                           Tel: (212) 309-1000
                                           Fax: (212) 309-1100
                                           sregan@hunton.com
                                           jlarocca@hunton.com
                                           eweisberg@hunton.com

                                           Christopher M. Pardo
                                           HUNTON ANDREWS KURTH LLP
                                           60 State Street, Suite 2400
                                           Boston, Massachusetts 02109
                                           Tel: (617) 648-2800
                                           Fax: (617) 433-5022
                                           cpardo@hunton.com

                                           *Attorneys for Defendants*

## <u>WORD COUNT CERTIFICATION</u>

I hereby certify that this brief complies with the word count limitations as set forth in Local Rule 7.1(c) of the United States District Court for the Southern District of New York. In determining compliance, I relied on the word count function of the word processing system used to prepare this document. The total number of words in this brief, exclusive of the table of contents, table of authorities, caption, and signature block is 8,749 words.

DATED:     New York, New York
              November 24, 2025

*/s/ Shawn Patrick Regan*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DONALD INGRASSELINO,

                    Plaintiff,

      v.

MADISON SQUARE GARDEN
ENTERTAINMENT CORP. and JOHN
EVERSOLE, individually,

                    Defendants.

Case No. 1:25-cv-7980-VSB-HJR

**<u>CERTIFICATE OF SERVICE</u>**

---

        I certify that, on the date set forth below, I caused the foregoing to be e-filed with the Court

via the CM/ECF system, which sent notification of such filing to the attorneys of record.

DATED:      New York, New York
               November 24, 2025

                      By:    <u>*/s/ Shawn Patrick Regan*</u>
                              Shawn Patrick Regan
                              HUNTON ANDREWS KURTH LLP
                              200 Park Avenue, 52nd Floor
                              New York, New York 10166
                              Tel: (212) 309-1000
                              Fax: (212) 309-1100
                              sregan@hunton.com

                              *Attorneys for Defendants*