UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONALD INGRASSELINO,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>MADISON SQUARE GARDEN ENTERTAINMENT CORP. and JOHN EVERSOLE, individually,<br><br>　　　　　　Defendants. | Case No. 1:25-cv-7980-VSB-HJR |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STRIKE CERTAIN ALLEGATIONS IN PLAINTIFF'S COMPLAINT**

Shawn Patrick Regan
James J. La Rocca
Evan L. G. Weisberg
HUNTON ANDREWS KURTH LLP
200 Park Avenue, 52nd Floor
New York, New York 10166
Tel: (212) 309-1000
Fax: (212) 309-1100
sregan@hunton.com
jlarocca@hunton.com
eweisberg@hunton.com

Christopher M. Pardo
HUNTON ANDREWS KURTH LLP
60 State Street, Suite 2400
Boston, Massachusetts 02109
Tel: (617) 648-2800
Fax: (617) 433-5022
cpardo@hunton.com

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT AND FACTUAL BACKGROUND ..................................... 1

ARGUMENT .................................................................................................................................. 3

I. LEGAL STANDARD. ........................................................................................................ 3

II. THE FOLLOWING PARAGRAPHS IN THE COMPLAINT CONTAIN ALLEGATIONS THAT SHOULD BE STRICKEN IN WHOLE OR IN PART. ............. 5

    A. Paragraphs 9, 10, 11, 76, 77, 80 and 81. .................................................................. 6

    B. Paragraphs 11 and 82. .............................................................................................. 6

    C. Paragraphs 12, 83, 84, 85, 101, 106 and 146. ......................................................... 7

    D. Paragraphs 15, 90 and 106. ...................................................................................... 8

    E. Paragraphs 16, 91, 92 and 147. ................................................................................ 8

    F. Paragraph 41. ........................................................................................................... 8

    G. Paragraph 43. ........................................................................................................... 9

    H. Paragraphs 8, 48, 71, 75 and 99. ............................................................................. 9

    I. Paragraphs 78 and 79. ............................................................................................ 10

    J. Paragraph 87. ......................................................................................................... 10

    K. Paragraphs 86, 88, 89, 13 and 14. ......................................................................... 10

CONCLUSION ............................................................................................................................ 11

# **TABLE OF AUTHORITIES**

**Cases**                                                      **Page(s)**

*Allocco v. Dow Jones & Co.*,
    2002 WL 1484400 (S.D.N.Y. July 10, 2002) ...........................................................................4

*Britt v. Buffalo Mun. Hous. Auth.*,
    2008 WL 4501929 (W.D.N.Y. Sept. 30, 2008) .........................................................................5

*Brock Cap. Grp. LLC v. Siddiqui*,
    2022 WL 2047589 (S.D.N.Y. June 7, 2022) .............................................................................5

*Cabble v. Rollieson*,
    2006 WL 464078 (S.D.N.Y. Feb. 27, 2006) .............................................................................5

*Footbridge Ltd. Trust v. Countrywide Home Loans, Inc.*,
    2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010) .........................................................................3

*GWG MCA Cap., Inc. v. Nulook Cap., LLC*,
    2019 WL 1084777 (E.D.N.Y. Mar. 7, 2019) .........................................................................5, 7

*Kumaran v. Northland Energy Trading, LLC*,
    762 F. Supp. 3d 322 (S.D.N.Y. 2025) ...................................................................................4, 9

*Lipsky v. Commonwealth United Corp.*,
    551 F.2d 887 (2d Cir. 1976) .....................................................................................................3

*Low v. Robb*,
    2012 WL 173472 (S.D.N.Y. Jan. 20, 2012) ..........................................................................4, 6

*Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc.*,
    2025 WL 2916153 (S.D.N.Y. Oct. 14, 2025) ...........................................................................4

*In re Merrill Lynch & Co., Inc. Rsch. Reports Secs. Litig.*,
    218 F.R.D. 76 (S.D.N.Y. 2003) ................................................................................................4

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
    402 F. Supp. 2d 434 (S.D.N.Y. 2005) .......................................................................................4

*Metrokane, Inc. v. Wine Enthusiast*,
    160 F. Supp. 2d 633 (S.D.N.Y. 2001) .......................................................................................4

