UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DONALD INGRASSELINO,<br><br>                         Plaintiff,<br><br>        v.<br><br>MADISON SQUARE GARDEN<br>ENTERTAINMENT CORP. and JOHN<br>EVERSOLE, individually,<br><br>                         Defendants. | Case No. 1:25-cv-7980-VSB-HJR |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISQUALIFY ETHAN M. KRASNOO AND REAVIS PAGE JUMP LLP

Shawn Patrick Regan
James J. La Rocca
Evan L. G. Weisberg
HUNTON ANDREWS KURTH LLP
200 Park Avenue, 52nd Floor
New York, New York 10166
Tel: (212) 309-1000
Fax: (212) 309-1100
sregan@hunton.com
jlarocca@hunton.com
eweisberg@hunton.com

Christopher M. Pardo
HUNTON ANDREWS KURTH LLP
60 State Street, Suite 2400
Boston, Massachusetts 02109
Tel: (617) 648-2800
Fax: (617) 433-5022
cpardo@hunton.com

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

I.  LEGAL STANDARD. ...................................................................................................4

II.  RULE 3.7 OF THE NEW YORK RULES OF PROFESSIONAL CONDUCT.................5

III.  SHOULD DEFENDANTS' MOTION TO DISMISS BE DENIED, MR. KRASNOO'S
TESTIMONY WILL BE NECESSARY AND PREJUDICIAL. ......................................6

    A.  Mr. Krasnoo's Testimony is Crucial to Five of Plaintiff's Nine Claims. ...................6

    B.  Mr. Krasnoo's Testimony Would Result In Prejudice and Impair the Integrity of the
Adversary Process. ....................................................................................................10

IV.  NONE OF THE RULE 3.7 EXCEPTIONS APPLY. .....................................................11

V.  DISQUALIFICATION WOULD NOT BE PREMATURE. ............................................13

VI.  THE COURT SHOULD IMPUTE DISQUALIFICATION OF MR. KRASNOO TO RPJ.
......................................................................................................................................13

VII.  MR. KRASNOO SHOULD BE PRECLUDED FROM PARTICIPATING IN
DEPOSITIONS, TRIAL, OR APPEARING AS AN ADVOCATE................................14

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*Air Italy S.p.A. v. Aviation Techs., Inc.*,
   2011 WL 96682 (E.D.N.Y. 2011)....................................................................9, 11, 14

*Anderson & Anderson LLP-Guangzhou v. N. Am. Foreign Trading Corp.*,
   3 N.Y.S.3d 284, 2014 WL 5394465 (Sup. Ct. N.Y. Co. 2014) ......................5, 9, 12

*Bd. of Ed. of City of New York v. Nyquist*,
   590 F.2d 1241 (2d Cir. 1979)............................................................................5

*Decker v. Nagel Rice LLC*,
   716 F. Supp. 2d 228 (S.D.N.Y. 2010)............................................................4, 5, 10

*Ehrlich v. Wolf*,
   127 A.D.3d 613 (1st Dep't 2015) ......................................................................9

*Express Indus. & Terminal Corp. v. New York State Dep't of Transp.*,
   93 N.Y.2d 584 (N.Y. 1999) ..............................................................................7

*Falk v. Gallo*,
   73 A.D.3d 685 (2d Dep't 2010) ......................................................................5, 9

*Ferreira v. Rosado*,
   2006 WL 8461796 (S.D.N.Y. Mar. 2, 2006) ............................................5, 6, 10, 14

*Fulfree v. Manchester*,
   945 F. Supp. 768 (S.D.N.Y. 1996) ..................................................................13

*Fuller Landau Advisory Servs. Inc. v. Gerber Fin. Inc.*,
   333 F. Supp. 3d 307 (S.D.N.Y. 2018)..............................................................7

*Gallagher v. N.Y.C. Health & Hosps. Corp.*,
   2017 WL 4326042 (S.D.N.Y. Sept. 20, 2017)......................................................7

*Giuffre v. Dershowitz*,
   410 F. Supp. 3d 564 (S.D.N.Y. 2019)......................................................12, 13, 14

*Gorbaty v. Wells Fargo Bank, N.A.*,
   2011 WL 318090 (E.D.N.Y. Feb. 1, 2011)........................................................12

*Gould v. Decolator*,
   131 A.D.3d 448 (2d Dep't 2015) ......................................................................9

*Kaye v. Grossman*,
   202 F.3d 611 (2d Cir. 2000)..............................................................................7

