**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DONALD INGRASSELINO,

                          Plaintiff,

          v.

MADISON SQUARE GARDEN
ENTERTAINMENT CORP. and JOHN
EVERSOLE, individually,

                          Defendants.

Case No.: 1:25-cv-7980-VSB-HJR

<br>

### PLAINTIFF DONALD INGRASSELINO'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MADISON SQUARE GARDEN ENTERTAINMENT CORP. AND JOHN EVERSOLE'S MOTION TO DISMISS THE COMPLAINT

<br>

**REAVIS PAGE JUMP LLP**

41 Madison Avenue, 41st Floor
New York, New York 10010

*Attorneys for Plaintiff Donald Ingrasselino*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS .........................................................................................................2

    A. Plaintiff's Complaint Details Extensively the Discrimination
       He Endured on the Basis of His Disabilities and Age.......................................................2

       1. Plaintiff's Employment...........................................................................................2

       2. Plaintiff's Allegations Sufficiently Demonstrate He Was
          Discriminated Against on the Basis of His Disabilities..............................................3

       3. Plaintiff's Allegations Sufficiently Demonstrate He Was
          Discriminated Against on the Basis of His Age ........................................................5

    B. Plaintiff Repeatedly Reported Illegal, Wrongful, and Unsafe
       Conduct, After Which Defendants Retaliated Against Him .............................................7

       1. Plaintiff Opposed Dangerous and Unlawful Directives Requiring
          MSG Employees to Act Outside Their Legal Authority .............................................7

       2. Plaintiff Objected to Unlawful Firearm Policies and Intimidating Conduct...............8

       3. Plaintiff Repeatedly Objected to Unlawful Surveillance and
          Privacy Violations ...................................................................................................8

       4. Plaintiff Challenged the Unlawful and Discriminatory
          Use of Facial Recognition Technology .....................................................................9

       5. Plaintiff Raised Safety Concerns Regarding Faulty Security Technology,
          Withholding Other Safety Requirements, and Conflicts of Interest............................9

       6. Plaintiff Objected to Discrimination Against Female Employees and
          Other Unlawful Practices .......................................................................................10

    C. Defendants Terminated Plaintiff Under a False and Pretextual Narrative
       After Months of Discriminatory and Retaliatory Treatment ...........................................10

    D. MSG Breached Its Agreement to Mediate, Causing Plaintiff Damages .........................12

ARGUMENT ...........................................................................................................................13

    I.       MOTION TO DISMISS STANDARD.......................................................................13

    II.     PLAINTIFF SUFFICIENTLY ALLEGED CLAIMS FOR UNLAWFUL
          DISCRIMINATION AND RETALIATION UNDER THE NYSHRL
          AND NYCHRL .......................................................................................................14

A.  The Complaint Contains Ample Factual Allegations Supporting an Inference of Discriminatory and Retaliatory Motivation.......................................14

B.  Plaintiff Has Sufficiently Stated Claims for Age- and Disability-Based Discrimination.....................................................................................................17

    1.  The "Same-Actor" Inference Does Not Defeat Plaintiff's Claims at the Pleading Stage...........................................................................................17

    2.  The Complaint Alleged Conduct Exceeding Mere "Harsh Management" or "Stray Remarks"..................................................................................18

    3.  Plaintiff Alleged Facts Sufficiently Supporting a Failure-to-Accommodate Claim.........................................................................................................19

C.  The Complaint Includes Ample Factual Allegations Supporting a Retaliation Claim ....................................................................................................20

D.  Plaintiff States a Plausible Claim Under NYLL § 201-d for Discrimination Based on Lawful Recreational Activity ................................................................21

E.  Plaintiff States a Plausible Retaliation Claim Under NYLL § 740 .....................22

    1.  Plaintiff States a Retaliation Claim Based on His Objections to Instructions for MSG Threat Management Employees to Take Dangerous Actions ..........24

    2.  Plaintiff States a Retaliation Claim Based on His Objections to Defendants' Directives and Carrying of Firearms by Employees ..................25

    3.  Plaintiff States a Retaliation Claim Based on His Objections to Unlawful and Unethical Surveillance and Privacy Intrusions ........................25

    4.  Plaintiff States a Retaliation Claim Based on His Objections to Misuse of Security Technology ....................................................................26

    5.  Plaintiff States a Retaliation Claim Based on His Objections to Other Reported Wrongdoing..................................................................................27

F.  Plaintiff Adequately States Claims for Breach of Contract and Quasi-Contract ....................................................................................................27

    1.  Plaintiff Adequately States a Claim for Breach of Contract (Fourth Cause of Action) ...................................................................................28

    2.  Plaintiff Adequately States a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Sixth Cause of Action)................29

    3.  Plaintiff Adequately States a Promissory Estoppel Claim (Fifth Cause of Action) .......................................................................................30

G.  Plaintiff Adequately States Unjust Enrichment and Conversion Claims...............31

    1.  Plaintiff Adequately States an Unjust Enrichment Claim
(Eighth Cause of Action) ...................................................................32

    2.  Plaintiff Adequately States a Claim for Conversion
(Ninth Cause of Action)......................................................................32

CONCLUSION.....................................................................................................................34

# TABLE OF AUTHORITIES

**Cases**

*Adams v. City of New York*,
   2024 WL 3875772 (E.D.N.Y. Aug. 19, 2024) ........................................................... 33

*Amuse. Indus., Inc. v. Stern*,
   2016 WL 4249965 (S.D.N.Y. Aug. 11, 2016),
   *adopted by*, 2016 WL 6820744 (S.D.N.Y. Nov. 10, 2016),
   *aff'd*, 721 Fed. Appx. 9 (2d Cir. 2018) ...................................................................... 34

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012) ........................................................................................ 13

*Arista Records, LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010) ........................................................................................ 14

*Bell A. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................. 13, 14

*Berk v. Tradewell, Inc.*,
   2003 WL 21664679 (S.D.N.Y. July 16, 2003) ........................................................... 29

*Beshaw v. MVP Serv. Corp.*,
   2022 WL 4094451 (N.D.N.Y. Sept. 7, 2022) .............................................................. 19

*Betances v. MetroPlus Health Plan, Inc.*,
   2021 WL 2853363 (S.D.N.Y. July 7, 2021) ............................................................... 20

*Brewster v. City of Poughkeepsie*,
   447 F. Supp. 2d 342 (S.D.N.Y. 2006) ......................................................................... 27

*Cabrera v. CBS Corp.*,
   2018 WL 1225260 (S.D.N.Y. Feb. 26, 2018) ............................................................. 24

*Callahan v. HSBC Securities (USA) Inc.*,
   723 F. Supp. 3d 315 (S.D.N.Y. 2024) .................................................................. 23, 26

*Cheng v. New York Telephone Co.*,
   64 F. Supp. 2d 280 (S.D.N.Y. 1999) ........................................................................... 22

*Colbert v. FSA Store, Inc.*,
   2020 WL 1989404 (S.D.N.Y. Apr. 27, 2020) ............................................................. 18

*Comerica Leasing Corp. v. Bombardier Inc.*,
   2019 WL 11027701 (S.D.N.Y. Sept. 30, 2019) .......................................................... 28

*Connecticut v. Teal*,
   457 U.S. 440 (1982) .......................................................................................... 19

*Dooley v. JetBlue Airways Corp.*,
   636 F. App'x 16 (2d Cir. 2015) ........................................................................ 14

*E.E.O.C. v. Bloomberg L.P.*,
   778 F. Supp. 2d 458 (S.D.N.Y. 2011) .............................................................. 18

*Galanis v. Harmonie Club of City of New York*,
   2014 WL 4928962 (S.D.N.Y. Oct. 2, 2014) .................................................... 28

*Germantom Intl. GmbH v. Epoch Group Inc.*,
   2022 WL 17156063 (S.D.N.Y. Nov. 22, 2022) ............................................... 31

*Goldberg v. Pace Univ.*,
   88 F.4th 204 (2d Cir. 2023) ............................................................................. 31

*Hector v. Hector*,
   2023 WL 6038025 (S.D.N.Y. Sept. 15, 2023) ................................................ 33

*Hofmann v. Dist. Council 37*,
   2004 WL 1936242 (S.D.N.Y. Aug. 31, 2004),
   *adopted as modified*, 2006 WL 3476747 (S.D.N.Y. Nov. 30, 2006) ................ 19

*Installed Bldg. Products, LLC v. Cottrell*,
   2014 WL 3729369 (W.D.N.Y. July 25, 2014) ................................................. 24

*Intl. Supply, LLC v. Hudson Meridian Contruction Group, LLC*,
   2024 WL 707014 (D. Conn. Feb. 21, 2024) .................................................... 30

*Jones v. City of New York*,
   2020 WL 1644009 (S.D.N.Y. Apr. 2, 2020) .................................................... 16

*Jones v. Nike Retail Services, Inc.*,
   2022 WL 4007056 (E.D.N.Y. Aug. 30, 2022) ................................................. 32

*Juarez v. N.W. Mut. Life Ins. Co., Inc.*,
   69 F. Supp. 3d 364 (S.D.N.Y. 2014),
   *amended*, 2014 WL 12772237 (S.D.N.Y. Dec. 30, 2014) ............................... 19

*Khwaja v. Jobs to Move Am.*,
   2021 WL 3911290 (S.D.N.Y. Sept. 1, 2021) .................................................. 18

*Kitchen Winners NY Inc. v. Rock Fintek LLC*,
   668 F. Supp. 3d 263 (S.D.N.Y. 2023) .............................................................. 32

*Kramer v. Bessent*,
    2025 WL 2576482 (E.D.N.Y. Sept. 4, 2025)...................................................... 21

*LCM XXII Ltd. v. Serta Simmons Bedding, LLC*,
    2022 WL 953109 (S.D.N.Y. Mar. 29, 2022) .................................................. 30

