# Exhibit C

# Ariana Zhao

| | |
|---|---|
| **From:** | Ariana Zhao |
| **Sent:** | Monday, January 13, 2025 12:58 PM |
| **To:** | 'kleblang@kramerlevin.com'; Fisher, Jordan |
| **Cc:** | Ethan Krasnoo |
| **Subject:** | Ingrasselino v. Madison Square Garden Entertainment Corp. et al.; Additional Pre-Mediation Documents |
| **Attachments:** | Sworn Affirmation of Ty Munn.pdf; Sworn Affirmation of Fiona Rooney.pdf |

Good afternoon:

On behalf of Mr. Krasnoo, please find attached two additional pre-mediation documents we are producing in the above-referenced matter, which have been marked "Confidential."

Please note that we are reproducing the Sworn Affirmation of Fiona Rooney which was previously transmitted to you without the "Confidential" designation, though we indicated in the cover email that the Affirmation should be treated as such.

Best,
Ariana

_____

Ariana L. Zhao
Senior Litigation Paralegal & Business Manager
She|Her|Hers

REAVIS PAGE JUMP LLP | 41 Madison Avenue | 41st Floor | New York, NY |10010
tel:  212.763.4100 | direct:  212.763.4156 | fax:  212.763.4141
azhao@rpjlaw.com  |  www.rpjlaw.com

Attorneys and Affiliated Attorneys admitted to practice law in New York, Connecticut, District of Columbia, Massachusetts, New Jersey, California, Colorado, Hawaii, Oregon, Texas, U.S. Patent and Trademark Office, European Union, England and Wales, France (Paris Bar) and Sweden.  RPJ is a certified Women's Business Enterprise.

*This communication is subject to attorney-client privilege and contains confidential information intended for the individual or entity named above only. If you are not the intended recipient, or the employee or agent responsible for delivery to the intended recipient, you are hereby notified that any review, distribution or copying of this communication is strictly prohibited. Kindly advise us if you received this communication in error so we may redeliver it to the intended recipient.  Thank you.*

DONALD INGRASSELINO,

           Complainant,

-against-

MADISON SQUARE GARDEN ENTERTAINMENT CORP. and JOHN EVERSOLE,

           Respondents.

JAMS Ref. No.: 1425043190

## SWORN AFFIRMATION OF TY MUNN

STATE OF NEW YORK    )
                             ) SS.:
COUNTY OF SUFFOULK    )

TY MUNN, under penalties of perjury, hereby says:

1. I am a New York resident over 18 years of age and have known Donald ("Donnie") Ingrasselino for over 3 years.

2. I am a former Vice President of Security for Madison Square Garden (MSG), from 2021-2024 where I worked overseeing all security aspects of Radio City Music Hall, the Beacon Theater, and the Chicago Theater. During this time, I worked directly for SVP Darren Claphan, where we both were under the direction of EVP/CSO John Eversole.

3. During my tenure with MSG, working for Mr. Eversole's Threat Management Team, I have been ordered to do many things I felt were unsafe, unethical, and illegal, all at the direction of Mr. Eversole. The below listed examples, I believe did not allow me to perform my job duties safely and accurately:

    a. On many occasions, I was ordered to stop traffic, close sidewalks, and unlawfully detain individuals in the venues and demand identification. I was also ordered to direct my security staff to do the same, outside the department's job descriptions and the scope of MSG's work or authority. This is also against NY State/City laws without

    proper permits or NYPD's authorization, which MSG did not maintain. This practice also put my security staff in harm's way, forcing them to encounter unsafe traffic conditions and aggressive individuals who would often become abusive and combative. Additionally, this put my staff and guests at risk for injury; and put MSG personnel at risk for loss of their security state licensing and liability.

    b. I was directed numerous times, by Mr. Eversole, to conduct surveillance on guests at my venue's, which was often intrusive, unreasonable, and unnecessary. This demand would never include context regarding the individual's threat level or security concerns and was almost always unrelated to security matters, but personal to Mr. Eversole. I was not permitted to ask questions or follow up on the tedious work performed. I believe, these practices often resulted in a waste of MSG's time, finances, and personnel, and I believed, and continue to believe, opened all staff and MSG to unethical and illegal surveillance and business practices.

    c. I was an intricate part of MSG's Facial Recognition Program and used the software daily with many positive attributes. However, I believed, and continue to believe, that Mr. Eversole openly used this program to target individuals without reason or justification, often using it to bar or ban his enemies or personal enemies of Mr. Dolan, or to identify individuals for Mr. Eversole's unnecessary surveillance practices, as mentioned above. This directive from Mr. Eversole included the targeting of lawyers engaged in litigation against MSG and other individuals whom Mr. Eversole often joked about openly with me and other leadership. I believed, and continue to believe, that these directives are highly unethical, intrusive to guests, a misuse of the surveillance program, and wasteful of company assets.