*Morse v. Weingarten*,
    777 F. Supp. 312 (S.D.N.Y. 1991) ...........................................................................................4

*Nachmany v. FXCM, Inc.*,
    2020 WL 178413 (S.D.N.Y. Jan. 9, 2020) ...............................................................................9

*Ortiz v. Ciox Health LLC*,
  2018 WL 1033237 (S.D.N.Y. Feb. 22, 2018)........................................................................5

*Salahuddin v. Cuomo*,
  861 F.2d 40 (2d Cir. 1988)...................................................................................................4

*Sanfo v. Avondale Care Grp., LLC*,
  2022 WL 3448100 (S.D.N.Y. Aug. 17, 2022).......................................................................4

*Scheuer v. U.S. Liab. Ins. Co.*,
  2023 WL 4275114 (S.D.N.Y. June 27, 2023) ......................................................................9

*Tucker v. Am. Int'l Grp., Inc.*,
  936 F. Supp. 2d 1 (D. Conn. 2013).......................................................................................5

*Wood v. Mike Bloomberg 2020, Inc.*,
  2024 WL 3861828 (S.D.N.Y. Aug. 19, 2024).......................................................................7

**Statutes**

New York Labor Law § 740 ................................................................................................. *passim*

**Other Authorities**

5A Charles Alan Wright & Arthur R. Miller, Fed. Practice and Procedure § 1380
  (2d ed. 1990 ........................................................................................................................4

Fed. R. Civ. P. 8.....................................................................................................1, 3, 4, 5

Fed. R. Civ. P. 12..............................................................................................................3, 4

Defendants Madison Square Garden Entertainment Corp. and John Eversole, submit this Memorandum of Law in support of their motion to strike certain allegations in Plaintiff Donald Ingrasselino's Complaint (the "Motion").

## PRELIMINARY STATEMENT AND FACTUAL BACKGROUND

For the purposes of this Motion, Defendants incorporate by reference the factual background set forth in their motion to dismiss the complaint (ECF No. 19) and state as follows.

This case should be straightforward. Plaintiff asserts that Eversole made occasional remarks about Plaintiff's age and diabetes that purportedly constituted discrimination. *See* ECF No. 1 ("Compl.") ¶¶39, 46, 49, 51, 56. He further alleges that he raised concerns and made internal complaints about purported "unethical and illegal" activities or practices by MSG, which resulted in retaliation against him. *Id.* ¶146. Plaintiff also alleges that MSG converted some of his personal property post-termination, *id.* ¶178, and, after all of this, breached an express contract or promise to mediate with Plaintiff. *Id.* ¶¶152–162.

But Plaintiff's Complaint is not "short and plain," and its allegations are not "simple, concise, and direct." Fed. R. Civ. P. 8. Instead, it is full of irrelevant and sensationalized assertions largely untethered to the underlying claims. The Complaint spans 60 pages and 179 paragraphs, with some allegations running a half-page or more. *See generally* Compl. Plaintiff gratuitously identifies more than 30 individuals by name, some accused of malfeasance and others alleged victims, but none party to this action with the exception of Eversole. *See, e.g.*, Compl. ¶¶14, 60, 62, 78, 79, 83, 86, 89. Plaintiff rehearses in needless detail incidents that serve to aggrandize his claims, capture media attention and cast Defendants (and other MSG employees and executives) in a negative light. *See, e.g., id.* ¶¶11, 12, 78, 79, 82, 83, 84, 85, 101. For instance, in support of his New York Labor Law (NYLL) § 740 claim, Plaintiff spends nearly two pages detailing two incidents—one involving alleged sexual abuse and the other involving a transgender woman—

even though he does not claim to have engaged in protected activity for either alleged incident and both being described in excessive, needless detail to garner attention for his lawsuit. *See id.* ¶¶78, 79, 82. Unsurprisingly, Plaintiff's retelling of these events has found traction in the press.[1] Plaintiff includes other allegations about Eversole—meant to portray him as scary, cruel, violent and racist—that are wholly extraneous to any asserted claims. *See id.* ¶¶41, 43, 48, 75, 87, 99. And yet further allegations are made about purportedly unlawful or wrongful conduct, couched in terms of NYLL § 740 claims, despite Plaintiff fatally conceding that he did not engage in any protected activity with respect to that conduct and such conduct therefore being incapable of supporting such claims. *See id.* ¶¶16, 91, 92, 147.