*Kubin v. Miller*,
    801 F. Supp. 1101 (S.D.N.Y. 1992)....................................................................5, 9

*Lauder v. Goldhamer*,
    122 A.D.3d 908 (2d Dep't 2014) ....................................................................10, 13

*MacArthur v. Bank of New York*,
    524 F. Supp. 1205 (S.D.N.Y. 1981)....................................................................11

*Merck Eprova AG v. ProThera, Inc.*,
    670 F. Supp. 2d 201 (S.D.N.Y. 2009)....................................................................4

*Murray v. Met. Life Ins. Co.*,
    583 F.3d 173 (2d Cir. 2009)....................................................................5

*Noval Williams Films LLC v. Branca*,
    128 F. Supp. 3d 781 (S.D.N.Y. 2015) .................................................... *passim*

*Paretti v. Cavalier Label Co.*,
    722 F. Supp. 985 (1989) ....................................................................6

*Rsch. Found. for State Univ. of New York v. Telluric Labs, LLC*,
    2022 WL 16789970 (E.D.N.Y. Aug. 24, 2022)....................................................................13

*Skiff-Murray v. Murray*,
    3 A.D.3d 610 (3d Dep't 2004) ....................................................................13

*Starke v. SquareTrade, Inc.*,
    913 F.3d 279 (2d Cir. 2019)....................................................................7

*Wickes v. Ward*,
    706 F. Supp. 290 (S.D.N.Y. 1989) ....................................................................12

*Zagari v. Zagari*,
    295 A.D.2d 891 (4th Dep't 2002) ....................................................................14

**Rules and Regulations**

22 N.Y.C.R.R. § 1200.3.7....................................................................*passim*

Fed. R. Civ. P. 12(b)(6)....................................................................1

Defendants Madison Square Garden Entertainment Corp. and John Eversole respectfully submit this Memorandum of Law in support of their motion to disqualify Ethan M. Krasnoo and Reavis Page Jump LLP ("RPJ"), from continuing to represent Plaintiff Donald Ingrasselino in this action (the "Motion").[1]

## PRELIMINARY STATEMENT

This case presents a paradigmatic example of when a plaintiff's counsel has become enmeshed in the substantive facts at issue, thereby rendering his testimony a necessity and threatening the fairness and integrity of the judicial process. Five of Plaintiff's nine causes of action implicate Mr. Krasnoo, who is Plaintiff's attorney, in at least one material respect. Put simply, Mr. Krasnoo's testimony will be material to the elements of, and Defendants' defenses to, the majority of his claims in this action. Mr. Krasnoo's primary witness status compels disqualification of him and his firm—to hold otherwise invites severe prejudice to Defendants, eventual jury confusion, and collateral prejudice to Plaintiff. Sound judicial administration cautions against these undesirable outcomes. And disqualification at this early stage, as opposed to later in the case, would avoid substantial hardship. The Court has not yet ruled on the sufficiency of the Complaint, discovery has not yet begun, and trial, if any, is years away. Thus, Plaintiff's new counsel would have the opportunity to litigate this case from its near inception. By contrast, postponing disqualification until discovery has commenced or concluded, and thousands of pages of documents have been exchanged and testimony elicited from numerous witnesses, exposes Plaintiff and Defendants to greater uncertainty.

---

[1] Defendants have concurrently moved to dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6). To the extent the Court dismisses Plaintiff's fourth, fifth, sixth, eighth, and ninth causes of actions, this Motion would be moot.

For the reasons stated below, the Court should disqualify Mr. Krasnoo and RPJ from continuing to represent Plaintiff here.

## **FACTUAL BACKGROUND**

For the purposes of this Motion, Defendants incorporate by reference the factual background set forth in their motion to dismiss the Complaint and state as follows. *See* ECF No. 17.

Plaintiff asserts nine causes of action, which fall into three distinct buckets. *First*, Plaintiff alleges discrimination, retaliation and other labor law violations, under the New York State Human Rights Law, the New York City Human Rights Law and the New York Labor Law. *See* ECF No. 1 ("Compl.") ¶¶111-151, 167-172.