*Lehman Bros. Int'l (Europe) v. AG Fin. Prods., Inc.*,
    2013 WL 487307 (Sup. Ct. N.Y. Cnty. 2013) ............................................... 30

*Littlejohn v. City of New York*,
    795 F.3d 297 (2d Cir. 2015)......................................................................... 14

*Lockett v. Target Corp.*,
    2022 WL 17127292 (D. Conn. Nov. 22, 2022)............................................. 17

*Lynch v. City of New York*,
    952 F.3d 67 (2d Cir. 2020)........................................................................... 13

*Member.com LLC v. Barber*,
    2013 WL 5348546 (E.D.N.Y. Sept. 23, 2013)............................................. 32

*Miller v. Levi & Korsinsky, LLP*,
    695 F. Supp. 3d 397 (S.D.N.Y. 2023).......................................................... 17

*Mitchell v. New York City Dept. of Educ.*,
    2025 WL 978366 (2d Cir. Mar. 31, 2025) ................................................... 13

*Morales v. N. Shore - LIJ*,
    2019 WL 13409226 (E.D.N.Y. Jan. 16, 2019).............................................. 20

*Pierce v. Better Holdco, Inc.*,
    2023 WL 6386920 (S.D.N.Y. Sept. 29, 2023) ............................................. 25

*Pierpoint v. Hoyt*,
    260 N.Y. 26 (1932) ..................................................................................... 33

*Porsch v. LLR, Inc.*,
    380 F. Supp. 3d 418 (S.D.N.Y. 2019).......................................................... 32

*Reach v. Healthfirst, Inc.*,
    2024 WL 4493769 (S.D.N.Y. Oct. 15, 2024) .............................................. 17

*Rekor Sys., Inc. v. Loughlin*,
    2022 WL 3020148 (S.D.N.Y. July 29, 2022) .............................................. 33

*Rios v. Buffalo and Ft. Erie Pub. Bridge Auth.*,
  2007 WL 4991189 (W.D.N.Y. Sept. 7, 2007),
  *adopted by*, 2008 WL 657121 (W.D.N.Y. Mar. 7, 2008),
  *aff'd*, 326 Fed. Appx. 612 (2d Cir. 2009) ................................................................... 27

*Romanello v. Shiseido Cosmetics Am. Ltd.*,
  2002 WL 31190169 (S.D.N.Y. Sept. 30, 2002) ............................................................ 20

*Santiago v. ACACIA Network, Inc.*,
  634 F. Supp. 3d 143 (S.D.N.Y. 2022) ........................................................................... 18

*Sapia v. Home Box Off., Inc.*,
  2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018) ............................................................... 16

*See Gilmore v. Saratoga Ctr. for Care, LLC*,
  2025 WL 48620 (N.D.N.Y. Jan. 8, 2025) ...................................................................... 26

*Setty v. Fitness*,
  2018 WL 8415414 (E.D.N.Y. Dec. 18, 2018),
  *adopted sub nom. Setty v. Synergy Fitness*,
  2019 WL 1292431 (E.D.N.Y. Mar. 21, 2019) ............................................................... 15

*Sillam v. Labaton Sucharow LLP*,
  2022 WL 1036635 (S.D.N.Y. Apr. 5, 2022) .................................................................. 31

*Sims v. First Consumers Nat'l Bank*,
  303 A.D.2d 288 (1st Dep't 2003) .................................................................................. 29

*Symotyuk-Knoll v. HealthEquity, Inc.*,
  2023 WL 5576405 (S.D.N.Y. Aug. 29, 2023) ............................................................... 20

*T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*,
  2011 WL 13305367 (E.D.N.Y. May 13, 2011) .............................................................. 33

*Tosha Restaurants, LLC v. N.Y.S. Div. of Hum. Rts.*,
  79 A.D.3d 1337 (3d Dep't 2010) ................................................................................... 20

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ....................................................................................................... 32

*Whitfield v. City of New York*,
  760 F. Supp. 3d 126 (S.D.N.Y. 2024) ........................................................................... 14

*Whitfield-Ortiz v. Dep't of Educ. of City of N.Y.*,
  116 A.D.3d 580 (1st Dep't 2014) .................................................................................. 24

*Zimmerli Textil AG v. Kabbaz*,
  2015 WL 5821523 (E.D.N.Y. Sept. 30, 2015) .............................................................. 30

**Statutes & Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................................... *passim*

 NYLL § 201-d ............................................................................................................ 21

NYLL § 740 .................................................................................................... 23, 26, 27

Plaintiff Donald Ingrasselino ("Plaintiff" or "Ingrasselino") submits this memorandum of law in opposition to the motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), of defendants Madison Square Garden Entertainment Corp. ("MSG" or the "Company") and John Eversole ("Eversole") (together, the "Defendants").

## PRELIMINARY STATEMENT

Defendants' motion to dismiss relies far more on rhetoric than on law.  It advances a narrative so far removed from the facts alleged in Plaintiff's Complaint that it raises the question of whether Defendants are deliberately mischaracterizing the allegations therein.  Stripped of its pejorative characterizations and ad hominem attacks, Defendants' brief fails to address the well-pled allegations of the Complaint – which must be accepted as true at this pleading stage – and instead asks the Court to resolve credibility and factual issues, draw inferences in Defendants' favor, and dismiss a case that sets forth classic examples of unlawful employment practices.

This case is about a senior security professional who, over the course of approximately five months, was subjected to explicit age- and disability-based hostility, relentless humiliation, and escalating retaliation after repeatedly raising legitimate concerns about illegal and unsafe conduct at one of the most high-profile entertainment venues in the country.  When Plaintiff continued to speak up, Defendants wrote him up on pretextual grounds and terminated him under the guise of a policy violation that was selectively enforced and contradicted by Defendants' own prior conduct.

Defendants' effort to repackage Plaintiff's protected complaints as mere "disagreements with management" is belied by the Complaint's detailed allegations.  Plaintiff did not simply object to style or strategy; he reported directives that required employees to act outside their legal authority, exposed staff and the public to serious danger, violated privacy laws, misused facial

recognition technology to promote discrimination, ignored mandatory league security protocols, concealed technology failures tied to conflicts of interest, and discriminated against women.  As detailed in the Complaint, Plaintiff raised these concerns directly to Defendant Eversole, to Human Resources, and to senior leadership – despite being warned that doing so would get him fired.

Defendants' attempt to justify Plaintiff's termination because of alleged "moonlighting" or "unresponsiveness" allegations, which the Complaint explicitly denies, does not withstand scrutiny at the pleading stage.  Plaintiff alleges facts in the Complaint that demonstrate the pretextual basis of these claims.  Whether Defendants' proffered justification is credible is a factual question not ripe for a motion to dismiss.

Defendants likewise ask the Court to disregard Plaintiff's contract and property claims solely on Defendants' say-so, contradicting the sufficiently pled allegations in the Complaint.

Ultimately, Defendants' motion asks this Court to do precisely what Rule 12 forbids:  credit Defendants' version of events, discount Plaintiff's allegations as "sensational," and dismiss serious claims without discovery.  Accepting the Complaint's allegations as true and drawing all reasonable inferences in Plaintiff's favor, as the law requires, Plaintiff has more than plausibly stated claims for relief.  Defendants' motion should therefore be denied.

## STATEMENT OF FACTS

A.    **Plaintiff's Complaint Details Extensively the Discrimination He Endured on the Basis of His Disabilities and Age**

1.    Plaintiff's Employment

Defendants base much of their argument that they did not discriminate against Plaintiff on the unsupported assertion that MSG and Eversole were aware of his disability and age at the time of his hire.  In so doing, Defendants manufacture extraneous facts and disregard key Complaint allegations.  Plaintiff alleges that his employment with MSG began indirectly in August 2021 as

Senior Director of Security for TAO Group Hospitality ("TAO"), then owned by MSG.  Compl. ¶30.  During his two-years in that role, Plaintiff did not report to Eversole and Eversole had no role in his hire.  *Id.* ¶31.  Only later, after MSG sold TAO, was Plaintiff contacted by Eversole and asked to return to MSG in the role of Vice President of Shared Security Services, reporting directly to Eversole for the first time.  *Id.*  Plaintiff did not report to Eversole when he was initially hired (*id.* ¶¶30-31, 36), and there are no allegations in the Complaint that Plaintiff disclosed his disability or age at the time of either of his hires by MSG (before and after the sale of TAO).  Thus, Defendants' repeated claim that MSG and Eversole had knowledge of Plaintiff's disability and age at the time of his hire is completely without support.

    2.  <u>Plaintiff's Allegations Sufficiently Demonstrate He Was Discriminated Against on the Basis of His Disabilities</u>

Plaintiff suffers from Type 1 diabetes, an autoimmune condition that requires constant and careful monitoring of his blood sugar level.  Compl. ¶34.  Contrary to Defendants' made up assertions that Plaintiff openly disclosed his condition to his colleagues, the Complaint alleges that he kept his condition private and disclosed it only when absolutely necessary, such as when he needed to inject insulin promptly.  *Id.* ¶35.  Defendants were not made aware of Plaintiff's condition at the time of his hire.  *Id.* ¶36.  Only shortly after Plaintiff returned to MSG and began reporting to Eversole was he forced to disclose his condition when Eversole, in the presence of another employee (Eversole's executive assistant), began to aggressively question Ingrasselino about why he was requesting a sick day, falsely accusing him of seeming to "always be sick."  *Id.* ¶36.

Eversole initially responded with hostility to Plaintiff's request for a sick day to attend a medical appointment related to his condition, claiming that he could not unless Plaintiff was actually sick – a claim Plaintiff confirmed with Eversole's assistant and MSG's handbook was

inaccurate. *Id.* ¶37-38.  Although Eversole ultimately approved Plaintiff's request, he did so only after making clear his displeasure at having learned of Plaintiff's medical condition.  *Id.* ¶38.