4.   Mr. Eversole not only directed me to conduct unethical and illegal practices but violated MSG's own policy and procedures including as I detail below:

    a. I was made aware and observed several times, that Mr. Eversole enforced a personal, "rule" that I believe he created requiring that the security team at "the Garden" not allow Mr. Dolan or him (Mr. Eversole) to see the Security/Police K-9s any time they walked near the venues. This was done during events and during guests' ingress times, causing risk and hindrance to proper security procedures and security searching mechanisms. This directive I believe, from Mr. Eversole was due to Mr. Dolan's disdain for dogs and caused a serious risk factor to the venue and guests' safety. The security team because of the "rule" could potentially miss identifying a weapon or explosive device that the dogs were trained to locate.

    b. When the Xtract One detection system was deployed in MSG venues in October 2023, there were many issues and concerns regarding the effectiveness of the system at Radio City Music Hall, the Beacon Theater, and the Chicago Theater, where they were first deployed. Once deployed for the first several months, the systems failed repeatedly when tested for weapons detection. This caused potential security concerns and notably failed with weapons detection continually during testing. Mr. Eversole blamed me and would not allow me and others, including Andy Smith from the Chicago Theater, to

speak up about the system's flaws, which I believed, and continue to believe, was due to Mr. Eversole convincing MSG to purchase a large stake of the Xtract One Company, which was well publicized.

c. Mr. Eversole's unusual behavior with his firearm and his open firearm carry around the office, venues, and NYS streets violated MSG policy, as well as, based on my information and belief, NY State/City law. I believe that Mr. Eversole did not have the proper credentials to carry a firearm in NYC in the capacity of working at MSG as there is no civilian "open carry" law in New York City. It was further commonly believed by me and, as I am aware, others, that he used this as an intimidation technique which was very concerning to many, including myself.

The information below reflects additional concerns I had while working under John Eversole:

d. It was commonly known that Mr. Eversole attempted to hold strict oversight of Human Resources (Peoples Practices) even though he had no responsibility or authority over the department through MSG. This was commonly viewed as his way to ensure HR does what he needs to wrongfully target employees he chooses. It was a common theme discussed by others throughout MSG, that "Eversole has HR in his pocket," I was a victim of this, where Mr. Eversole directed HR to put me on a Performance Improvement Plan (PIP) without justification or cause, even after I was promoted seven months prior, despite never having been written up, and despite having been given high marks on my performance review by SVP Darren Claphan. Mr. Eversole did this after I questioned several of his decisions, which I believed were unsafe and after SVP Claphan resigned from MSG.

e. I have further observed individuals in Security and Threat Management at MSG being terminated for policy violations, where I was aware there was no MSG policy written or memorialized, and often made up by Mr. Eversole when anyone attempted to question his directives. For example, in the case of Mr. Ingrasselino, I am aware that he was alleged to have been terminated for "outside employment" in violation of a purported MSG policy, but I have never seen or heard of and remain unaware of any such policy. I further know that many MSG employees, including those inside Mr. Eversole's Threat Management and Security department, openly had and still have outside employment. As a result of this knowledge, I believe that Mr. Ingrasselino's termination reason provided must have been pretextual.

5. Prior to working for MSG, I was a highly decorated NYPD Detective Specialist with high profile positions at the Helmsley Building, the Unites Nations, and the Moynihan Train Hall, for 14 years. I am an expert in my field, and I have continued success during and after

3

working for MSG, where I am currently the SVP of Global Corporate Security for Bank of New York. n August 2024, I resigned from MSG, believing that under the authority of John Eversole, it was impossible to complete my job and keep the venues and guests safe due to his illegal, unethical, and concerning directives and orders. After voicing many concerns of unsafe and illegal practices under Mr. Eversole, HR and Mr. Eversole deliberately placed me on PIP without cause and I separated myself from MSG for fear of my reputation within the Security industry. I believe and continue to believe that under the direction of John Eversole, the guests and employees of MSG and all its venues are not safe and secure. Even though many great MSG employees work tirelessly at their jobs, Mr. Eversole daily, during my tenure, negated this hard work and dedication by his unreasonable antics, unethical, wrong, and poor decisions.

\* \* \*

I affirm, this 11 day of January 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true.