Unsurprisingly, the overall impact of Plaintiff's pleading choices has been media coverage largely focused on the salacious details spread throughout the Complaint, rather than Plaintiff's discrimination or retaliation claims. For example, Gothamist, a prominent New York City-focused blog, published an article titled, "Dolan, MSG targeted transgender woman, sexual assault accuser according to federal lawsuit."[2] Security Boulevard, an online technology website, wrote an article titled, "MSG Accused of Misusing Facial Recognition, Mishandling Data."[3] The New York

---

[1] *See, e.g.*, Matt Moret & Zach Powell, *Lawsuit accuses Madison Square Garden of discrimination, illegal fan surveillance*, THE ATHLETIC (Sept. 26, 2025), Lawsuit accuses Madison Square Garden of discrimination, illegal fan surveillance - The Athletic. Paige Oamek, *Dolan, MSG targeted transgender woman, sexual assault accuser according to federal lawsuit*, GOTHAMIST (Sept. 27, 2025), Dolan, MSG targeted transgender woman, sexual assault accuser according to federal lawsuit - Gothamist; Robert Silverman, *How MSG became Maximum Spy Garden under Knicks owner James Dolan*, THE NEW YORK GROOVE (Oct. 2, 2025), How MSG became Maximum Spy Garden under Knicks owner James Dolan.

[2] *See, e.g.*, Paige Oamek, *Dolan, MSG targeted transgender woman, sexual assault accuser according to federal lawsuit*, GOTHAMIST (Sept. 27, 2025), Dolan, MSG targeted transgender woman, sexual assault accuser according to federal lawsuit - Gothamist.

[3] Teri Robinson, *MSG Accused of Misusing Facial Recognition, Mishandling Data*, SECURITY BOULEVARD (Oct. 20, 2025), MSG Accused of Misusing Facial Recognition, Mishandling Data  - Security Boulevard.

2

Groove, another New York-focused blog, titled its article, "How MSG became Maximum Spy Garden under Knicks owner James Dolan."[4] The Athletic, meanwhile, perhaps the preeminent online sports publication in the country, falsely stated in its title that Plaintiff's lawsuit accuses MSG of "illegal fan surveillance" (none of Plaintiff's causes of action assert a claim for illegal surveillance) and dedicated the majority of its article to the conduct underlying Plaintiff's NYLL § 740 claim despite such conduct being largely immaterial.[5]

Plaintiff, whose employment tenure lasted five months, attempts to transform a meritless employment dispute into a public referendum on MSG's efforts to secure the most visible public entertainment venues in the country and its alleged internal corporate policies. To prevent prejudice, avoid distraction and enforce Fed. R. Civ. P. 8, the Court should strike the scandalous, immaterial and impertinent allegations, and those set out in needless detail, from the Complaint.

## ARGUMENT

**I.    LEGAL STANDARD.**

Under Fed. R. Civ. P. 12(f), a court should "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." *See Footbridge Ltd. Trust v. Countrywide Home Loans, Inc.*, 2010 WL 3790810, at *5 (S.D.N.Y. Sept. 28, 2010) (quoting Fed. R. Civ. P. 12(f)). While courts generally "should not tamper with the pleadings," they can when there is a "strong reason for doing so." *Id.* (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)).

---

[4] Robert Silverman, *How MSG became Maximum Spy Garden under Knicks owner James Dolan*, THE NEW YORK GROOVE (Oct. 2, 2025), How MSG became Maximum Spy Garden under Knicks owner James Dolan.

[5] *See* Matt Moret & Zach Powell, *Lawsuit accuses Madison Square Garden of discrimination, illegal fan surveillance*, THE ATHLETIC (Sept. 26, 2025), Lawsuit accuses Madison Square Garden of discrimination, illegal fan surveillance - The Athletic.