*Second*, Plaintiff contends that MSG entered into an enforceable agreement, or at the very minimum made "unequivocal and express verbal and written promises, representations, and guarantees" to engage in mediation with Plaintiff (the fourth, fifth and sixth causes of action, hereinafter the "Mediation Claims"). *Id.* ¶¶153, 158.[2] The exchange underlying Plaintiff's theory acknowledges that any such agreement or representation to mediate was expressly predicated on Plaintiff "provid[ing] MSG with documentary evidence that supported his claims against [MSG]." *Id.* ¶¶155, 158. And as MSG explained to Plaintiff's counsel—in the portion of Exhibit A to the Complaint that Plaintiff deceivingly redacts—that documentary evidence "[was] critical to MSG being able to obtain settlement authority to assist" in resolving the matter. *See* ECF No. 18 (Declaration of Shawn Patrick Regan ("Regan Decl.") in Support of Motion to Dismiss Complaint, Ex. A).

---

[2] The Mediation Claims are (1) breach of contract, (2) promissory estoppel, and (3) breach of the implied covenant of good faith and fair dealing.

The individual who negotiated with MSG and its counsel in the aftermath of Plaintiff's termination was Mr. Krasnoo, a partner at RPJ and the signatory of the Complaint. The Mediation Claims are outlined in six paragraphs that reveal the centrality of Mr. Krasnoo's involvement. Compl. ¶¶103–108. The mediation proposal was allegedly "initially raised by MSG's counsel on a phone call with Plaintiff's counsel." *Id.* ¶103. Prior to the filing of the Complaint, "counsel for Plaintiff and MSG engaged in discussions regarding possible resolution of the matter." *Id.* In particular, "MSG's counsel proposed [to Plaintiff's counsel] engaging in private mediation . . . but in offering to do so, MSG's counsel confirmed its client would only agree to participate if Mr. Ingrasselino first provided documentary evidence in support of his legal claims." *Id.* Another phone call allegedly occurred on August 21, 2024, again involving Plaintiff's counsel. *Id.* ¶104. Following that phone call, Plaintiff's counsel wrote an email to MSG's counsel expressly referencing a "proposal from our call last week," in which the parties' attorneys allegedly discussed "providing some documentary evidence to [MSG] prior to mediation in exchange for the agreement that [MSG] will attend and pay for private mediation." *Id.* There is nothing to indicate that anyone other than Mr. Krasnoo and MSG's counsel was present for all of these phone calls or party to the discussions. Indeed, Mr. Krasnoo is the only attorney from RPJ present on the multiple emails attached to the Complaint as exhibits.

Plaintiff alleges that, following these "negotiations" and after Plaintiff proffered evidence he contends supports his claims, Plaintiff "engaged and paid his counsel to draft a mediation statement, in addition to paying for work in connection with submitting the evidentiary documentation to MSG." *Id.* ¶108. Plaintiff further alleges that, on January 21, 2025, "MSG's counsel abruptly informed [Plaintiff's] counsel that MSG would not participate in the mediation, despite being reminded of MSG's contractual obligations to mediate." *Id.* Moreover, the

Complaint asserts that "MSG's counsel made false representations regarding the nature of the parties' agreement and prior communications with [Plaintiff's] counsel, which conflicted with the plain language of the written agreement between the parties." *Id.*

Paragraphs 103 through 108 of the Complaint critically place Mr. Krasnoo (and by extension his law firm) squarely at the heart of Plaintiff's Mediation Claims. Mr. Krasnoo allegedly was approached by MSG to mediate, "negotiated" terms on behalf of Plaintiff, reached an agreement to mediate on behalf of Plaintiff, worked with Plaintiff to locate and produce documentary evidence to MSG, worked on a mediation statement, was informed by MSG that it would not be mediating and was the recipient of false representations regarding the purported agreement or promise to mediate. *See id.* ¶¶103–108.

*Third*, in his final bucket of claims, Plaintiff asserts unjust enrichment and conversion (the "Property Claims"), arising from MSG's alleged retention of Plaintiff's personal property following his termination. *Id.* at pp. 58–59. Plaintiff alleges that he was "mandated" to "leave behind some of his belongings," though concedes that MSG returned some of his belongings and inquired as to any other property that purportedly remains in its possession. *Id.* ¶100. It was Mr. Krasnoo—yet again acting on behalf of Plaintiff in communications with MSG—who "provid[ed] MSG an itemized list of the specific property" not yet returned or reimbursed. *Id.*

## ARGUMENT

### I.    LEGAL STANDARD.

While disqualification of counsel is a "matter committed to sound discretion of the district court," *Noval Williams Films LLC v. Branca*, 128 F. Supp. 3d 781, 790 (S.D.N.Y. 2015) (quotation marks and citation omitted), doubts must be resolved in favor of the moving party and disqualification. *See Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 207 (S.D.N.Y. 2009); *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 231 (S.D.N.Y. 2010). Motions to disqualify

are subject to a high standard of proof, but should be granted even in the absence of a clear ethical breach "where necessary to preserve the integrity of the adversary process." *Bd. of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979).