Thereafter, upon learning of Plaintiff's disability, Eversole began a relentless campaign of openly humiliating and mocking Plaintiff for suffering from diabetes, including by: telling Plaintiff in front of his colleagues that Plaintiff is "sick" and would "die if he eats sugar [because] he's weak" (Compl. ¶39); deliberately bringing desserts for the Threat Management team and placing them outside Plaintiff's office – rather than in the nearby kitchen –so he could taunt Plaintiff in front of his coworkers for being unable to eat them because he was "sick" (*id.* ¶¶3, 39); and repeatedly mocking Plaintiff in front of his direct reports, to the point they later confided they learned of Plaintiff's condition solely through Eversole's comments. (*id.* ¶39).  As a result of Eversole's conduct, Plaintiff felt humiliated and singled out, experienced exacerbated symptoms of his conditions, developed a facial rash and skin peeling due to the stress, and began isolating himself in his office to avoid Eversole's mockery.  *Id.* ¶¶40, 42-43.

To address his rash, Plaintiff requested a day off to seek medical treatment, which Eversole denied.  *Id.* ¶43.  With no alternative, Plaintiff presented himself to the office, only for Eversole to immediately ask what was "wrong" with him and tell him he looked "disgusting."  *Id.*  Eversole berated Plaintiff for the visible manifestation of the stress that Eversole himself had caused, shamed him for his appearance and stated Plaintiff could not be presented to MSG's CEO, James Dolan, looking "this way."  *Id.*  For weeks thereafter, Eversole incorporated Plaintiff's rash into his ongoing mockery, "joking" about it in connection with Plaintiff's other disabilities.  *Id.*  Plaintiff further alleges that Eversole's hostility toward disabilities and the need for time away from work to address them was not limited to Plaintiff.  Eversole recounted to Plaintiff his annoyance with a former employee whom he had "phased out" after the employee requested a

remote-work accommodation to care for a sick child.  *Id.* ¶41.

Taken in totality, these allegations sufficiently plead disability discrimination by asserting a marked change in Eversole's treatment of Plaintiff after learning of his disability, despite no change in Plaintiff's performance, a sustained pattern of public humiliation and mockery based on that disability, resistance to time off requests to address it, and ultimately Plaintiff's termination. Compl. ¶¶3, 36-40.

### 3.  Plaintiff's Allegations Sufficiently Demonstrate He Was Discriminated Against on the Basis of His Age

As the Complaint demonstrates, age was an explicit and improper factor in Defendant Eversole's employment decisions.  Plaintiff, who was 48 years old during his employment with Defendants (Compl. ¶2), became Eversole's target of discriminatory animus based on his age. After Plaintiff returned to MSG following the sale of TAO and began reporting directly to Eversole, Eversole subjected him to a sustained pattern of hostility, humiliation, and abuse based on Plaintiff's age.   Compl. ¶¶4-5, 46-47, 49-53, 56-57, 107.  Mere weeks after Plaintiff's return, Eversole remarked in reference to Plaintiff, "This is why I need to stop hiring old guys."  *Id.* ¶46. Thereafter, Eversole routinely scolded and harassed Plaintiff in meetings, on calls, and in front of colleagues and guests, repeatedly referring to him as "another old retired cop." *Id.* ¶49.  Coworkers approached Plaintiff to express sympathy, telling him that he had become "the target."  *Id.*

Eversole's age-based hostility also manifested in public humiliation and degradation of Plaintiff's authority.   When Plaintiff approved overlapping time off for two direct reports – consistent with MSG policy and after ensuring coverage – Eversole berated him as an "old failure," falsely accusing him of incompetence and forcing him to rescind the approvals in front of his team. *Id.* ¶50.  Similarly, during a Canada travel detail, after Plaintiff efficiently coordinated travel and customs clearance in less time than typical, Eversole berated him for not being faster, claiming a

"younger man" would have been faster. *Id.* ¶¶51-52. Eversole then forced Plaintiff to miss his return flight, assigning him menial tasks, and mocking and physically intimidating him in front of others. *Id.* ¶52.

Eversole's age-based comments and attacks were constant. He repeatedly referred to Plaintiff as "old" and "ugly," boasted about being younger and more successful, and questioned Plaintiff's ability to "keep up" because of his age. Compl. ¶¶4, 44, 46, 49, 53, 56. The abuse culminated in February 2024, when Eversole berated and baselessly disciplined Plaintiff for not immediately seeing an informational email sent before work hours, threatened him with a "final warning," and stated: "If you are too old to handle this level of work, I will fire you immediately for this and find someone else who is capable." *Id.* ¶55-59. That threat – explicitly tying Plaintiff's job security to his age – was overheard by a third party. *Id.*; Ex. C to Compl., Affirmation of Fiona Rooney. Unlike Plaintiff, other younger employees who bore actual responsibility with the matter were not disciplined. *Id.* ¶62. Eventually, Plaintiff's employment was terminated as a result of the discrimination based on his age. Compl. ¶¶2, 17, 139.

Plaintiff's age discrimination claims are further supported by Eversole's treatment of other employees and candidates based on age. For example, Eversole rejected an employment candidate in 2021 believed to be in his mid-50s solely because he was "too old." Compl. ¶¶4, 44.

Taken together, these allegations sufficiently plead discriminatory animus against Plaintiff, including a sustained pattern of age-based hostility, and with respect to Plaintiff, humiliation, disparate discipline, and threats of replacement by a younger employee, beginning shortly after Plaintiff began reporting directly to Eversole and continuing through the termination of his employment.

### B. Plaintiff Repeatedly Reported Illegal, Wrongful, and Unsafe Conduct, After Which Defendants Retaliated Against Him

Throughout his employment, Plaintiff repeatedly raised good-faith concerns about conduct he reasonably believed was illegal, unsafe, unethical, and contrary to Company policy and industry requirements. These concerns were not abstract "disagreements" with business judgment, but concrete objections to directives that placed employees and the public in danger, exceeded MSG's legal authority, violated privacy laws, and exposed the Company to significant liability. Plaintiff raised these concerns directly to Eversole, HR, and senior leadership – despite being warned that doing so would result in termination. Compl. ¶¶64-69, 76-77, 81, 83-85, 86-90.

1. Plaintiff Opposed Dangerous and Unlawful Directives
Requiring MSG Employees to Act Outside Their Legal Authority

As a senior security executive, Plaintiff raised well-founded concerns about Eversole's ad hoc and reckless directives requiring MSG employees to chase criminals, scalpers, homeless individuals, and drug dealers, and to embed themselves in riots and protests unrelated to MSG, often without equipment, training, or law enforcement backup. *Id.* ¶¶65-66.

Plaintiff specifically objected to directives forcing his team to intervene on public property outside MSG property lines despite lacking any legal authority to do so. *Id.* ¶¶66-67. He repeatedly warned Eversole that these orders exceeded MSG's jurisdiction and legal authority, and exposed employees to physical harm and criminal and civil liability. *Id.* ¶67. He escalated the same safety concerns of Investigator Beatriz Solorzano. *Id.* Plaintiff raised these safety concerns to Eversole, VPs James Rivera and Brian Conroy, and SVPs Darren Claphan and Ryan Dupree. *Id.* ¶67. Even though Plaintiff was explicitly warned raising such concerns with Eversole would get him and Solorzano fired, he did so anyway. *Id* ¶¶67-68. Eversole responded by (1) demanding Plaintiff fire Solorzano if she could not comply with his unlawful directives, (2) retaliating against

Solorzano by monitoring her hours and pushing for discipline, and (3) telling Plaintiff not to raise concerns with HR. *Id.* ¶¶68-69.

The precise dangers Plaintiff warned about ultimately materialized when two MSG employees were attacked by scalpers outside MSG property. *Id.* ¶70.

2. <u>Plaintiff Objected to Unlawful Firearm Policies and Intimidating Conduct</u>

Plaintiff also repeatedly raised concerns about Eversole's unlawful and dangerous firearms practices. He objected to Eversole's expectation and instructions that MSG employees carry firearms while performing security functions for MSG, despite lacking any legal basis to do so, including under the Law Enforcement Officers Safety Act ("LEOSA"), and despite the absence of any written protocols governing when or how firearms could be used. Compl. ¶¶8, 71-72.

Plaintiff himself declined to carry a firearm due to concerns about being forced into illegal use. *Id.* ¶73. He further objected to Eversole's open and visible carrying of a firearm throughout the office, conduct Plaintiff believed violated the law and was intended to intimidate employees. *Id.* ¶74. Plaintiff raised these concerns directly with Eversole and senior leadership in December 2023, requesting the ability to implement written standards and lawful guidelines for his team's protection. *Id.* ¶75. His requests were ignored, and his complaints dismissed.

3. <u>Plaintiff Repeatedly Objected to Unlawful Surveillance and Privacy Violations</u>

Plaintiff opposed directives requiring him and his team to conduct intrusive background checks and surveillance of private individuals, including guests, customers, lawyers, and sports fans who posed no legitimate threat to MSG but were perceived as personal enemies of Eversole or James Dolan. Compl. ¶¶76-77. He repeatedly asked for justification and limitations, warning that the unlawful directives created significant legal exposure. *Id.* ¶76.

Plaintiff also objected to Eversole and at least *four* other senior leaders about insider

"threat" investigations that involved compiling extensive personal identification and financial information, often disseminated without safeguards and shared via unsecured platforms. *Id.* ¶77. In response, Plaintiff was yelled at, told to stop asking questions, and ordered to comply. *Id.*

In one example, on January 16, 2024, Plaintiff was present when Eversole directed him and others to secretly record conversations and eavesdrop on a complainant in litigation involving James Dolan. *Id.* ¶¶78–79. In response (contrary to Defendants' false statement to the contrary, Mot. at 6, fn. 5), Plaintiff warned of potential witness tampering, only to be told to "stop thinking" and carry out the directive, of which he later intentionally avoided participation. *Id.* ¶79.