Ty Munn

4

| | |
|---|---|
| DONALD INGRASSELINO,<br><br>COMPLAINANT,<br><br>-AGAINST-<br><br>MADISON SQUARE GARDEN ENTERTAINMENT CORP. AND JOHN EVERSOLE,<br><br>RESPONDENTS. | JAMS REF. NO.: 1425043190 |

## SWORN AFFIRMATION OF FIONA ROONEY

STATE OF NEW JERSEY )
                           ) SS.:
COUNTY OF BERGEN )

FIONA ROONEY, under penalties of perjury, hereby says:

1. I am a New Jersey resident over 18 years of age and have known Donald ("Donnie") Ingrasselino for over 10 years.

2. On Friday, February 2, 2024, I met Donnie for breakfast at his apartment prior to him going into the office for work. I arrived at about 9:00 a.m. and he was already working on his laptop.

3. Donnie appeared very stressed and anxious. I asked him what was bothering him, and he told me he really had a lot of work to do, and that his boss John Eversole was becoming extremely irrational and difficult, often screaming and yelling at him for no reason. Donnie's demeanor is normally calm and I have observed his strong work ethic for his job, so I knew something was different.

4. I was very aware of Donnie's boss, as Donnie had previously spoken to me about what he (Donnie) believed to be Mr. Eversole's reckless behavior and crazy actions. I have been standing next to Donnie several times during non-standard work hours when Mr. Eversole would call him.

5. Donnie and I have attended many evening dinners together, outside of Donnie's work hours, and Mr. Eversole would often call, interrupting, and yelling and screaming about something that took place that Donnie needed to fix. At times, I understood that they were personal "clean up" issues for Mr. Eversole and his reckless decisions and behaviors that would need to be fixed. The personal matters clearly were outside of the job description of Donnie's duties. To hear of yelling and

CONFIDENTIAL

scrolling through the phone and the demands and incidents was absolutely appalling to say the least.

6. The first time I had heard Mr. Eversole's voice was prior to Donnie starting his job at Madison Square Garden ("MSG"). Donnie had accepted the offer and signed his contract. Donnie and I live right next door to each other, so we often spend time together outside.

7. Sometime in September 2023 (I do not have an exact date), we were walking outside with our dogs and Mr. Eversole called Donnie and Donnie answered the call. I could hear Mr. Eversole's voice on the other end of the phone. At first, the call was very nice with Mr. Eversole asking if Donnie was excited to be back at MSG. Donnie was smiling and said, "yes, very." The conversation then changed quickly as Mr. Eversole began talking about several women he stated were part of an "intel" team. I cannot say I understood what that meant as I am not in the security field. I do not recall their names, but I heard through the phone that Mr. Eversole referred to them several times as "toxic" and "crazy bitches."

8. I heard Mr. Eversole order Donnie in a very forceful manner to never interact or speak with the women (who, again Mr. Eversole referred to in highly derogatory terms), due to the fact that he wanted to fire them. Donnie made efforts with the phone to make it so I could not hear the conversation any more at that point, and I could tell he was very uncomfortable. I was unable to hear the remainder of the call.

9. On February 2, 2024 I was in Donnie's apartment in the morning and overheard another telephone interaction between Donnie and Mr. Eversole. This call too started out with Mr. Eversole just asking what Donnie was doing, and Donnie responding that he was getting some work done before heading into the office.

10. Mr. Eversole then asked Donnie if he knew a female was assaulted at MSG the night prior and asked if he saw an email. Donnie immediately told Mr. Eversole he had not seen the email and immediately started looking through his system for the email. That's when Mr. Eversole began screaming and cursing at Donnie, telling him he was going to fire him, and that this offense was a "fireable offense" and "unforgiveable." This went on for about a minute while Donnie apologized many times. Mr. Eversole said that he was writing him up "final" and Donnie asked, "why final." I then heard through the telephone Mr. Eversole say to Donnie, "if you are too old to handle this work, I will fire you immediately and find someone who is capable." Mr. Eversole then disconnected the phone call. I then

CONFIDENTIAL

watched Donnie, in shock, packed up his stuff and leave for the office.

11. I was a long time, well-connected New York City resident and multiple New York City business owner for many years, and have never seen the level of stress and demeaning behaviors placed on an employee by an employer to this level that I have witnessed Donnie endure. I have witnessed Donnie's health spiral out of control almost immediately when he started working directly for Mr. Eversole upon his return to MSG in 2023.

\* \* \*

I affirm, this 27th day of December 2024, under the penalties of perjury under the laws of New Jersey, which may include a fine or imprisonment, that the foregoing is true.

*Fiona A. Rooney*

Fiona Rooney

**CONFIDENTIAL**