3

Under Rule 12(f), immaterial means having "no essential or important relationship to the claim for relief" and impertinent means "consist[ing] of statements that do not pertain to, and are not necessary to resolve, the disputed issues." *Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc.*, 2025 WL 2916153, at *3 (S.D.N.Y. Oct. 14, 2025) (quoting *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 402 F. Supp. 2d 434, 437 (S.D.N.Y. 2005)). Scandalous material includes that which "reflects unnecessarily on the defendant's moral character" or serves no purpose other than to inflame readers. *Kumaran v. Northland Energy Trading, LLC*, 762 F. Supp. 3d 322, 330–31 (S.D.N.Y. 2025); *Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991).

"To have redundant, immaterial or impertinent matters stricken from a pleading, the defendant must demonstrate that no evidence in support of the allegation would be admissible, that the allegations have no bearing on the issues in the case, and that to permit the allegations to stand would result in prejudice to the movant." *Allocco v. Dow Jones & Co.*, 2002 WL 1484400, at *1 (S.D.N.Y. July 10, 2002) (quoting *Metrokane, Inc. v. Wine Enthusiast*, 160 F. Supp. 2d 633, 642 (S.D.N.Y. 2001)). Prejudice, in turn, has been found where allegations, if publicized, "harm [the defendant] in the public eye and could influence prospective jury members." *Sanfo v. Avondale Care Grp., LLC*, 2022 WL 3448100, at *3 (S.D.N.Y. Aug. 17, 2022) (quoting *Low v. Robb*, 2012 WL 173472, at *9 (S.D.N.Y. Jan. 20, 2012)).

Rule 12(f) also "is designed to reinforce the requirement in Rule 8(e) that pleadings be simple, concise, and direct." *In re Merrill Lynch & Co., Inc. Rsch. Reports Secs. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) (quoting 5A Charles Alan Wright & Arthur R. Miller, Fed. Practice and Procedure § 1380 (2d ed. 1990)). Thus, where allegations are prolix or set out in "needless detail," they are subject to Rule 12 relief. *See, e.g.*, *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)

4

("When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant and immaterial."); *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 16 (D. Conn. 2013) ("Even where matter in a pleading is relevant to the controversy, it nonetheless may be stricken if it is scandalous or set out in 'needless detail.'" (quoting *Cabble v. Rollieson*, 2006 WL 464078, at *11 (S.D.N.Y. Feb. 27, 2006))).

Additionally, where a complaint levies allegations against a non-party unable to defend himself, those allegations are ripe for striking. *See, e.g.*, *Brock Cap. Grp. LLC v. Siddiqui*, 2022 WL 2047589, at *6 (S.D.N.Y. June 7, 2022) (striking allegations against individual who was not party to case but alleged to have schemed to defraud community); *Ortiz v. Ciox Health LLC*, 2018 WL 1033237, at *5 (S.D.N.Y. Feb. 22, 2018) (denying motion to strike as moot but observing that inclusion of names of defendant's managers was "gratuitous").[6]

## II. THE FOLLOWING PARAGRAPHS IN THE COMPLAINT CONTAIN ALLEGATIONS THAT SHOULD BE STRICKEN IN WHOLE OR IN PART.

Plaintiff has chosen to forsake the "short and plain statement" pleading standard in Fed. R. Civ. P. 8(a) in favor of a verbose complaint rife with salacious allegations that serve no legitimate purpose beyond inflaming the reader, painting Defendants in a negative light and attracting media attention. The following paragraphs should be stricken, in whole or in part, because they are: (1) scandalous, (2) have no bearing on the issues of the case and would prejudice Defendants, (3) set out in needless detail, and/or (4) gratuitously name or allege wrongdoing to non-parties.

---

[6] *See also GWG MCA Cap., Inc. v. Nulook Cap., LLC*, 2019 WL 1084777, at *11 (E.D.N.Y. Mar. 7, 2019) (observing that challenged allegations were against non-party who was "largely without recourse"); *Britt v. Buffalo Mun. Hous. Auth.*, 2008 WL 4501929, at *3 (W.D.N.Y. Sept. 30, 2008).