New York courts frequently disqualify counsel where breach of contract is asserted and an advocate-witness has individualized knowledge or was intensely involved in the negotiation or drafting of the agreement at issue. *See, e.g.*, *Anderson & Anderson LLP-Guangzhou v. N. Am. Foreign Trading Corp.*, 3 N.Y.S.3d 284, 2014 WL 5394465 (Sup. Ct. N.Y. Co. 2014), *aff'd*, 139 A.D.3d 464 (1st Dep't 2016); *Kubin v. Miller*, 801 F. Supp. 1101 (S.D.N.Y. 1992); *Falk v. Gallo*, 73 A.D.3d 685 (2d Dep't 2010).

## II.     RULE 3.7 OF THE NEW YORK RULES OF PROFESSIONAL CONDUCT.

Rule 3.7 of the New York Rules of Professional Conduct—otherwise known as the advocate-witness rule—prohibits a lawyer from serving as an advocate "before a tribunal in a matter in which the lawyer is *likely to be a witness on a significant issue of fact*," with certain limited exceptions discussed below. 22 N.Y.C.R.R. § 1200.3.7(a) (emphasis added). The rule is founded upon a number of concerns. *First*, the advocate-witness might be forced to vouch for his own credibility. *See Decker*, 716 F. Supp. 2d at 232; *see also Ferreira v. Rosado*,, 2006 WL 8461796, at *2 (S.D.N.Y. Mar. 2, 2006). *Second*, opposing counsel might be forced to cross-examine the advocate-witness and attempt to impeach his credibility. *See Decker*, 716 F. Supp. 2d at 232. *Third*, the advocate-witness might distort the truth because of bias towards his client and a desire to prevail in the case overall. *Id. Fourth*, an advocate-witness blurs the "line between argument and evidence," risking jury confusion. *Id.* (quoting *Murray v. Met. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009)). In all, disqualification comes from the Court's "inherent power to

preserve the integrity of the adversary process." *Noval Williams Films LLC*, 128 F. Supp. 3d at 790 (quotation marks and citation omitted).

When faced with a motion to disqualify under the advocate-witness rule, courts generally focus on the necessity of the advocate-witness's testimony and the likelihood that such testimony would be prejudicial. Necessity is determined by consideration of factors such as "the significance of the matter, weight of the testimony, and availability of other evidence." *Ferreira*, 2006 WL 8461796, at *2 (quoting *Paretti v. Cavalier Label Co.*, 722 F. Supp. 985, 986 (1989)). Prejudice is found where there exists a "substantial likelihood that the testimony would be prejudicial to the witness-advocate's client." *Noval Williams Films LLC*, 128 F. Supp. 3d at 790–91 (quotation marks and citation omitted).

## III.   SHOULD DEFENDANTS' MOTION TO DISMISS BE DENIED, MR. KRASNOO'S TESTIMONY WILL BE NECESSARY AND PREJUDICIAL.

### A.   Mr. Krasnoo's Testimony is Crucial to Five of Plaintiff's Nine Claims.

In this lawsuit, Plaintiff asserts three causes of action arising from MSG's alleged breach of an alleged agreement or promise to mediate with Plaintiff: breach of contract, promissory estoppel, and breach of the implied covenant of good faith and fair dealing. *See* Compl. ¶¶152-166. Plaintiff contends that, prior to the filing of his Complaint, "counsel for Plaintiff and MSG engaged in discussions regarding possible resolution of the matter." *Id.* ¶103. Indeed, Plaintiff identifies multiple conversations that occurred exclusively between himself and counsel for MSG. Plaintiff alleges that "MSG's counsel proposed engaging in private mediation to see if the matter could be resolved before litigation, but in offering to do so, MSG's counsel confirmed its client would only agree to participate if [Plaintiff] first provided documentary evidence in support of his legal claims." *Id.* ("The proposition was initially raised by MSG's counsel on a phone call with Plaintiff's counsel."). Plaintiff further avers the existence of a subsequent phone call "between the

6

parties' counsel," at which the terms of the purported agreement or promise to mediate were discussed and fleshed out. *Id.* ¶104. Additionally, Plaintiff claims that "MSG's counsel abruptly informed [Plaintiff's] counsel that MSG would not participate in the mediation, despite being reminded of MSG's contractual obligations to mediate" and then "made false representations regarding the nature of the parties' agreement." *Id.* ¶108. Mr. Krasnoo has effectively drafted himself into the center of the Mediation Claims: he is pled as the only individual who allegedly negotiated an agreement, understood and memorialized its purported terms, performed under the agreement, communicated with MSG in the days prior to mediation, and informed MSG of its false representations.