4. <u>Plaintiff Challenged the Unlawful and Discriminatory Use of Facial Recognition Technology</u>

Plaintiff also raised concerns about MSG's use of facial recognition technology, which he believed was being used not to aid law enforcement, as MSG publicly claimed, but to foster discrimination and exclude individuals the Company viewed as undesirable, including based on gender identity. Compl. ¶¶80-82. In December 2023 and January 2024, Plaintiff specifically asked Eversole to implement clear policies and procedures and posed reasonable questions about how MSG would handle identifying fugitives. *Id.* ¶81. Eversole refused to answer or establish guidelines. *Id.*

5. <u>Plaintiff Raised Safety Concerns Regarding Faulty Security Technology, Withholding Other Safety Requirements, and Conflicts of Interest</u>

Plaintiff also objected to MSG's continued deployment of defective weapons-detection technology supplied by Xtract One Technologies, which Plaintiff and his team determined had an approximate 70% failure rate in detecting unauthorized objects, including several weapons. Compl. ¶¶83-85. Plaintiff warned that continued use posed grave public safety risks and violated MSG's adherence to contractually obligated NBA and NHL security protocols. *Id.* ¶¶84–85.

Plaintiff further raised concerns of legal violations underlying Eversole's and SVP Darren Claphan's conflicts of interest due to their financial ties to Xtract One and their self-interested concealment of known failures. *Id.* ¶¶12, 83-85. Rather than address these risks, Plaintiff was ordered to suppress the findings and provide any notes only to Eversole. *Id.* ¶84. In addition, Plaintiff complained about Eversole's disregard for public safety and contractual obligations by restricting the use of required K-9 dog units security measures at MSG sporting events, based on Dolan's personal disdain for dogs. Compl. ¶¶15, 90, 106.

### 6. Plaintiff Objected to Discrimination Against Female Employees and Other Unlawful Practices

Plaintiff repeatedly complained about Eversole's illegal discriminatory and abusive treatment of female employees, including derogatory slurs, removal of office doors, and gender-based mistreatment. Compl. ¶¶86-89. Plaintiff raised these concerns to Eversole, senior leadership, and Human Resources, including the week prior to his termination, and was repeatedly told to "keep quiet" or face repercussions. *Id.* ¶¶13-14, 88–89.

Ingrasselino also noticed other illegal and unsafe practices, such as, surveillance, privacy, and labor violations, he reasonably believed would have been futile to raise. Compl. ¶¶10, 16, 76, 92, 146-47. Taken together, the Complaint's allegations establish that, contrary to Defendants claim, Plaintiff did far more than merely "disagree" with management. He repeatedly reported specific, dangerous, unlawful, and discriminatory conduct to Eversole, HR, and senior leadership, and was retaliated against for doing so. *Id.* ¶¶7, 13-14, 62, 67, 69, 75, 77, 83, 88-89.

### C. Defendants Terminated Plaintiff Under a False and Pretextual Narrative After Months of Discriminatory and Retaliatory Treatment

After approximately five months of discrimination, a hostile work environment, and retaliation for requesting accommodations and repeatedly raising concerns about unlawful and

unsafe conduct, Defendants terminated Ingrasselino under the guise of a verifiably false pretext. Compl. ¶93.  Multiple coworkers informed Plaintiff that Eversole's targeting of him was driven by his persistent questioning of and opposition to Defendants' improper practices.  *Id.*

On February 12, 2024, Plaintiff attended a public event in Brooklyn at the invitation of former coworkers and close friends who were part of an A-list performer's security team.  Compl. ¶94.  Prior thereto, Eversole actively encouraged Plaintiff's celebrity connections, stating they could be leveraged for MSG's benefit, and directed Ingrasselino to use those connections to promote MSG events and teams.  *Id.*

Before attending the event, Plaintiff informed his team of his plans and his telephone availability.  *Id.* ¶95.  He confirmed it was a "dark" night at MSG, all responsibilities were covered, and Eversole and Dolan were traveling.  *Id.*  Plaintiff also told Eversole, who did not voice any objection, that he had been invited and planned to attend as a spectator.  *Id.* ¶96.  At the event, Plaintiff did not perform any security work; he waited briefly outside while the celebrity was escorted inside, then left after the show and returned to work the following morning.  *Id.* ¶97.

Approximately one week later, on February 20, 2024, Plaintiff was confronted by Eversole, SVP Ryan Dupree, and Senior Director Glenn Macapagal.  Compl. ¶98.  Eversole questioned Plaintiff about an alleged "outside employment" policy Ingrasselino had never been informed of, despite previously being told by Eversole that no related disclosure was necessary so long as he was always available.  *Id.*

During the meeting, Eversole indicated, without explanation, that Plaintiff's event attendance constituted a conflict of interest.  Compl. ¶99.  Without permitting Plaintiff to respond, Eversole displayed his gun, told Plaintiff he was fired, had him escorted out, giving him fewer than ten minutes to collect his belongings, forcing him to leave behind numerous items that were later

damaged or not returned at all.  Compl. ¶100.

Ingrasselino's termination basis was pretextual.  He did not work at the event or elsewhere during his employment with MSG (Compl. ¶¶94-98, 101), as discovery will establish.  Even if he had, MSG had no policy against it and routinely allowed similarly-situated employees, including Plaintiff's predecessor and Eversole's close associates, to engage in outside employment without consequence.  *Id.* ¶101.  Prior to Plaintiff's termination, Eversole had already hired his replacement.  *Id.* ¶102.

As a result of Defendants' unlawful conduct, Plaintiff has suffered substantial damages, including financially, mentally, and physically.  *Id.* ¶¶42, 109-10.

### D.  MSG Breached Its Agreement to Mediate, Causing Plaintiff Damages

Before litigation, Plaintiff and MSG engaged in discussions to resolve Plaintiff's claims.  On September 3, 2024, MSG's counsel expressly agreed in writing that "MSG will pay for the cost of a mediation . . . contingent on your providing documentary or other evidence prior to the mediation supporting your client's position."[1]  Compl. ¶103-104, Ex. A.  The parties thereafter jointly scheduled mediation for January 30, 2025.  *Id.*

Plaintiff fully performed under the agreement.  More than a month before the scheduled mediation date – counsel for Plaintiff produced and transmitted extensive documentary evidence supporting Plaintiff's employment claims, including approximately 100 screenshots of text messages.  Compl. ¶105.  Defendants' extraneous allegation that he merely re-sent documents he had already provided to MSG is befuddling, unsupported, and false (Mot. at 11).  On December 31, 2024 – a month before the mediation – Plaintiff provided the sworn affirmation of Fiona

---

[1]      Defendants place undue emphasis on the fact that Plaintiff partially redacted the email exchange attached as Exhibit A to the Complaint, which was done as a professional courtesy to avoid publicly disclosing Defendants' negotiation and settlement strategy.  As evident from Defendants unredacted copy, the provision has no bearing on Plaintiff's claims.

Rooney corroborating his allegations, including confirming age-based threats and misogynistic remarks by Eversole.   On January 13, 2025, Plaintiff produced and transmitted the sworn affirmation of former MSG VP of Security Ty Munn, attesting to certain unsafe and unlawful conduct by senior MSG leadership.  Compl. ¶¶106–107; Declaration of Ethan Krasnoo ("Krasnoo Decl.") ¶¶7-10 and Exhibits A-C thereto (reflecting transmission date of emails referenced in Compl. ¶¶106–107).

In reasonable reliance on MSG's agreement to mediate, Plaintiff incurred legal fees preparing the evidentiary submissions and mediation statement.  Compl. ¶108.  At the mediator's request, both parties confirmed that mediation statements would be exchanged by January 23, 2025.  *Id.*  However, on January 21, 2025 – just two days before the submission deadline – MSG abruptly withdrew from the mediation, despite Plaintiff's full compliance and MSG's prior written commitments.  *Id.*

<u>**ARGUMENT**</u>

## I.    <u>MOTION TO DISMISS STANDARD</u>

The adequacy of a complaint is established where it contains "sufficient factual matter to state a claim to relief that is plausible on its face."  *Mitchell v. New York City Dept. of Educ.*, 2025 WL 978366, at *2 (2d Cir. Mar. 31, 2025).  "[I]n determining whether a complaint states a claim that is plausible, the court is required to proceed 'on the assumption that all the [factual] allegations in the complaint are true.'"  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (citing *Bell A. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  When reviewing a motion to dismiss pursuant to Rule 12(b)(6), "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side."  *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).  Accordingly, "all factual allegations in the

complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). The plaintiff is not required to plead "specific evidence" explaining precisely how the defendant's conduct was unlawful, *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119-21 (2d Cir. 2010), but only facts sufficient to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations omitted).

In light of this standard, which "does not impose a probability requirement at the pleading stage" (*id.* at 556), Defendants' motion to dismiss the Complaint should be denied.

## II. PLAINTIFF SUFFICIENTLY ALLEGES CLAIMS FOR UNLAWFUL DISCRIMINATION AND RETALIATION UNDER THE NYSHRL AND THE NYCHRL

### A. The Complaint Contains Ample Factual Allegations Supporting an Inference of Discriminatory and Retaliatory Motivation

A plaintiff alleging discrimination "is not required to plead a *prima facie* case under *McDonnell Douglas* . . . to defeat a motion to dismiss," but instead "need only give plausible support to a minimal inference of discriminatory motivation." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (internal citation omitted); *see also Whitfield v. City of New York*, 760 F. Supp. 3d 126, 136 (S.D.N.Y. 2024) (same).

The Complaint easily clears that threshold. Far from relying on conclusory assertions or isolated remarks, Plaintiff pleads a detailed, cohesive narrative of explicit discriminatory animus, temporal proximity, escalating hostility, retaliatory treatment, and pretext, all of which independently and collectively support a reasonable inference that Defendants' actions were motivated by discrimination and retaliation.