5

A.     **Paragraphs 9, 10, 11, 76, 77, 80 and 81.**

In these Paragraphs, Plaintiff alternates between offering unnecessary detail and scandalous allegations that serve only to inflame. The allegations in these paragraphs are purportedly in support of Plaintiff's NYLL § 740 claim, but they overarchingly concern the conduct itself—and Plaintiff's supposed potential rationales underlying the conduct—rather than the necessary elements of a NYLL § 740 claim, *i.e.*, protected activity, retaliation, and causation. This focus is perhaps unsurprising, because a salacious allegation that MSG and its employees were spying on their "personal enemies," invading the privacy of guests, and using facial recognition software in purportedly illicit ways is much more attention-getting than specific allegations about how, when and to whom Plaintiff reported the supposed conduct. Compl. ¶76, 77, 80. While those specific reporting details are what matter, they are few and far between in the Complaint, eschewed in favor of claims, such as those in these paragraphs, inserted to depict MSG and its employees in a negative light.

B.     **Paragraphs 11 and 82.**

In Paragraphs 11 and 82, Plaintiff alleges that Eversole directed the use of facial recognition software to monitor the activities of a transgender woman. This allegation is purportedly in support of Plaintiff's NYLL § 740 claim, but Plaintiff does not allege that he raised the concern about the transgender woman with anyone or engaged in protected activity. The allegations, built on nothing more than Plaintiff's purported speculation, are a clear attempt to cast Eversole in a negative light, with no tie to the claims themselves, which the Court should not allow. *See Low*, 2012 WL 173472, at *10 (striking statements that "appear to be an attempt to gin up resentment against [defendant]"). Defendants should not have to waste resources and time taking discovery and rebutting the truth of allegations immaterial to an underlying claim.

6

### C. Paragraphs 12, 83, 84, 85, 101, 106 and 146.

Plaintiff alleges that certain MSG executives awarded a security contract to Xtract One Technologies because of, upon some unmentioned information and belief, a purported conflict of interest. These paragraphs also are included in a NYLL § 740 claim, which requires, in relevant part, that a plaintiff disclose to a supervisor, threaten to disclose to a supervisor, objects to or refuses to participate in an employer's activity, policy or practice that the plaintiff reasonably believes violates the law or poses a substantial and specific danger to the public health or safety. N.Y. Lab. Law § 740(2). Notably absent as an actionable claim is a belief that the employer violated its own internal policy, such as a conflict of interest policy. So Plaintiff's assertion that MSG executives have a relationship with Xtract One is wholly immaterial and impertinent, particularly because Plaintiff acknowledges that MSG uses other weapons technology systems and has no complaints about them. Compl. ¶85. In other words, Plaintiff had no reason to raise Xtract One in the Complaint. This immateriality renders the allegations scandalous because Plaintiff effectively pleads that MSG executives put their financial interest above the safety of Madison Square Garden guests without any basis. *See Wood v. Mike Bloomberg 2020, Inc.*, 2024 WL 3861828, at *3 (S.D.N.Y. Aug. 19, 2024) (explaining that only conceivable purpose of certain allegations was "to portray [defendant] and the candidate in a negative light"). Finally, because of the immaterial, impertinent and scandalous nature of the allegations in these paragraphs, Plaintiff should be required to remove the name of the non-party executive against whom Plaintiff alleges misconduct. *See GWG MCA Cap., Inc.*, 2019 WL 1084777, at *11 ("[T]he challenged allegations not only reflect on the character of the defendants, but on a non-party, who is largely without recourse.").[7]

---

[7] As a general matter, the Complaint repeatedly and gratuitously names MSG employees and executives in allegations that are at best peripheral to Plaintiff's claims. To the extent the Court

### D.     Paragraphs 15, 90 and 106.

Plaintiff speculates that Eversole planned to restrict police dogs from Madison Square Garden because of the views of one executive. *See id.* ¶¶15, 90. The allegation is cloaked as a NYLL § 740 claim, but an utterly meritless one, rendering it immaterial and impertinent. The allegation is based on Plaintiff's rank speculation as to what he purportedly believed to be Eversole's plan. In addition, there is no allegation that Plaintiff disclosed or threatened to disclose Eversole's purported scheme to a supervisor, or that Plaintiff objected or refused to participate in such plan. And, Plaintiff acknowledges that MSG uses other weapons detection systems (*id.* ¶85) such that there were no safety concerns, let alone substantial and specific ones. The allegation is also scandalous where, as here, it involves views regarding animals likely to inflame the reader and attributed to an individual who is not even a named defendant.