A necessary element of claims for both breach of contract and breach of the implied covenant of good faith is the existence of a valid and enforceable contract. *See, e.g.*, *Fuller Landau Advisory Servs. Inc. v. Gerber Fin. Inc.*, 333 F. Supp. 3d 307, 311–12, 315 (S.D.N.Y. 2018). Promissory estoppel requires a "clear and unambiguous promise." *See Gallagher v. N.Y.C. Health & Hosps. Corp.*, 2017 WL 4326042, at *7 (S.D.N.Y. Sept. 20, 2017) (quoting *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000)). Plaintiff alleges that "MSG and Mr. Ingrasselino entered into an enforceable agreement between them." Compl. ¶153. Alternatively, Plaintiff alleges that MSG "made unequivocal and express verbal and written promises, representations, and guarantees to Plaintiff, including the promise to engage in and attend mediation." *Id.* ¶158. Should the Court permit Plaintiff's Mediation Claims to proceed, Mr. Krasnoo's testimony will be indispensable in determining what was discussed on the phone calls between counsel and whether there existed a sufficient meeting of the minds or shared intent. *See Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288–89 (2d Cir. 2019) ("It is a basic tenet of contract law that, in order to be binding, a contract requires a 'meeting of the minds' and 'a manifestation of mutual assent.'" (quoting *Express Indus.*

*& Terminal Corp. v. New York State Dep't of Transp.*, 93 N.Y.2d 584, 589 (N.Y. 1999))). Indeed, his testimony will be critical to determining whether all conditions precedent to the formation of a contract were met, such that the parties became bound by any agreement or unmistakable promise to mediate.

Should the Court accept Plaintiff's argument that an agreement or promise to mediate did exist between the parties, the parties' dispute will shift to whether Plaintiff performed his obligations, MSG breached the agreement or promise, the agreement is ambiguous, and other similar questions. These questions will focus on the contingency language that MSG repeatedly emphasized in communications with Mr. Krasnoo, that mediation would only proceed upon its review of "documentary evidence in support of [Plaintiff's] legal claims." Compl. ¶103. Mr. Krasnoo's testimony will be essential to understanding Plaintiff's interpretation of the agreement, what his counsel understood to be evidence sufficient to satisfy MSG, what the parties actually agreed to, and the resolution of any contractual ambiguities. Indeed, it is clear from the Complaint that Mr. Krasnoo and MSG's counsel possessed divergent interpretations regarding the terms and scope of the agreement, considering Plaintiff alleges that MSG's counsel "made false representations [to Plaintiff's counsel] regarding the nature of the parties' agreement." *Id.* ¶108. Effectively, in the unlikely event the Court does not dismiss Plaintiff's Mediation Claims, those claims will rest on Mr. Krasnoo's testimony, rendering it both significant and weighty.

Moreover, no individual beyond Mr. Krasnoo is identified as having involvement in the mediation negotiations on behalf of Plaintiff. And that is corroborated by the emails attached as Exhibit A to the Complaint, in which the only attorney from RPJ who appears is Mr. Krasnoo. He also has direct knowledge of what was discussed on the various phone calls between the parties' counsel. While certain aspects of those conversations were memorialized in emails, in the unlikely

event Plaintiff's Mediation Claims are not dismissed, Mr. Krasnoo would be an essential witness regarding the existence of any agreement or promise to mediate, the terms thereof, the parties' differing interpretations of those terms, ambiguities in any agreement and whether conditions precedent to any agreement were satisfied.

Courts in New York frequently disqualify counsel in contract actions where the advocate-witness was involved in drafting or negotiating the agreement, or could testify as to his client's interpretation of the same. For instance, in *Anderson & Anderson LLP-Guangzhou v. N. Am. Foreign Trading Corp.*, the trial court disqualified an individual attorney who drafted the agreements that defendant asserted were ambiguous and was the only person with whom defendant negotiated the agreements. 2014 WL 5394465, at *3–5. The court found that "the outcome of the instant dispute will depend upon the contested interpretation of the Agreements," and accordingly, the attorney's "testimony about negotiating, drafting, and translating the [a]greements will be necessary to interpret the central issues underlying this breach of contract action." *Id.* at *4–5.