*First*, the Complaint alleges repeated, overtly discriminatory statements by Defendant Eversole tied directly to Plaintiff's protected characteristics. Plaintiff alleges that Eversole mocked

and humiliated him because of his age and disability, openly questioned whether Plaintiff was "too old" to do the job (Compl. ¶¶4, 44, 46, 49-53, 56, 62, 107), threatened to replace him with someone younger (*id.* ¶¶51-54, 57), and reduced Plaintiff's professional worth to his medical condition, describing him as "sick" and "weak" (*id.* ¶¶3, 36-39). These are not stray remarks divorced from decision-making; they were made by a decisionmaker, repeatedly, in close temporal proximity to adverse actions, including Plaintiff's write-up and termination. *Id.* ¶¶2, 14, 17, 55-56, 59-60. Such allegations alone suffice to support an inference of discriminatory intent at the pleading stage.

*Second*, the Complaint pleads a clear pattern of retaliatory escalation following Plaintiff's protected activity. Plaintiff repeatedly raised good-faith concerns about conduct he reasonably believed to be illegal, unsafe, or unethical (*id.* ¶¶7-11, 15, 65, 68, 69, 75-77, 83, 90), including, *inter alia*, directives that required employees to act outside their legal authority (*id.* ¶¶65-70), misuse of surveillance and facial recognition technology (*id.* ¶¶8-11, 76-77, 81), unlawful firearms practices (*id.* ¶¶71-75), violations of mandatory security protocols (*id.* ¶¶7-8, 15, 67, 75, 90), conflicts of interest affecting public safety (*id.* ¶¶12, 83, 84), and discriminatory treatment, including of women (*id.* ¶¶13-14, 86-89). Plaintiff alleges that he raised these concerns directly to Eversole, to HR, and to senior leadership, often detailing names and titles of the individuals to whom he complained and their responses (or lack of) thereto. Compl. ¶¶14, 65, 67, 69, 75-77, 81, 84, 88-89. Shortly thereafter, Plaintiff was subjected to heightened scrutiny, hostility, and discipline, culminating in his termination. *Id.* ¶¶17, 68, 77, 79, 81. Temporal proximity between protected activity and adverse action is itself sufficient to support an inference of retaliation, and Plaintiff alleges far more. *Setty v. Fitness*, 2018 WL 8415414, at *11 (E.D.N.Y. Dec. 18, 2018), *adopted sub nom. Setty v. Synergy Fitness*, 2019 WL 1292431 (E.D.N.Y. Mar. 21, 2019).

*Third*, the Complaint pleads facts supporting pretext for retaliation, including his

termination. Defendants' asserted reason for termination –that Plaintiff violated an outside employment policy – is contradicted by allegations that Plaintiff performed no outside work, attended a public event as a spectator with Defendants' encouragement, and violated no known policy. Compl. ¶94-101. Plaintiff further alleges that similarly situated executives routinely engaged in outside employment without sanction. *Id.* ¶¶98, 101. The Complaint also alleges that Defendants had already identified Plaintiff's replacement before terminating him, further demonstrating pretext. *Id.* ¶102.

*Fourth*, Defendants' attempt to reframe Plaintiff's allegations as mere complaints about "management style" ignores the Complaint's substance and improperly minimizes conduct that courts routinely recognize as actionable. Public humiliation, blatantly discriminatory remarks, threats of termination tied to protected characteristics, disparate discipline, suppression of whistleblowing activity, and the imposition of impossible or selectively enforced standards are not benign supervisory practices. Accepting the allegations as true, Plaintiff plausibly alleges a hostile work environment animated by discriminatory and retaliatory animus.

*Fifth*, Defendants' reliance on competing factual narratives wholly outside and unsupported in the Complaint, such as their claims that Eversole hired or promoted older employees, that Plaintiff was terminated solely for misconduct, or that Plaintiff's complaints lacked merit, only underscore why dismissal is inappropriate. These are quintessential factual disputes that cannot be resolved on a motion to dismiss. Rule 12 does not permit, as Defendants ask, the Court to "assume facts that are not alleged in the complaint and to draw inferences against Plaintiff" or credit Defendants' explanations, weigh competing inferences, or test Plaintiff's credibility. *Jones v. City of New York*, 2020 WL 1644009, at *14 (S.D.N.Y. Apr. 2, 2020); *Sapia v. Home Box Off., Inc.*, 2018 WL 6985223, at *7 (S.D.N.Y. Dec. 17, 2018).

Accordingly, taken together and viewed under the proper pleading standard, these allegations readily support an inference of discriminatory and retaliatory motivation. Defendants' motion to dismiss should therefore be denied.

**B. Plaintiff Has Sufficiently Stated Claims for Age- and Disability-Based Discrimination**

Plaintiff need only plead facts that plausibly support an inference that age or disability discrimination played some role in the hostile work environment and termination – he has done so. *See Reach v. Healthfirst, Inc.*, 2024 WL 4493769, at *7 (S.D.N.Y. Oct. 15, 2024) (plaintiff must "plausibly allege at least minimal support for the proposition that the employer was motivated by discriminatory intent.").

1. The "Same-Actor" Inference Does Not Defeat Plaintiff's Claims at the Pleading Stage

Defendants' reliance on the "same-actor inference" is misplaced and neither mandatory nor dispositive, particularly at the pleading stage. The same actor inference "is just that, an inference, and it is not dispositive of Plaintiff's claims" where Plaintiff has set forth allegations sufficient to show a discriminatory animus and is entitled to all inferences being drawn in his favor. *Lockett v. Target Corp.*, 2022 WL 17127292, at *12 (D. Conn. Nov. 22, 2022) (internal quotation marks omitted).

Here, Plaintiff alleges that discriminatory animus by Eversole, who was not involved in his initial hiring, arose after he began reporting directly to Eversole, was forced to disclose his disability, and engaged in protected activity. *See Miller v. Levi & Korsinsky, LLP*, 695 F. Supp. 3d 397, 414 (S.D.N.Y. 2023) (rejecting same-actor inference and finding it less compelling "where circumstances could have changed over the course of time."); Compl. ¶¶30-31, 36. Under these circumstances, the same-actor inference carries little weight and certainly does not warrant dismissal as a matter of law. *See, e.g., Colbert v. FSA Store, Inc.*, 2020 WL 1989404, at **4-5

(S.D.N.Y. Apr. 27, 2020) (denying dismissal on the basis of same-actor inference).

  2.  The Complaint Alleges Conduct Exceeding
      Mere "Harsh Management" or "Stray Remarks"

Defendants' attempt to characterize the Complaint as alleging that  a rude supervisor ignores allegations explicitly tying Eversole's conduct to Plaintiff's age and disability.  Plaintiff alleges repeated remarks referring to him as "old," "old retired cop," "old failure"; preferential treatment for younger individuals; unfounded references to how a younger person would perform better than Plaintiff; threats to fire him because he was "too old to handle this level of work"; and mockery of his disabilities by calling him "sick" and "weak."  Compl. ¶¶3-5, 39, 44, 46, 49-51, 53, 56-57, 62, 107, 123.

Courts consistently hold that a decisionmaker's repeated discriminatory remarks made in temporal proximity to adverse actions (as the Complaint reflects occurred for Plaintiff), support an inference of discrimination at the pleading stage.  *See e.g.*, *Santiago v. ACACIA Network, Inc.*, 634 F. Supp. 3d 143, 152-53 (S.D.N.Y. 2022) (declining to dismiss statements suggestive of discriminatory bias as stray remarks where they were made publicly by high-ranking decisionmaker); *Khwaja v. Jobs to Move Am.*, 2021 WL 3911290, at *4 (S.D.N.Y. Sept. 1, 2021) ("repeated discriminatory comments by a decisionmaker in the lead-up to a termination decision can give rise to a plausible inference of discrimination").

That Eversole may also have treated others poorly does not negate discriminatory animus toward Plaintiff.  *E.E.O.C. v. Bloomberg L.P.*, 778 F. Supp. 2d 458, 473 (S.D.N.Y. 2011) ("An employer is free to treat all employees badly, but it cannot single out members of a protected group and treat them differently" (internal citation and quotation marks omitted)).  The cases Defendants cite – where courts dismissed claims based on sporadic or innocuous remarks – are inapposite. Here, the alleged comments were explicit, repeated, made publicly, and temporally connected to

18

adverse actions. *See, e.g.*, *Hofmann v. Dist. Council 37*, 2004 WL 1936242, at **9-10 (S.D.N.Y. Aug. 31, 2004), *adopted as modified*, 2006 WL 3476747 (S.D.N.Y. Nov. 30, 2006) (declining to treat age-related remarks –asking plaintiff his age, suggesting retirement, referring to "senior moments," and stating that plaintiff was too old to perform certain work – as stray remarks, and finding them pervasive and temporally proximate to the adverse employment action). Regardless, comparative treatment requires discovery analysis, including of others' protected characteristics and Eversole's discrimination against them. *See* Compl. ¶44 (refusal to hire employee based on age); *id.* ¶41 (disability accommodation request denied and employee terminated).

Further, contrary to Defendants' argument, "discrimination against one employee cannot be cured, or disproven, solely by favorable, or equitable, treatment of other employees" in the same protected class. *Juarez v. N.W. Mut. Life Ins. Co., Inc.*, 69 F. Supp. 3d 364, 369-70 (S.D.N.Y. 2014), *amended*, 2014 WL 12772237 (S.D.N.Y. Dec. 30, 2014) (internal quotation marks omitted); *Connecticut v. Teal*, 457 U.S. 440, 455 (1982) (same).