### E.     Paragraphs 16, 91, 92 and 147.

In these paragraphs, Plaintiff alleges wrongdoing about purported directives to track employees' personal email accounts and report to human resources fewer hours than he actually worked. Although cast as NYLL § 740 claims, Plaintiff effectively concedes that there is no basis for these allegations because he "did not formally object" or "complain" about the directives. *See id.* ¶¶91, 92. The conduct described in these paragraphs therefore serves only to inflame the reader and paint Defendants in a negative light.

### F.     Paragraph 41.

Plaintiff here argues that Eversole's alleged hostility toward accommodating Plaintiff's diabetes is "supported" by Eversole's purported opposition to permitting an employee to work

---

strikes certain allegations from the Complaint, it should also require Plaintiff to redact or remove the names of non-parties in at least the following paragraphs: 9, 11, 13, 14, 15, 54, 62, 76, 78, 79, 80, 83, 84, 85, 86, 89, 90, and 106.

from home "to care for his sick child." An allegation that Eversole refused to provide flexibility to care for an ill child has no bearing on Plaintiff's disability discrimination claim. The allegations in this paragraph are therefore immaterial and impertinent. They are also scandalous because they seek to portray Eversole in a negative light without a legitimate attendant purpose. *See Nachmany v. FXCM, Inc.*, 2020 WL 178413, at *8 (S.D.N.Y. Jan. 9, 2020) (allegation is scandalous when it has no purpose but to inflame reader); *Kumaran*, 762 F. Supp. 3d at 331 (allegation is scandalous when it reflects unnecessarily on defendant's moral character).

        G.      **Paragraph 43.**

Plaintiff introduces allegations about a "face rash" about which he "was embarrassed," but a face rash is not an actionable disability under the New York State Human Rights Law or the New York City Human Rights Law. The sole purpose of this paragraph appears to be to inflame the reader, by using words such as "aggressive," "without empathy," "berated," "mock," and "disgustingly." *See Scheuer v. U.S. Liab. Ins. Co.*, 2023 WL 4275114, at *4 (S.D.N.Y. June 27, 2023) (striking allegation that was inflammatory and irrelevant to plaintiffs' claims).

        H.      **Paragraphs 8, 48, 71, 75 and 99.**

Throughout the Complaint, Plaintiff complains about the presence of firearms carried by MSG employees. As part of his NYLL § 740 claims, he asserts that some employees should not have carried guns, though they were allowed to do so and even though he never engaged in any protected activity with respect to such purported concern. Plaintiff claims that he asked Eversole if he could write firearm guidelines and was ignored. Plaintiff also asserts that he and other unnamed former and current MSG employees allegedly feared Eversole because of his alleged tendency to carry a firearm. These allegations are inflammatory and clearly included to paint Eversole as threatening and violent. Plaintiff's acknowledgement that Eversole was *allowed* to carry a firearm underscores the impropriety of these allegations, particularly given Plaintiff's

9

background in law enforcement. Compl. ¶¶30, 71. The allegations have no bearing on any claim either. For example, Plaintiff's hostile work environment claims are based on Eversole's supposed age and disability discrimination. Nowhere does Plaintiff attempt to link Eversole's alleged possession or brandishing of a gun to his discrimination claims.

### I.    Paragraphs 78 and 79.

Paragraphs 78 and 79 detail events during which Plaintiff and another employee were allegedly directed to find a method to secretly tape a conversation, went to a store to purchase a recording device and that another employee made such a purchase. Plaintiff spends nearly a page and a half discussing the events, which are devoid of any basis for their inclusion in the Complaint. Plaintiff does not allege that he raised any complaint or objection. He pleads that he sat quietly in a meeting when the topic was discussed and, upon returning from the purchase, told Eversole that he needed to depart for another meeting. The allegations appear aimed at harming Eversole, MSG, and other MSG executives in the public eye and inflaming readers, with no relevance to his whistleblower retaliation claim. Additionally, Plaintiff therein unnecessarily names a handful of individuals who are accused of wrongdoing, not party to this litigation and unable to defend themselves.