In *Air Italy S.p.A. v. Aviation Techs., Inc.*, 2011 WL 96682 (E.D.N.Y. 2011), the court partially disqualified an attorney who was "a key participant, and the sole representative of [plaintiff], in communications central to the dispute between [plaintiff] and [defendant]." *Id.* at *2. In that case, plaintiff argued that a contractual relationship existed even in the absence of written contracts, and so the "content of the oral and written communications between the two companies [during the relevant time period], and the intent of the parties making those communications will be the factual centerpiece of this case." *Id.* at *3.[3]

---

[3] *See also Falk*, 73 A.D.3d at 686 (affirming disqualification of plaintiffs' attorney where he was "the only person, other than the parties, who had knowledge of any discussions regarding the terms of the oral agreement underlying this litigation"); *Kubin*, 801 F. Supp. at 1113 (disqualifying attorney who had "unique knowledge about the parties' decision" to enter into agreements, which he drafted); *Ehrlich v. Wolf*, 127 A.D.3d 613, 614 (1st Dep't 2015) (affirming

Mr. Krasnoo's testimony would likely also be necessary to the Property Claims, should those claims survive Defendants' motion to dismiss. Their resolution will hinge on whether: Plaintiff identified the specific property MSG allegedly converted, MSG was authorized to possess Plaintiff's property, Plaintiff made a formal demand for return of his property (he has not pled as much), and/or MSG has refused to return Plaintiff's property to him. Here again Mr. Krasnoo occupies a central role, because according to the Complaint, "[Plaintiff's] counsel provid[ed] [MSG] an itemized list of the specific property" that Plaintiff alleges has been converted. Compl. ¶100. MSG will only be able to understand the contours of Mr. Krasnoo's communication(s) with MSG about Plaintiff's property by seeking his testimony. As with the Mediation Claims, Mr. Krasnoo's testimony in connection with the Property Claims will be significant, weighty, and without substitution. *See Ferreira*, 2006 WL 8461796, at *2.

### B.    Mr. Krasnoo's Testimony Would Result In Prejudice and Impair the Integrity of the Adversary Process.

Prejudice would abound should Mr. Krasnoo be permitted to serve as Plaintiff's counsel in this action, in light of the high likelihood that, should some or all of Plaintiff's claims survive, he will be compelled to give testimony.

The risk to MSG is multifaceted. *First*, its counsel would be forced into the undesirable position of having to cross-examine a fellow member of the bar and try to impeach his credibility. *See Decker*, 716 F. Supp. 2d at 234 (explaining that defendants' counsel would have to vigorously cross-examine counsel and seek to impeach his credibility). *Second*, while Mr. Krasnoo would likely strive to testify truthfully, his fiduciary obligations to his client may lead to testimony that,

---

disqualification of attorney since he had "become a significant witness concerning the negotiation of the agreement," among other reasons); *Gould v. Decolator*, 131 A.D.3d 448, 448–50 (2d Dep't 2015) (finding attorney was likely to be a witness with respect to significant issue of fact where he "negotiated and drafted an agreement between the parties that was relevant to" plaintiffs' cause of action); *Lauder v. Goldhamer*, 122 A.D.3d 908, 910–11 (2d Dep't 2014).

intentionally or otherwise, is shaped to best serve Plaintiff's interests and therefore distorts the truth. *Third*, Mr. Krasnoo's status as an advocate creates real risk that a future jury might afford undue weight to his testimony, especially if, for example, he were to serve as trial counsel and build rapport with the jury. *See MacArthur v. Bank of New York*, 524 F. Supp. 1205, 1208 (S.D.N.Y. 1981) ("A jury may view an attorney as possessing special knowledge of a case and therefore accord a testifying attorney's arguments undue weight."). *Fourth*, Mr. Krasnoo and RPJ would be forced to vouch for his credibility at a deposition or trial, blurring the line between argument and evidence, undermining the jury's fact-finding mission, and creating confusion. *See Air Italy S.p.A.*, 2011 WL 96682, at *5 ("[I]t seems inevitable to me that there would be blurring of the line between argument and fact that would impair the jury's fact-finding ability if Bridgeman served as trial counsel in this case."). Plaintiff himself faces a substantial likelihood of prejudice should Mr. Krasnoo be compelled to provide adverse testimony. *See Noval Williams Films LLC*, 128 F. Supp. at 791 (noting that attorney's testimony "could undermine his client's claim" and that defendants "have specifically identified testimony that [the attorney] could give that would be prejudicial to Plaintiff"). The risks of future prejudice are apparent, abundant, and avoidable.