3. <u>Plaintiff Alleged Facts Sufficiently Supporting a Failure-to-Accommodate Claim</u>

Defendants' argument seeking to dismiss Plaintiff's failure to accommodate a disability claim fails because it mischaracterizes Plaintiff's allegations and improperly resolves factual disputes at the pleading stage. The Complaint alleges that Plaintiff's accommodation requests were met with hostility, resistance, and interference and that his request for a sick day to seek medical treatment for his rash was denied. Compl. ¶¶36-38, 43. That Eversole ultimately approved a single sick day does not defeat Plaintiff's claim. *See Beshaw v. MVP Serv. Corp.*, 2022 WL 4094451, at *3 (N.D.N.Y. Sept. 7, 2022) (declining to dismiss accommodation claim based on plaintiff's request for time off to seek medical care and finding that "[c]onstructive failure to accommodate can be demonstrated when an employer delays in granting an accommodation, and

the delay is motivated by the employer's discriminatory intent").

Defendants' reliance on *Morales v. N. Shore - LIJ*, and *Romanello v. Shiseido Cosmetics Am. Ltd.* is misplaced as in those cases the plaintiffs alleged their employers granted all requested accommodations without resistance.  2019 WL 13409226 (E.D.N.Y. Jan. 16, 2019); 2002 WL 31190169 (S.D.N.Y. Sept. 30, 2002).  Here, by contrast, Plaintiff alleges that he was initially denied time off, interrogated and shamed for requesting it, and later discouraged from seeking additional medical leave, while his disability became a basis for ridicule and adverse treatment. Compl. ¶¶36-43. Those allegations plausibly state a failure-to-accommodate claim at the pleading stage.

Additionally, separate from accommodations sought for his diabetes, as addressed above, Plaintiff's claim that he was denied accommodation to take time off for medical treatment of his rash, a disability under the NYSHRL and NYCHRL, is also actionable.  *See Tosha Restaurants, LLC v. N.Y.S. Div. of Hum. Rts.*, 79 A.D.3d 1337, 1342 (3d Dep't 2010)) (skin condition constitutes disability); *Betances v. MetroPlus Health Plan, Inc.*, 2021 WL 2853363, at \*\*7-8 (S.D.N.Y. July 7, 2021) (denial or reprimand for requesting time off to attend medical appointments actionable).

### C.  The Complaint Includes Ample Factual Allegations Supporting a Retaliation Claim

Plaintiff's allegations that he was subjected to hostility, ridicule, heightened scrutiny, and adverse treatment after requesting an accommodation (time off) related to his disabilities plausibly state a retaliation claim under the NYCHRL.  Compl. ¶¶35-43, 138; *see Symotyuk-Knoll v. HealthEquity, Inc.*, 2023 WL 5576405, at \*5-6 (S.D.N.Y. Aug. 29, 2023) ("Under the NYCHRL, requests for a reasonable accommodation are a protected activity" and plaintiff need only "show that something happened that was reasonably likely to deter a person from engaging in protected activity" (internal quotation marks omitted)).  Recent amendments to the NYSHRL clarify its

application as well.[2]  Whether Defendants ultimately granted some of the accommodations, as discussed *supra*, does not foreclose retaliation liability where, as alleged here, the request triggered hostility and adverse treatment.

Defendants' causation argument likewise fails.  The temporal proximity between Plaintiff's requests for accommodation in November and December 2023 was sufficiently close to his termination in February 2024 (two to three months and within the timeframe provided in Defendants' temporal scope cited caselaw).  *See* Mot. at 16-17 (four months or less establishes temporal proximity).  Further, even if the temporal proximity alone were insufficient – it is not – Plaintiff's allegations of Eversole's pattern of antagonism and escalating hostility following Plaintiff's disability disclosure and requesting accommodations (including hostility, mockery, resistance) is sufficient to plead causation at the pleading stage. Compl. ¶¶35-43, 56-61; *see Kramer v. Bessent*, 2025 WL 2576482, at *30 (E.D.N.Y. Sept. 4, 2025) ("where adverse actions occur against a backdrop of continuing antagonism and frustration, those allegations can establish a drumbeat of retaliatory animus from which a plausible inference of causation can be drawn" (internal quotation marks omitted)).[3]

### D.  Plaintiff States a Plausible Claim Under NYLL § 201-d for Discrimination Based on Lawful Recreational Activity

Defendants' argument seeking to dismiss Plaintiff's NYLL § 201-d claim – argued in the alternative that Plaintiff was illegally terminated for engaging in lawful recreational activities – fails because it is premised on a rewriting of the Complaint, not its actual allegations.  The

---

[2]     *Senate Bill S3398*, THE NEW YORK STATE SENATE (Dec. 5, 2025), https://www.nysenate.gov/legislation/bills/2025/S3398.

[3]     Plaintiff's aiding and abetting component of his NYSHRL claim against Eversole is also sufficiently pled in the alternative where multiple MSG executives and HR personnel participated in and facilitated the discriminatory and retaliatory conduct at issue.  *See, e.g.*, Compl. ¶¶ 7, 13-14, 62, 67, 69, 75, 77, 88.  Discovery may reveal that Eversole acted in concert with or substantially assisted other decisionmakers.

Complaint repeatedly and unequivocally alleges that Plaintiff attended the February 12, 2024 event recreationally, as a guest of friends, and was not engaging in outside employment of any kind. Compl. ¶¶94-97, 101. At the pleading stage, those allegations must be accepted as true, and Defendants' unsupported and contrary factual narrative alleging he was working at the event cannot support dismissal. In contrast, in Defendants' case, *Cheng v. New York Telephone Co.*, the plaintiff conceded that he was performing paid work for another employer. 64 F. Supp. 2d 280, 285 n.2 (S.D.N.Y. 1999). Here, by contrast, Plaintiff explicitly alleges he was not working. Compl. ¶¶94-97, 101.[4]

Defendants' argument that Plaintiff's event attendance was not "outside work hours" fares no better where he alleges he attended after completing his work responsibilities during the evening when MSG had no events, after alerting Eversole. Compl. ¶¶95-96.

Finally, Defendants' contention that Plaintiff was terminated for reasons unrelated to the recreational activity is improper and again ignores the pleading. *See* Compl. ¶¶94–101. Further, contrary to Defendants' misstatement, the Complaint discloses that the event Plaintiff attended was a concert (Compl. ¶168). Section 201-d prohibits precisely this type of conduct: terminating an employee because of lawful recreational activity and then attempting to justify the decision through post hoc characterizations.

Accepting the Complaint's allegations as true, Plaintiff has plausibly alleged that he was terminated because of lawful recreational activity protected by NYLL § 201-d.

### E. Plaintiff States a Plausible Retaliation Claim Under NYLL § 740

Defendants' improper motion seeks dismissal of Plaintiff's NYLL § 740 claim only by recasting the Complaint as alleging "personal disagreements" and by imposing pleading

---

[4] Plaintiff's documentary evidence will prove in discovery that he was not working.

requirements far more demanding than the statute or Rule 12 requires.

Section 740 protects employees who disclose, object to, or refuse to participate in activities they reasonably believe violate the law or pose a substantial and specific danger to public health or safety.  NYLL § 740(2).  Far from merely "forwarding" complaints or asking innocuous questions, Plaintiff repeatedly objected to and warned Eversole and senior leadership about illegal and unsafe directives.  Compl. ¶¶6-17, 65-85.

At the pleading stage, Plaintiff need only plead: (1) activity protected by the statute; (2) retaliatory action; and (3) some causal connection between the protected activity and the adverse action.  *Callahan v. HSBC Securities (USA) Inc.*, 723 F. Supp. 3d 315, 326 (S.D.N.Y. 2024).  Here, Plaintiff alleges precisely that: he repeatedly raised objections directly to Eversole and, where permitted, other MSG leadership and HR about practices he reasonably believed were unlawful and/or dangerous to the public, and he was then subjected to escalating discipline and ultimately termination.  Compl. ¶¶6-17, 65-92, 93-100, 143-151.  Causation may be pled, as Plaintiff has here, through "circumstantial evidence [including] temporal proximity [or] inconsistent [policy] application[,] antagonism or hostility" toward complainant or his protected activity, and pretext for adverse actions.  *Callahan*, 723 F. Supp. 3d at 324.

 Defendants' effort to slice alleged complaints into "non-protected" or "undated" complaints is a pleading-stage gambit, not a legal standard (*see supra* at §II(E)).  The Complaint pleads a sustained course of internal objections to specific practices, escalating hostility, discipline, and termination – more than sufficient to plausibly allege § 740 protected activity and a causal link.  Also, Plaintiff has pled he reasonably believed MSG's activities he complained about were illegal and unsafe.  At this stage, Plaintiff is not required to incant the phrase "reasonable belief," nor to plead a detailed legal analysis;  it is sufficient he allege facts from which such a belief may

plausibly be inferred.  *See Installed Bldg. Products, LLC v. Cottrell*, 2014 WL 3729369, at \*4 (W.D.N.Y. July 25, 2014).

Defendants' repeated refrain that Plaintiff alleged only "questions," "personal disagreements," or policy concerns ignores the actual allegations, and improperly asks this Court to resolve factual disputes.

Defendants also repeatedly conflate the evidentiary standard appropriate on a motion for summary judgment or a pleading subject to Fed. R. Civ. P. 9(b) with the pleading standard relevant on a motion to dismiss.  At this stage, Plaintiff "need not allege sufficient facts to prove the claim at trial. . . . [nor] allege with such specificity the who, what, when, and where that Defendants suggest is required."  *Cabrera v. CBS Corp.*, 2018 WL 1225260, at \*5 (S.D.N.Y. Feb. 26, 2018) (internal citation omitted).

1.  Plaintiff States a Retaliation Claim Based on His Objections to
    Instructions for MSG Threat Management Employees to Take Dangerous Actions

Plaintiff alleges he objected directly to Eversole about his unsafe directives requiring Threat Management employees to act as law enforcement for MSG, which was in violation of law, even though warned by senior leadership that doing so would get him fired.  Compl. ¶¶7, 65-68. Those are not "forwarded complaints" in the abstract; they are pleaded objections to specific unsafe practices and an effort to stop them.  *Id.*

Defendants' reliance on *Whitfield-Ortiz v. Dep't of Educ. of City of N.Y.* is misplaced.  That case turned on a failure to plead the substance and context of the complaints.  116 A.D.3d 580, 581 (1st Dep't 2014).  Here, Plaintiff pleads the substance in detail – alleging complaints and, *inter alia*, unsafe deployments, lack of authority off-property, lack of backup, and foreseeable risks. Compl. ¶¶65-69.