### J.    Paragraph 87.

In Paragraph 87, Plaintiff alleges that Eversole made an offhanded remark about the race of a former MSG employee. Plaintiff does not assert claims for race discrimination (nor could he) and this allegation serves only to imply that Eversole is somehow racist. It is immaterial, impertinent and scandalous. The Court should strike it.

### K.    Paragraphs 86, 88, 89, 13 and 14.

Finally, Paragraphs 86, 88, 89, 13 and 14 assert that Plaintiff complained about "discrimination against women employed by MSG," including referring to two women in

10

derogatory terms, Compl. ¶86, and what Plaintiff salaciously describes as "sexualization" of an employee, overburdening her with work "for no apparent legitimate reason," *id.* ¶89. He claims to have "attempted to raise" these issues with Eversole and that he "voiced his concerns" to six other persons that he asserts, in conclusory fashion, are in "Company leadership and HR." *Id.* ¶88.

The fact that Plaintiff's purpose is to slander and prejudice Eversole is manifested in the degree to which Plaintiff's own statements contradict themselves. He alleges that one of the women, Alexandria Baker, would "seek his help" when overburdened with work and that he complained on her behalf. *Id*. ¶89. But he also claims that Ms. Baker is one of the leaders *to whom* he allegedly complained, while also claiming that she was his "direct report." *See Id*. ¶¶88-89. Similarly, he asserts that Cameron Watkins was also among the members of "Company leadership and HR" to whom he complained, *id.* ¶88, apparently forgetting that he earlier concedes that Mr. Watkins "was *Mr. Ingrasselino's direct report*," *id.* ¶55.

Combined with the fact that Plaintiff alleges nothing about when he complained, where, how and what was said (other than the implausible assertion that all six specifically said the exact same thing, namely "to keep quiet and not get involved or that he would be fired"), the scurrilous and non-sensical nature of these allegations show that their real purpose is to prejudice Defendants.

## CONCLUSION

For the reasons stated above, the Court should grant Defendants' Motion in its entirety.

DATED:   New York, New York                    Respectfully submitted,
         November 24, 2025
                                      By:    */s/ Shawn Patrick Regan*
                                             Shawn Patrick Regan
                                             James J. La Rocca
                                             Evan L. G. Weisberg
                                             HUNTON ANDREWS KURTH LLP
                                             200 Park Avenue, 52nd Floor
                                             New York, New York 10166
                                             Tel: (212) 309-1000

11

Fax: (212) 309-1100
sregan@hunton.com
jlarocca@hunton.com
eweisberg@hunton.com

Christopher M. Pardo
HUNTON ANDREWS KURTH LLP
60 State Street, Suite 2400
Boston, Massachusetts 02109
Tel: (617) 648-2800
Fax: (617) 433-5022
cpardo@hunton.com

*Attorneys for Defendants*

**WORD COUNT CERTIFICATION**

I hereby certify that this brief complies with the word count limitations as set forth in Local Rule 7.1(c) of the United States District Court for the Southern District of New York. In determining compliance, I relied on the word count function of the word processing system used to prepare this document. The total number of words in this brief, exclusive of the table of contents, table of authorities, caption, and signature block is 3,160 words.

DATED:   New York, New York
         November 24, 2025

                                          */s/ Shawn Patrick Regan*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONALD INGRASSELINO,<br><br>                      Plaintiff,<br><br>    v.<br><br>MADISON SQUARE GARDEN ENTERTAINMENT CORP. and JOHN EVERSOLE, individually,<br><br>                      Defendants. | Case No. 1:25-cv-7980-VSB-HJR<br><br>**CERTIFICATE OF SERVICE** |

      I certify that, on the date set forth below, I caused the foregoing to be e-filed with the Court via the CM/ECF system, which sent notification of such filing to the attorneys of record.

DATED:    New York, New York
                 November 24, 2025

                                              By:    */s/ Shawn Patrick Regan*
                                                            Shawn Patrick Regan
                                                            HUNTON ANDREWS KURTH LLP
                                                            200 Park Avenue, 52nd Floor
                                                            New York, New York 10166
                                                           Tel: (212) 309-1000
                                                           Fax: (212) 309-1100
                                                           sregan@hunton.com

                                                           *Attorneys for Defendants*