Given that the viability of five of Plaintiff's nine causes of action will be wholly or partially dependent on Mr. Krasnoo's testimony (again, in the unlikely event those claims are not dismissed), and considering the threat of prejudice to the parties, their counsel and the integrity of the adversarial process, Mr. Krasnoo should be disqualified from continuing to represent Plaintiff in this action.

## IV. NONE OF THE RULE 3.7 EXCEPTIONS APPLY.

Rule 3.7(a) provides for a limited set of exceptions to the advocate-witness rule: (1) the testimony relates solely to an uncontested issue; (2) the testimony relates solely to the nature and value of legal services rendered in the matter; (3) disqualification of the lawyer would work

substantial hardship on the client; (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; and (5) the testimony is authorized by the tribunal. 22 N.Y.C.R.R. § 1200.3.7(a).

Exception numbers one and four do not apply because as shown above, should Defendants' motion to dismiss be denied, they anticipate fervently disputing numerous issues to which Mr. Krasnoo's testimony would relate and proffering substantial evidence as to the same. Exception number two is irrelevant here because "legal services" in this context "does not apply generally to any testimony about the nature and scope of legal services performed at any time, but rather applies only to testimony about services performed within the action where the testimony is offered." *Anderson & Anderson LLP-Guangzhou*, 2014 WL 5394465, at *5; *see also Wickes v. Ward*, 706 F. Supp. 290, 293 (S.D.N.Y. 1989) ("nature and value of legal services" exception "clearly [was] not applicable").

Plaintiff will not suffer substantial hardship. The case is still in its infancy and no discovery has been taken. "[E]fficiency and the orderly progress of the case will be better served by disqualification early in the proceeding[], when there will be time for plaintiff to find a new attorney to represent [him] without delaying the trial." *Gorbaty v. Wells Fargo Bank, N.A.*, 2011 WL 318090, at *3 (E.D.N.Y. Feb. 1, 2011); *see also Giuffre v. Dershowitz*, 410 F. Supp. 3d 564, 581 (S.D.N.Y. 2019) ("[D]isqualification early in the proceeding can give a plaintiff time to find a new attorney to represent her without delaying trial."). Indeed, if anything, Plaintiff would *benefit* from disqualification at this juncture (as opposed to later) because his substitute counsel would be afforded the opportunity to "fram[e] the pleadings, tak[e] discovery and bring[] any appropriate pretrial motions." *Gorbaty*, 2011 WL 318090, at *3. Finally, the Court has not authorized Mr. Krasnoo's testimony.

## V.    DISQUALIFICATION WOULD NOT BE PREMATURE.

There is no categorical rule that a motion to disqualify based on the advocate-witness rule cannot be brought during the pre-trial stage of a case. *See Rsch. Found. for State Univ. of New York v. Telluric Labs, LLC*, 2022 WL 16789970, at *3 (E.D.N.Y. Aug. 24, 2022) (declining to "categorically rule that the advocate-witness rule cannot be utilized to disqualify an attorney from the pre-trial stage of a case"); *Lauder*, 122 A.D.3d at 911 (affirming order granting motion to disqualify brought alongside motion to dismiss). To the contrary, as discussed above, bringing such a motion early in a case diminishes the potential prejudice a party would suffer, especially in a circumstance like this one, where the case is in its initial pleading stages.  And here too, it is immediately clear from the face of the Complaint that Mr. Krasnoo would have a significant part to play in discovery and at trial, should the litigation get that far. When that is the case—and there is little doubt the advocate-witness will end up being a material witness—disqualification is appropriate regardless of timing. *See Giuffre*, 410 F. Supp. 3d at 581 ("[T]here is no justification for allowing an attorney to represent a 'plaintiff during the pre-trial aspect of [a] litigation when it is clear that he may be a material witness at trial, and it is clear that he could be required to testify.'") (quoting *Fulfree v. Manchester*, 945 F. Supp. 768, 772 (S.D.N.Y. 1996); *see also Skiff-Murray v. Murray*, 3 A.D.3d 610, 611 (3d Dep't 2004) (affirming pretrial disqualification when there was "little doubt" as to need for attorney's testimony to establish plaintiff's cause of action).