2. <u>Plaintiff States a Retaliation Claim Based on His Objections to Defendants' Directives and Carrying of Firearms by Employees</u>

Plaintiff alleges he complained about armed employees being placed into volatile encounters with no protocol for governing the lawful use of firearms, creating serious public safety risks and liability; that Eversole's mandate to arm employees in an enforcement capacity for MSG and on Company premises exceeded any legal authority, including LEOSA, thereby endangering the public; and that Eversole, who unlike others was not subject to LEOSA, openly carried a firearm without any legal authority in a manner intended to intimidate.  Compl. ¶¶8, 71–75. Plaintiff's complaints were not just a "request" to write guidelines, but rather a warning that the practice was unlawful and unsafe.  *Id.* ¶75.  At the pleading stage, that suffices to allege protected activity and a reasonable belief of unlawful and dangerous conduct.  *See Pierce v. Better Holdco, Inc.*, 2023 WL 6386920, at *6 (S.D.N.Y. Sept. 29, 2023) (employee's complaints need not specify actual law violated but must provide notice of complained conduct).  Plaintiff also refused to adhere to the directive to carry a firearm, as he told Eversole, because of its illegality.  Compl. ¶¶73, 75.

3. <u>Plaintiff States a Retaliation Claim Based on His Objections to Unlawful and Unethical Surveillance and Privacy Intrusions</u>

Plaintiff's claims that he "consistently and repeatedly voiced his concerns over the blatant and unjustified and extra-jurisdictional invasion of [non-threatening personal enemies of MSG's CEO, and MSG guests, vendors, customers, and employees]' privacy for what appeared to be no legitimate business reason," which he raised to specifically identified senior leadership.  Compl. ¶¶76–77.  These complaints of illegal behavior stemmed from orders to conduct intrusive background checks and surveillance on the individuals where MSG lacked protocols for storage and dissemination of such highly sensitive personal information.  *Id.*

Plaintiff also pleads a concrete example of these wrongs and his rebuffed warnings about witness tampering and his refusal to comply with Eversole's directive to secretly record and eavesdrop on a litigation complainant.  Compl. ¶¶78-79.  Defendants' insistence that Plaintiff "did not even know the underlying reason for the assignments" is contrary to these pleaded facts; and is irrelevant to the claim.  *See Gilmore v. Saratoga Ctr. for Care, LLC*, 2025 WL 48620, at *11 (N.D.N.Y. Jan. 8, 2025) ("under . . .  Section 740, Plaintiff need only allege that she disclosed misconduct that she reasonably believed was illegal").

4.  Plaintiff States a Retaliation Claim Based on
His Objections to Misuse of Security Technology

Defendants again falsely minimize Plaintiff's allegations as mere "questions" about technology, when the Complaint alleges Defendants' dismissal of Plaintiff raising the need to "revamp the [facial recognition] program" to create policies to make it lawful, precisely because he believed it was being used illegally – including discriminatorily targeting individuals – under a pretextual law-enforcement narrative.  Compl. ¶¶80-82.  Plaintiff's complaints also underscored his public-safety concerns, including the absence of any procedure to address the identification of an individual on the FBI's "Most Wanted" list by MSG's facial recognition software.

As to Xtract One, despite Defendants' misrepresentations, Plaintiff alleges he identified and "expressly flagg[ed] concerns to his superior over the grave risks the inferior technology posed to MSG, its patrons, and public safety" stemming from a roughly 70% failure rate in weapons detection, and was ordered not to disclose the failures and to send his notes only to Eversole, thereby concealing them, while leadership continued deployment of the technology due to conflicts of interest, of which Plaintiff *also* complained as unlawful.  Compl. ¶¶83-85.  The Complaint plausibly alleges Plaintiff objected to conduct he reasonably believed was dangerous and wrongful, and he suffered adverse action thereafter.  *See Callahan*, 723 F. Supp. 3d at 326-27.

5. Plaintiff States a Retaliation Claim Based on
   His Objections to Other Reported Wrongdoing

Plaintiff also alleges he objected to Eversole's discriminatory and harassing treatment of female employees, including directing Plaintiff to avoid them because they were "crazy bitches," removing their office doors, and sexualizing one – conduct Plaintiff raised with Eversole and then escalated to leadership and HR despite being warned to "keep quiet" or be fired. Compl. ¶¶86-89. Plaintiff further alleges, contrary to Defendants misrepresentation, that he raised safety and protocol concerns about unlawful restriction of police dog use, despite its importance to public safety and compliance with league requirements. *Id.* ¶¶90, 146.

Plaintiff further pleads additional directives he believed were unlawful, such as breaking into employees' personal email accounts and underreporting hours. *Id.* ¶¶91-92. Plaintiff did not raise formal complaints of these issues solely because he believed doing so would be futile, which remains protected under the law under evaluation of the facts. NYLL ¶740(3). Where, as here, an employer is clearly aware of unlawful practices but does nothing to stop them, a plaintiff's decision not to report the conduct is reasonable, particularly where prior complaints were unavailing. *See Brewster v. City of Poughkeepsie*, 447 F. Supp. 2d 342, 354-55 (S.D.N.Y. 2006) (employer's retaliation, ignoring, or resistance to similar complaints in the past supports futility). Plaintiff has sufficiently pled that reporting these claims and others would have been futile, which is what is required at the pleading stage. *See Rios v. Buffalo and Ft. Erie Pub. Bridge Auth.*, 2007 WL 4991189, at *11 (W.D.N.Y. Sept. 7, 2007), *adopted by*, 2008 WL 657121 (W.D.N.Y. Mar. 7, 2008), *aff'd*, 326 Fed. Appx. 612 (2d Cir. 2009) (a plaintiff's belief that consistently complaining would be futile, and the reasonableness of that belief, presents a question for the jury).

**F.  Plaintiff Adequately States Claims for Breach of Contract and Quasi-Contract**

Defendants' effort to dispose of Plaintiff's contract and quasi-contract claims rests on

factual disputes, selective readings of the parties' communications, and an invitation for the Court to weigh evidence – all improper on a motion to dismiss. Accepting the Complaint's allegations as true, Plaintiff plausibly pleads a binding agreement to mediate, MSG's breach of that agreement, and damages based on Plaintiff's reliance on that agreement. At minimum, Plaintiff adequately pleads promissory estoppel in the alternative.

    1.  <u>Plaintiff Adequately States a Claim for Breach of Contract (Fourth Cause of Action)</u>

Defendants' argument that no contract existed – or that MSG was free to withdraw at will – misstates both the Complaint and the governing law.

*First*, the Complaint plausibly alleges contract formation. MSG proposed mediation *conditioned* on Plaintiff providing documentary evidence "supporting [Plaintiff's] position" in the dispute. Compl. ¶104. Plaintiff accepted that proposal. MSG then confirmed in writing that it would attend and pay for private mediation before a chosen mediator, and the parties jointly selected and confirmed a mediation date. Compl. ¶¶103-104. *See Galanis v. Harmonie Club of City of New York*, 2014 WL 4928962, at *7 (S.D.N.Y. Oct. 2, 2014) ("Agreements that address all negotiated terms in an email are generally enforceable in the same manner as more formal written agreements").

*Second*, Defendants' reliance on the word "contingent" with respect to Plaintiff's provision of the documentary evidence does not defeat contract formation. A condition precedent does not negate an agreement; it merely delays performance until the condition is satisfied. *See Comerica Leasing Corp. v. Bombardier Inc.*, 2019 WL 11027701, at *5 (S.D.N.Y. Sept. 30, 2019). The Complaint alleges that Plaintiff satisfied MSG's condition by producing extensive documentary support, including text messages and third-party affirmations, well in advance of the scheduled mediation. Compl. ¶¶105–107. MSG's view of the evidence is irrelevant as Plaintiff plausibly

alleges he complied with his contractual obligation to provide documentation "supporting [his] position." Compl. ¶106.

*Third*, the Complaint alleges breach; nothing in the agreement granted MSG unilateral discretion to withdraw from mediation after the condition was satisfied, let alone weeks after confirming attendance and coordinating with the mediator. Compl. ¶108.

Finally, Defendants' focus on the timing or "quality" of Plaintiff's submissions raises factual issues inappropriate for resolution under Rule 12(b)(6). Sufficiency even with mere detailed examples of evidence provided is clearly pled. Compl. ¶¶105-107, Compl. Exs. B-C. Defendants blatantly misrepresent Plaintiff's contractual performance in falsely claiming the evidence produced was inadequate, consisted solely of two affirmations and reproductions of previously provided documents (when documents were in fact never previously produced), and were submitted on the eve of mediation, when in reality, evidence was produced at least a month in advance of the mediation. *See* Krasnoo Decl. ¶¶7-10 and Exs. A-C thereto (emails reflecting transmission). At this stage, Plaintiff need only plausibly allege claim elements, not prove them; he has done so.