## VI.    THE COURT SHOULD IMPUTE DISQUALIFICATION OF MR. KRASNOO TO RPJ.

Rule 3.7(b) says that a lawyer "may not act as advocate before a tribunal in a matter if . . . another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client." 22 N.Y.C.R.R. § 1200.3.7(b). For the reasons stated above, Mr. Krasnoo will likely be obliged to

testify on multiple significant issues raised by MSG, and his testimony will be conjunctively or disjunctively prejudicial to Plaintiff, MSG, MSG's counsel, and the judicial process. *See Zagari v. Zagari*, 295 A.D.2d 891, 891 (4th Dep't 2002) (disqualifying entire firm where "at least one member of the law firm representing defendant ought to be called as a witness"); *Giuffre*, 410 F. Supp. 3d at 579 (disqualifying law firm because its attorneys were "immersed in the facts it pled").

## VII. MR. KRASNOO SHOULD BE PRECLUDED FROM PARTICIPATING IN DEPOSITIONS, TRIAL, OR APPEARING AS AN ADVOCATE.

Should the Court determine that wholesale disqualification of Mr. Krasnoo and RPJ is inappropriate at this time, it should nevertheless issue an order precluding Mr. Krasnoo from participating in depositions, at trial or otherwise appearing as an advocate. To safeguard the opposing party and its counsel from prejudice, there must be a clear and bright dividing line between an attorney's service as an advocate and a witness. *See Air Italy S.p.A.*, 2011 WL 96682, at *5 (ordering limited disqualification because of concerns that attorney would be unable to call witness's testimony into question "without his argument including (or appearing to include) statements of fact. He could not challenge [the witness's] account of a conversation between them without creating the risk that the jury would treat his argument as an unsworn assertion of fact."); *see also Ferreira*, 2006 WL 8461796, at *2. Here, Mr. Krasnoo's involvement in depositions, at trial, or in any capacity that could create the appearance of impropriety or serve to confuse a jury down the road, would blur the line between argument and fact, creating the potential for eventual trial taint. Such a result would undermine the integrity of the judicial process, precisely what the advocate-witness rule is designed to prevent. *See Noval Williams Films LLC*, 128 F. Supp. 3d at 790.

## CONCLUSION

For the forgoing reasons, the Court should grant Defendants' Motion and disqualify Mr. Krasnoo and RPJ from continuing to represent Plaintiff in this action. In the alternative, the Court should bar Mr. Krasnoo from participating in depositions, at trial or in any capacity as an advocate.

DATED:       New York, New York              Respectfully submitted,
             November 24, 2025

                                             By:     */s/ Shawn Patrick Regan*
                                                     Shawn Patrick Regan
                                                     James J. La Rocca
                                                     Evan L. G. Weisberg
                                                     HUNTON ANDREWS KURTH LLP
                                                     200 Park Avenue, 52nd Floor
                                                     New York, New York 10166
                                                     Tel: (212) 309-1000
                                                     Fax: (212) 309-1100
                                                     sregan@hunton.com
                                                     jlarocca@hunton.com
                                                     eweisberg@hunton.com

                                                     Christopher M. Pardo
                                                     HUNTON ANDREWS KURTH LLP
                                                     60 State Street, Suite 2400
                                                     Boston, Massachusetts 02109
                                                     Tel: (617) 648-2800
                                                     Fax: (617) 433-5022
                                                     cpardo@hunton.com

                                                     *Attorneys for Defendants*

## <u>WORD COUNT CERTIFICATION</u>

I hereby certify that this brief complies with the word count limitations as set forth in Local Rule 7.1(c) of the United States District Court for the Southern District of New York. In determining compliance, I relied on the word count function of the word processing system used to prepare this document. The total number of words in this brief, exclusive of the table of contents, table of authorities, caption, and signature block is 4,557 words.

DATED:     New York, New York
             November 24, 2025

                        */s/ Shawn Patrick Regan*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DONALD INGRASSELINO,

                    Plaintiff,

      v.

MADISON SQUARE GARDEN
ENTERTAINMENT CORP. and JOHN
EVERSOLE, individually,

                  Defendants.

---

Case No. 1:25-cv-7980-VSB-HJR

**<u>CERTIFICATE OF SERVICE</u>**

---

        I certify that, the date set forth below, I caused the foregoing to be e-filed with the Court

via the CM/ECF system, which sent notification of such filing to the attorneys of record.

DATED:      New York, New York
               November 24, 2025

                                By:     */s/ Shawn Patrick Regan*
                                        Shawn Patrick Regan
                                        HUNTON ANDREWS KURTH LLP
                                        200 Park Avenue, 52nd Floor
                                        New York, New York 10166
                                        Tel: (212) 309-1000
                                        Fax: (212) 309-1100
                                        sregan@hunton.com

                                        *Attorneys for Defendants*