    2.  <u>Plaintiff Adequately States a Claim for Breach of the Implied<br>Covenant of Good Faith and Fair Dealing (Sixth Cause of Action)</u>

"Under New York law, every contract contains an implied obligation by each party to deal fairly with the other and to eschew actions which would deprive the other party of the fruits of the agreement." *Berk v. Tradewell, Inc.*, 2003 WL 21664679, at *7 (S.D.N.Y. July 16, 2003) (internal quotation marks omitted). Such claim is not duplicative of a breach of contract claim where, as here, the plaintiff alleges that the defendant exercised discretion or acted in bad faith to frustrate the plaintiff's right to receive the benefits of the agreement. *Sims v. First Consumers Nat'l Bank*, 303 A.D.2d 288, 290 (1st Dep't 2003) (denying dismissal at pleading stage and recognizing that

"there are cases in which both are viable"). At the pleading stage, Plaintiff is expressly entitled to plead violations of express and implied contractual duties in the alternative. *See Zimmerli Textil AG v. Kabbaz*, 2015 WL 5821523, at *7 (E.D.N.Y. Sept. 30, 2015); *Lehman Bros. Int'l (Europe) v. AG Fin. Prods., Inc.*, 2013 WL 487307 (Sup. Ct. N.Y. Cnty. 2013) (preserving implied covenant claims particularly appropriate at pleadings stage where parties dispute contractual obligations).

The Complaint plausibly alleges precisely that: MSG agreed to attend and pay for private mediation, induced Plaintiff to expend substantial time and legal fees to comply with MSG's evidentiary demands and the mediator's deadlines, and then, after confirming the mediation date, mediator, and attendance, abruptly withdrew on the eve of submission, rendering Plaintiff's performance meaningless. Compl. ¶¶103-108. This conduct goes beyond a simple failure to perform; it plausibly alleges bad-faith conduct designed to deprive Plaintiff of the benefit of the mediation agreement itself.

"[E]ven an explicitly discretionary contract right may not be exercised in bad faith so as to frustrate the other party's right to the benefit under the agreement." *LCM XXII Ltd. v. Serta Simmons Bedding, LLC*, 2022 WL 953109, at *16 (S.D.N.Y. Mar. 29, 2022). Plaintiff alleges that MSG exercised its purported discretion opportunistically, only after extracting performance from Plaintiff, thereby frustrating the very purpose of the agreement and violating the implied covenant.

Accordingly, Defendants' motion to dismiss the implied covenant claim should be denied.

3. <u>Plaintiff Adequately States a Promissory Estoppel Claim (Fifth Cause of Action)</u>

Defendants' attack on Plaintiff's promissory estoppel claim fares no better. Plaintiff is expressly permitted to plead promissory estoppel in the alternative to breach of contract. *See* Fed. R. Civ. P. 8(d)(2); *see also Intl. Supply, LLC v. Hudson Meridian Contruction Group, LLC*, 2024 WL 707014, at *4 (D. Conn. Feb. 21, 2024) (Rule 8(d) "permits a plaintiff to plead alternative

theories for relief, such as breach of contract and promissory estoppel"); *Germantom Intl. GmbH v. Epoch Group Inc.*, 2022 WL 17156063, at *4 n.4 (S.D.N.Y. Nov. 22, 2022) (same).  Defendants' reliance on *Goldberg v. Pace Univ.* is misplaced, where the court found the claims to be duplicative only because, unlike here, there was no dispute over the existence or enforceability of the contract. 88 F.4th 204, 214-15 (2d Cir. 2023).  Defendants' duplication argument therefore fails at the pleading stage.

Substantively, the Complaint plausibly alleges a clear and unambiguous promise: MSG's written confirmation that it would attend and pay for private mediation before a specified mediator, conditioned on Plaintiff providing supporting evidence.  Compl. ¶104.  Plaintiff alleges reasonable reliance, including incurring attorneys' fees to comply with MSG's demands, which he did, and mediator-imposed deadlines.  Compl. ¶108.

Defendants' argument to the contrary is clearly false upon review of the written promise (see Compl. Ex. A), as is their claim that Plaintiff's reliance was unreasonable, for which they provide no support, because MSG later deemed mediation "not worthwhile" which improperly collapses the merits into the pleading analysis.  Regardless, whether MSG acted reasonably or opportunistically after inducing Plaintiff's reliance is not ripe for resolution.  *Sillam v. Labaton Sucharow LLP*, 2022 WL 1036635, at *7 (S.D.N.Y. Apr. 5, 2022) ("whether or not a plaintiff reasonably relied upon a defendant's statements is generally a factual inquiry that cannot be resolved on a motion to dismiss" (internal quotation marks omitted)).

### G.  Plaintiff Adequately States Unjust Enrichment and Conversion Claims

Defendants' arguments rest on a cramped reading of the Complaint and a misapplication of standing and pleading principles.  At this stage, Plaintiff has plausibly alleged both unjust enrichment and conversion, and Defendants' effort to dismiss these claims prematurely should be

rejected.

1. <u>Plaintiff Adequately States an Unjust Enrichment Claim (Eighth Cause of Action)</u>

Defendants are mistaken that Plaintiff lacks Article III standing for his unjust enrichment claim. Plaintiff alleges a concrete economic injury: the loss of personal property with monetary and sentimental value that MSG has failed to return or reimburse. Compl. ¶¶100, 174–176. That is not a hypothetical harm, it is a present deprivation of property, which easily satisfies the injury-in-fact requirement under *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). Courts routinely recognize that the wrongful retention of personal property, as alleged in the Complaint, constitutes a concrete injury. *See*, *e.g.*, *Jones v. Nike Retail Services, Inc.*, 2022 WL 4007056, at *1 (E.D.N.Y. Aug. 30, 2022); *Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019).

Defendants' reliance on Plaintiff's use of conditional language ("if MSG is not required to return …") elevates form over substance. The Complaint plainly alleges that MSG has retained Plaintiff's property and has not returned or reimbursed him for all items identified. Compl. ¶100. That is sufficient to plead unjust enrichment.

Nor is the unjust enrichment claim dismissible as duplicative of his conversion claim at the pleading stage. *See Membler.com LLC v. Barber*, 2013 WL 5348546, at *14 (E.D.N.Y. Sept. 23, 2013) ("Plaintiff may appropriately plead claims for the tort of conversion and the quasi-contract claim of unjust enrichment in the alternative"); *Kitchen Winners NY Inc. v. Rock Fintek LLC*, 668 F. Supp. 3d 263, 297 (S.D.N.Y. 2023) (same).

 Accordingly, dismissal of the unjust enrichment claim at this stage is improper.

2. <u>Plaintiff Adequately States a Claim for Conversion (Ninth Cause of Action)</u>

Defendants' attack on the conversion claim is equally unavailing.

First, Plaintiff sufficiently identifies the property at issue. The Complaint alleges that

Plaintiff left numerous specific personal items at MSG and that only some were returned, including specified items "MSG has retained" as listed out in the Complaint. Compl. ¶100. A plaintiff need not plead an exhaustive inventory to state a conversion claim; identifying categories and specific items suffices. *See Adams v. City of New York*, 2024 WL 3875772, at *8 (E.D.N.Y. Aug. 19, 2024); *see also Hector v. Hector*, 2023 WL 6038025, at *7 (S.D.N.Y. Sept. 15, 2023) (denying motion to dismiss as to conversion claim "comprised of specific, identifiable things" including "furniture").

Second, contrary to Defendants' false allegation, Plaintiff adequately pleads demand and refusal. "[W]here one party is the owner and entitled to possession, and the other is in possession and 'after notice and demand for a delivery . . . refuse[s] without qualification to comply[, t]hat ordinarily is conclusive evidence of a conversion." *T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, 2011 WL 13305367, at *5 n.4 (E.D.N.Y. May 13, 2011) (citing *Pierpoint v. Hoyt*, 260 N.Y. 26, 30 (1932)). Plaintiff alleges that MSG requested an itemized list of remaining property, that such a list was provided by counsel, and that MSG nonetheless failed to return all items. Compl. ¶100. At the pleading stage, those allegations are more than sufficient to support an inference of refusal. *See Rekor Sys., Inc. v. Loughlin*, 2022 WL 3020148, at *11 (S.D.N.Y. July 29, 2022) (for conversion,"[a] demand need not use the specific word 'demand' so long as it clearly conveys the exclusive claim of ownership [and] a refusal need not use the specific word 'refuse.'") (internal citations omitted)).

Third, MSG's partial return of property besides that alleged as withheld (see Compl. ¶¶100, 178-179) is irrelevant and does not defeat the claim. Conversion may lie where a defendant returns some items while continuing to retain others. *See Amuse. Indus., Inc. v. Stern*, 2016 WL 4249965, at *13 (S.D.N.Y. Aug. 11, 2016), *adopted by*, 2016 WL 6820744 (S.D.N.Y. Nov. 10, 2016), *aff'd*,

721 Fed. Appx. 9 (2d Cir. 2018).

In short, Plaintiff plausibly alleges ownership, Defendant's unauthorized retention of the property, and resulting damages.  Defendants' motion seeks to litigate facts and should be denied.

## **CONCLUSION**

For the reasons set forth above, Defendants' motion should be denied in its entirety.  In the alternative, Plaintiff should be granted leave to amend the Complaint to address any deficiencies identified by the Court.

Dated:  New York, New York
         January 16, 2026

REAVIS PAGE JUMP LLP

By:    _____

Ethan M. Krasnoo, Esq.
Alice K. Jump, Esq.
Hannah R. Brefeld, Esq.
41 Madison Avenue, 41st Floor
New York, New York 10010
Tel.: (212) 763-4100
EKrasnoo@rpjlaw.com
AJump@rpjlaw.com
HBrefeld@rpjlaw.com

*Attorneys for Plaintiff Donald Ingrasselino*

## WORD COUNT CERTIFICATION

I hereby certify that this memorandum of law complies with the word count limitations as set forth in Rule 7.1(c) of the Local Rules of the United States District Court for the Southern District of New York and enlarged to 10,000 words pursuant to Magistrate Judge Henry J. Ricardo's January 13, 2026 Order granting in part and denying in part Plaintiff's letter motion for leave to file excess words in a memorandum of law in opposition to Defendants' motion to dismiss (Dkt. No. 27).   In determining compliance, I relied on the word count function of the word processing system used to prepare this document.  The total number of words in this memorandum of law, exclusive of the table of contents, table of authorities, caption, and signature block is 9,975 words.

Dated: January 16, 2026
      New York, New York

Ethan M. Krasnoo