**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DONALD INGRASSELINO,

                    Plaintiff,

       v.

MADISON SQUARE GARDEN
ENTERTAINMENT CORP. and JOHN
EVERSOLE, individually,

                Defendants.

Case No.: 1:25-cv-7980-VSB-HJR

 

**PLAINTIFF DONALD INGRASSELINO'S MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANTS MADISON SQUARE GARDEN**
**ENTERTAINMENT CORP. AND JOHN EVERSOLE'S**
**MOTION TO DISQUALIFY ETHAN M. KRASNOO AND REAVIS PAGE JUMP LLP**

**REAVIS PAGE JUMP LLP**
41 Madison Avenue, 41st Floor
New York, New York 10010

*Attorneys for Plaintiff Donald Ingrasselino*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ....................................................................................6

    A.  Plaintiff's Categories of Claims Within His Complaint .................................6

    B.  Plaintiff's Difficulties Engaging Counsel Because of MSG's Lawyer Ban ......................7

    C.  Plaintiff Retained Reavis Page Jump LLP, Which Undertook Extensive
        Work on His Behalf ..........................................................................9

    D.  Plaintiff's Property Claims .............................................................10

    E.  Plaintiff and Defendant MSG Agreed to Mediate Legal Claims ....................10

ARGUMENT ...............................................................................................13

    I.      THE APPLICABLE LEGAL STANDARD ...........................................13

    II.     KRASNOO'S TESTIMONY IS UNNECESSARY TO ESTABLISH
            PLAINTIFF'S MEDIATION AND PROPERTY CLAIMS...................................14

    III.    KRASNOO'S FACTUAL TESTIMONY WOULD ALIGN WITH
            PLAINTIFF'S POSITION AND RESULT IN NO PREJUDICE
            NOR IMPAIR THE INTEGRITY OF THE ADVERSARY PROCESS .................23

    IV.    DISQUALIFICATION IS PREMATURE.................................................25

    V.     IMPUTATION OF DISQUALIFICATION TO RPJ IS UNWARRANTED ...........27

    VI.    THIS COURT SHOULD DENY DEFENDANTS' REQUEST TO
            PRECLUDE KRASNOO FROM PARTICIPATION.................................28

    VII.   KRASNOO AND RPJ'S DISQUALIFICATION CAUSES
            SUBSTANTIAL HARDSHIP TO PLAINTIFF .......................................29

CONCLUSION...............................................................................................31

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Air Italy S.p.A. v. Aviation Techs., Inc.*,
   2011 WL 96682 (E.D.N.Y. Jan. 11, 2011) .................................................. 18, 25, 26

*Amusement Indus., Inc. v. Stern*,
   657 F. Supp. 2d 458 (S.D.N.Y. 2009) ........................................................ 25

*Anderson & Anderson LLP-Guangzhou v. North Am. Foreign Trading Corp.*,
   2014 WL 5394465 (Sup. Ct. N.Y. Cnty. 2014) .......................................... 18

*Bd. of Educ. v. Nyquist*,
   590 F.2d 1241 (2d Cir. 1979) .................................................................... 10

*Berman v. Parco*,
   1996 WL 465749 (S.D.N.Y. Aug. 15, 1996) .............................................. 11

*Brighton Inv., Ltd. v. Har-ZVI*,
   932 N.Y.S.d 214 (3rd Dep't 2011) ............................................................ 14

*Brown Bros. Elec. Constr. v. Beam Constr.*,
   41 N.Y.2d 397 (N.Y. 1977) ....................................................................... 14

*Cassini v. County of Nassau*,
   2023 WL 6958795 (E.D.N.Y. Oct. 20, 2023) ............................................ 22

*Computer Assocs. Int'l, Inc. v. Computer Automation, Inc.*,
   678 F. Supp. 424 (S.D.N.Y. 1987) ............................................................ 17

*Falk v. Gallo*,
   73 A.D.3d 685 (2d Dep't 2010) ................................................................. 19

*Finkel v. Frattarelli Bros., Inc.*,
   740 F. Supp. 2d 368 (E.D.N.Y. 2010) ....................................................... 21

*Gandler v. Nazarov*,
   1994 WL 702004 (S.D.N.Y. Dec. 14, 1994) .............................................. 25

*GateGuard, Inc. v. Goldmont Realty Corp.*,
   641 F. Supp. 3d 66 (S.D.N.Y. 2022) ......................................................... 12

*GBML LLC v. M2B Investors, Ltd.*,
   2022 WL 3566549 (E.D.N.Y. Aug. 18, 2022) ........................................... 24

*Giuffre v. Dershowitz*,
   410 F. Supp. 3d 564 (S.D.N.Y. 2019) ....................................................... 24

*Gormin v. Hubregsen*,
    2009 WL 508269 (S.D.N.Y. Feb. 27, 2009) ........................................................ 22

*Gov't of India v. Cook Indus., Inc.*,
    569 F.2d 737 (2d Cir. 1978) ........................................................................ 10

*Hempstead Video, Inc. v. Inc. Vill. Of Valley Stream*,
    409 F.3d 127 (2d Cir. 2005) ........................................................................ 10

*Hogan v. Higgins*,
    2008 WL 3200252 (E.D.N.Y. Aug. 5, 2008) ........................................................ 15

*Interphram, Inc. v. Wells Fargo Bank, N.A.*,
    2010 WL 1141201 (S.D.N.Y. Mar. 25, 2010) ...................................................... 25

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
    126 F. Supp. 3d 413 (S.D.N.Y. 2015) ........................................................ 15, 16

*Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*,
    366 F. Supp. 3d 567 (S.D.N.Y. 2019) ............................................................ 10

*Kriss v. Barock Grp. LLC*,
    2014 WL 2212063 (S.D.N.Y. May 29, 2014) ...................................................... 20

*Lyman v. City of Albany*,
    2007 WL 496454 (N.D.N.Y. Feb. 12, 2007) ...................................................... 24

*Matter of Bodkin*,
    128 A.D.3d 1526 (4th Dep't 2015) ................................................................ 18

*Motown Rec. Corp. v. Mary Jane Girls, Inc.*,
    118 F.R.D. 35 (S.D.N.Y. 1987) .................................................................... 17

*Murray v. Metro., Life Ins. Co.*,
    583 F.3d 173 (2d Cir. 2009) ........................................................................ 11

*Murray v. Metropolitan Life Ins. Co.*,
    583 F.3d 173 (2d Cir. 2009) ........................................................................ 24

*Nimkoff Rosenfeld & Schechter, LLP v. RKO Props., Ltd.*,
    2014 WL 1201905 (S.D.N.Y. Mar. 24, 2014) ...................................................... 21

*Orbetta v. Dairyland USA Corp.*,
    2022 WL 134873 (S.D.N.Y. Jan. 14, 2022) ...................................................... 17

*Papyrus Tech. Corp. v. N.Y. Stock Exch., Inc.*,
    325 F. Supp. 2d 270 (S.D.N.Y. 2004) ............................................................ 10

*Paramount Commc'ns, Inc. v. Donaghy*,
  858 F. Supp. 391 (S.D.N.Y. 1994) ......................................................... 11

*Paretti v. Cavalier Label Co.*,
  722 F. Supp. 985 (S.D.N.Y. 1989) ......................................................... 16

*Prout v. Vladeck*,
  316 F. Supp. 3d 784 (S.D.N.Y. 2018) ..................................................... 22

*Purgess v. Sharrock*,
  33 F.3d 134 (2d Cir.1994) .................................................................... 12

*Reyes v. Golden Krust Caribbean Bakery, Inc.*,
  2016 WL 4708953 (S.D.N.Y. Sept. 1, 2016) ............................................ 11

*Ritchie v. Gano*,
  2008 WL 4178152 (S.D.N.Y. Sept. 8, 2008) ............................................ 16

*Rothman v. Complete Packaging & Shipping Supplies, Inc.*,
  2023 WL 2740862 (E.D.N.Y. Mar. 31, 2023) ........................................... 14

*Sea Tow Int'l, Inc. v. Pontin*,
  2007 WL 4180679 (E.D.N.Y. Nov. 19, 2007) ........................................... 17

*Shabbir v. Pakistan Int'l Airlines*,
  443 F. Supp. 2d 299 (E.D.N.Y. 2005) ..................................................... 22

*Solow v. Conseco, Inc.*,
  2007 WL 1599151 (S.D.N.Y. 2007) ......................................................... 16

*Stratavest Ltd. v. Rogers*,
  903 F. Supp. 663 (S.D.N.Y. 1995) ......................................................... 22

*Townsquare Media, Inc. v. Regency Furniture, Inc.*,
  2022 WL 4538954 (S.D.N.Y. Sept. 28, 2022) ........................................... 13

*Tuiman v. Canant*,
  1994 WL 198690 (S.D.N.Y. May 19, 1994) .............................................. 17

*U.S. Football League v. Nat'l Football League*,
  605 F. Supp. 1448 (S.D.N.Y. 1985) ....................................................... 10

*Wachaovia Bank, Nat'l Ass'n v. Focus Kyle Grp., LLC*,
  896 F. Supp. 2d 330 (S.D.N.Y. 2012) ........................................... 1, 12, 17

*Williams v. Rosenblatt Securities Inc.*,
  2016 WL 590232 (S.D.N.Y. Feb. 11, 2016) .............................................. 11

*Williamson v. Delsener*,
  59 A.D.3d 291 (1st Dep't 2009).............................................................................................. 14

**Rules**

22 N.Y.C.R.R. § 1200.3.7(a) .................................................................................................. *passim*

22 N.Y.C.R.R. § 1200.3.7(b) .............................................................................................. 11, 24

Plaintiff Donald Ingrasselino ("Plaintiff" or "Ingrasselino") submits this Memorandum of Law in Opposition to Defendants Madison Square Garden Entertainment Corp. ("MSG" or the "Company") and John Eversole's ("Eversole") (together, the "Defendants") Motion to Disqualify Ethan M. Krasnoo ("Krasnoo") and Reavis Page Jump LLP ("RPJ") as counsel to Plaintiff.

## PRELIMINARY STATEMENT

Defendants' Motion is a clear misdirection of the Court's energy and resources from the real disputes at play: the allegations within Plaintiff's Complaint. Contrary to Defendants' Motion, Krasnoo's testimony at a future trial is not necessary and disqualification is therefore unwarranted. *See Wachaovia Bank, Nat'l Ass'n v. Focus Kyle Grp., LLC*, 896 F. Supp. 2d 330, 332 (S.D.N.Y. 2012) (denying disqualification where "trial of the case will [not] in fact require [attorney's] testimony"). Defendants' argument for disqualification boils down to one telephone call where Kevin Leblang ("Leblang"), MSG's prior counsel, offered for MSG to pay and participate in mediation, if Plaintiff provided "documentary evidence" to support his claims. Thereafter, Krasnoo accepted and restated Leblang's offer in an unambiguous email, which formed the basis of the parties' agreement and superseded the prior phone call. The remainder of Krasnoo's communications to Leblang are short, unambiguous written statements provided in emails, which speak for themselves. The existence of these emails and other documentary evidence should be all the Court needs to assess the related legal claims, but should testimony be required regarding the terms and performance of the parties' agreement to mediate, which is highly unlikely, it can be obtained from Plaintiff and Defendant MSG's own witnesses. Krasnoo's testimony should be unnecessary at a trial concerning Plaintiff's mediation claims.

Krasnoo's position on the agreement to mediate does not differ from Plaintiff's position, nor do Defendants identify an actual risk of difference in positioning. Thus, there is no risk of

prejudice, even if Krasnoo needed to testify at a trial regarding Plaintiff's mediation claims. Disqualification under the advocate-witness rule, Rule 3.7(a), is therefore inappropriate. Such disqualification would have severe repercussions to the legal profession since it discourages future pre-lawsuit settlement negotiations by counsel for their clients. Disqualification of Krasnoo would send the warning that counsel's actions on behalf of their clients, in negotiating or mediating pre-litigation criteria for settlement, may subject counsel to disqualification in the future if an agreement to mediate is breached by one party, as it did in this case. Parties may use this tactic to orchestrate negotiations that they do not intend to perform to eliminate their opposing counsel from a case.

Further, to assert that Krasnoo and RPJ cannot represent Plaintiff because Krasnoo had a customary exchange for retrieval of his client's personal belongings from his former employer cuts against logic. Defendants have not demonstrated or argued a basis for, nor is it logical, that Krasnoo's trial testimony would be necessary. Written correspondence provides notice to MSG to return the converted property, and other witnesses can testify if necessary. Disqualification here would also set a precedent for employers to withhold employee property solely to elicit a conversion claim and disqualify employee's counsel as a litigation tactic. Disqualification on the requested bases may deter employees' attorneys from advocating for their clients during and after employment and prior to filing a lawsuit, effectively baring attorneys from exploring pre-suit settlements that will flood the courts with employment claims due to unreasonable restrictions on attorneys' interactions with an employer's counsel, limiting their ability to protect their client's rights and belongings.

Krasnoo's testimony is not necessary to resolve any material, disputed factual issue, and there is no substantial likelihood of prejudice to Plaintiff. Since Krasnoo's testimony presents no

risk to jeopardizing trial or his client, this Court has no need to impute a disqualification on the rest of RPJ.

The motion is also premature. Defendants do not dispute facts or give any claim or reason that would warrant their (or Plaintiff) calling Krasnoo as a witness at trial on the pleadings alone. If the claims are neither dismissed nor resolved on summary judgment, and discovery shows that no witness other than Krasnoo can testify at trial, the Court may then determine whether disqualification is warranted.

In addition, even if there were grounds to disqualify Krasnoo and RPJ under Rule 3.7, there are clear exceptions that override a disqualification in this case. Specifically, because of Defendants' own policies, Plaintiff would experience substantial hardship in finding new representation amid his federal litigation. As evidenced by Plaintiff's affixed Declaration, he struggled retaining counsel in the first instance (prior to hiring RPJ) because of MSG's "lawyer ban" barring attorneys that represent clients bringing claims against MSG from attending sporting and entertainment events at their venues. Additionally, to require new counsel, who would need to learn the facts and procedural history from scratch, could cost Plaintiff significant, unexpected attorneys' fees that may impact Plaintiff's ability to prosecute his claims—a defense strategy that appears deliberate.

Accordingly, we respectfully request this Court deny Defendants' motion to disqualify Krasnoo and RPJ.

## **STATEMENT OF FACTS**

### **A. Plaintiff's Categories of Claims Within His Complaint**

The present dispute arises from Plaintiff's wrongful treatment and unlawful termination from MSG while under the supervision of Defendant Eversole. Plaintiff asserted nine causes of

action related to his mistreatment by Defendants.  *See* Compl. ¶ 1.  As Defendants categorize Plaintiff's causes of action, they could be considered as falling into three distinct "buckets."  *See* Motion to Strike ("Mot.") at 6.  The first bucket includes Plaintiff's employment claims alleging discrimination, retaliation, and other labor law violations under state and local law.  *Id.*  Next, Defendants identify the "Mediation Claims" as Plaintiff's breach of contract, promissory estoppel, and breach of the implied covenant of good faith and fair dealing.  *Id.*  Lastly, Plaintiff's remaining claims, unjust enrichment and conversion, Defendants refer to as the "Property Claims."  *Id.* at 8.  Defendants do not contend that the first bucket, Plaintiff's employment claims, are a basis for Krasnoo or RPJ's disqualification.

## B.  Plaintiff's Difficulties Engaging Counsel Because of MSG's Lawyer Ban

The facts demonstrate that is has been, and would continue to be, a great challenge for Plaintiff to find alternative counsel to RPJ in his case against Defendants, and would severely prejudice him in his pursuit of justice.  After Plaintiff's abrupt termination on February 20, 2024, he recognized Defendants' behavior toward him was unlawful.  Declaration of Donald Ingrasselino dated January 16, 2026 ("Plaintiff Decl.") ¶4.  Plaintiff knew Defendants had harassed, discriminated, and retaliated against him on the basis of his disabilities, age, and whistleblower complaints of illegal and dangerous actions and inactions by Defendants.  *Id.*  Plaintiff sought counsel to resolve his legal claims.  *Id.* ¶5.  He reached out to five law firms, including RPJ, following his termination.  *Id.* ¶6.  Three firms outright refused to represent Plaintiff against MSG because they were not willing to subject their firm to MSG's "lawyer ban."  *Id.* ¶7.

MSG's "lawyer ban" is a policy it implemented to prohibit lawyers from attending events at its venues if they, or their law firms, are currently suing MSG or its affiliates.  *See* Alison Frankel, *Game over? Plaintiffs' lawyers banned from Madison Square Garden by MSG*, Reuters

(June 27, 2022 6:07 PM), https://www.reuters.com/legal/litigation/game-over-plaintiffs-lawyers-banned-madison-square-garden-by-msg-2022-06-27/.  The lawyer ban applies to attorneys who work at firms suing MSG who are not involved with the case, even if they live in a different state. Frankel, *supra.*  As publicly reported, all lawyers at the law firm remain banned until resolution of the lawsuit.  *Id.*  MSG enforces the ban at security through facial recognition and identity checks, and if a banned attorney attempts to attend an event at an MSG-owned venue, MSG security will publicly turn the attorney away at the door.  *See* Devin Gordon, *When Knicks fans are banned from Madison Square Garden, is there any coming back?*, ESPN (Aug. 13, 2025 8:30 AM), https://www.espn.com/nba/story/_/id/45949758/new-york-knicks-msg-banned-list-james-dolan. MSG began the lawyer ban in late 2022 and has continued to impose it at least as recently as August 2025.  *Id.*

Two of the three firms Plaintiff contacted, who all refused to represent him, referred to MSG as a "monster" in their refusal to help.  Plaintiff Decl. ¶8.  A lawyer from the fourth firm, Benjamin Noren, of Davidoff Hutcher & Citron, LLP ("DHC"), initially agreed to represent Plaintiff against Defendants.  *Id.* ¶9.  Plaintiff signed an engagement letter with DHC, which employs 70+ attorneys and professionals, and has multiple domestic offices throughout the United States.  *Id.* ¶¶9-10.

Once Plaintiff executed the law firm's engagement letter, Noren, on Plaintiff's behalf, reached out to Defendants' outside counsel, Randy Mastro, to see if the dispute could be resolved prior to litigation.  *Id.* ¶11.  Shortly thereafter, Noren had a jarring experience with Mastro, who communicated to Noren (and then to Ingrasselino) that MSG indicated Eversole said he would "rock [Plaintiff's] world if he went public" with his claims.  *Id.* ¶12.  Considering the unprofessional and chilling response from MSG, Noren and partners at DHC deliberated whether

to continue representing Ingrasselino.  *Id.* ¶13.  MSG recently removed DHC from its lawyer ban list (meaning that it could finally attend events at MSG-owned venues, including Rockefeller Center, following the termination of its ban) and the firm decided it wanted to avoid again restricting its 70+ lawyers from attending events at New York City's most popular venues.  As such, DHC withdrew as Plaintiff's counsel.  *Id.*

Defendants' intimidation tactics, the colloquially known "lawyer ban" and outright threats, left Plaintiff without representation.  Plaintiff fully understood the lengths Defendants would reach to deter his obtaining representation for his claims, including instating its lawyer ban and filing the subject motion, as he witnessed and complained about such actions during his employment for Defendants, which form the bases of many of his employment claims in this action.  It was clear that the firms he sought were afraid of or unwilling to invoke the ban against their attorneys.  *Id.* ¶14.

### C. Plaintiff Retained Reavis Page Jump LLP, Which Undertook Extensive Work on His Behalf

Thereafter, Plaintiff continued to seek representation, keeping in mind what he learned about the challenges with retaining a large, multi-location law firm.  Following communications with Krasnoo, who Plaintiff believed had experience in employment law, AI technologies, and the entertainment industry, Plaintiff retained Krasnoo and RPJ, which, compared to the four other firms he had previously sought representation from, was unmoved by MSG's lawyer ban.  Plaintiff Decl. ¶¶15-16.

On May 15, 2024, Krasnoo and Plaintiff transmitted a 21-page letter to Defendants detailing his claims.  Since, Krasnoo and RPJ have undertaken extensive work with Plaintiff in pursuit of his legal claims.  *Id.* ¶17.

### D. Plaintiff's Property Claims

Plaintiff's Property Claims arise from MSG's failure to return personal items to Plaintiff following the termination of his employment, which he was unable to take with him on his last day of employment because MSG escorted him out and did not give adequate opportunity (solely 10 minutes) to gather them in his office.  Compl. ¶ 100.  Krasnoo alerted Defendants to the withheld property in the May 15, 2024 letter, which noted therein Plaintiff's conversion claim, and in a subsequent call with MSG's in-house counsel, Shari Holtzman, acted as the mouthpiece for Plaintiff in communicating a list of outstanding items requiring return.  Affirmation of Ethan M. Krasnoo dated January 16, 2026 ("Krasnoo Aff.") ¶6, Compl. ¶ 100.

### E. Plaintiff and Defendant MSG Agreed to Mediate Legal Claims

Plaintiff and MSG sought to resolve Plaintiff's disputes as detailed in the May 15, 2024 letter and, through their respective counsel, discussed the possibilities of settlement.  Kevin Leblang, of now-named Herbert Smith Freehills Kramer ("HSF Kramer"), represented MSG and Eversole's interests.  Krasnoo Aff. ¶7.  During a phone call the week of August 12th, Defendants' counsel broached the topic of private mediation with Krasnoo.  Compl., Exhibit A. at 3-4; Krasnoo Aff. ¶11.  Leblang offered that MSG pay for private mediation if Plaintiff tendered documentary support for his position.  Compl. 104; Krasnoo Aff. ¶9.  Following the phone conversation, Krasnoo received consent from Plaintiff to the terms of mediation.  Krasnoo Aff. ¶10; Plaintiff Decl. ¶18.  On August 21, 2024, Krasnoo reiterated Leblang's proposed terms of the agreement from the telephone call the week prior within an email to Leblang that detailed and wholly superseded the telephone discussion.  Compl. ¶ 104, Exhibit A. at 3-4.  Krasnoo explicitly stated in the email: "I have spoken with Ingrasselino and, in accordance with your proposal from our call last week, he is amenable to providing some documentary evidence to you prior to mediation in

exchange for the agreement that your client, Madison Square Garden, will attend and pay for private mediation with a mutually agreed upon mediator." *Id.* Krasnoo then stated, "Please confirm agreement to the above" regarding the conditions of private mediation. *Id.* Notably, contrary to Defendants' representation in their Motion, there was no phone call between Krasnoo and Leblang regarding the terms of the agreement to mediate on August 21, 2024. *See* Mot. at 7; Krasnoo Aff. ¶12.

On September 3, 2024, Leblang confirmed the material portions of the agreement to mediate when he stated, "I can confirm that MSG will pay for the cost of a mediation before Dina Jansenson . . ." Compl. ¶ 104, Exhibit A at 1; Krasnoo Aff. ¶13. In the September 3 email, Leblang reaffirmed the condition precedent that required Plaintiff to provide "documentary evidence or other evidence prior to mediation supporting your client's position." Compl. ¶ 104, Exhibit A at 1; Krasnoo Aff. ¶13. Krasnoo responded in the affirmative, and acknowledged Plaintiff planned to provide the documentary evidence prior to mediation, "as discussed." Krasnoo Aff. ¶14. The entirety of Plaintiff and MSG's agreement to the terms to mediate is exceptionally short and represented fully in this one email chain by lawyers communicating their client's willingness, obligations, and agreements. *Id.* ¶¶11-15.

The parties mutually agreed via email to schedule mediation for January 30, 2025. Compl. ¶ 104. Defendants' counsel also confirmed MSG's attendees with the mediator, which further established MSG agreed to the terms of the parties' contract to attend mediation. *Id.* Relying on Leblang's representation and MSG's post-agreement actions, Plaintiff engaged Krasnoo and RPJ to prepare for mediation, alongside preparing documentary evidence to support Plaintiff's position prior to mediation to satisfy the condition precedent for MSG's participation therein. Plaintiff Decl. ¶19; Krasnoo Aff. ¶18.

On December 20, 2024, Plaintiff satisfied the condition precedent when his counsel delivered documentary evidence to support Plaintiff's claims. *Id.* ¶19; Compl. ¶ 105. Indeed, Plaintiff, in addition to his 21-page May 15, 2024 letter, provided Defendants approximately 100 screenshots of text messages that supported the discrimination, harassment, and retaliation he endured while employed at MSG, over a month before the scheduled mediation. Krasnoo Aff. ¶19; Compl. ¶ 105. On December 31, 2024, Plaintiff sent Defendants the sworn affirmation of Fiona Rooney, a close friend who witnessed Defendants' mistreatment of Plaintiff and his colleagues. Compl. ¶¶ 106-107; Krasnoo Aff. ¶20. Further, on January 13, 2025, Plaintiff proffered former MSG Vice President of Security Ty Munn's affirmation that described hazards created by unlawful conduct by MSG executives. Compl. ¶¶ 106-107, Krasnoo Aff. ¶21. RPJ, on Plaintiff's behalf, sent all emails that contained the documentary evidence to Defendants well in advance of the mediation scheduled for January 30, 2025, and at least 10 days before the mediator required the parties to submit their mediation statements on January 23, 2025. Compl. ¶ 108. Defendants do not dispute the authenticity of the emails, which is the only fathomable addition that Krasnoo, or another representative of RPJ could provide.

On January 21, 2025, two days prior to the mediation statements being due, and despite Plaintiff's compliance with the terms of the parties' agreement, MSG notified Plaintiff's counsel it would not be participating in the mediation. Compl. ¶108; Krasnoo Aff. ¶22. In response, that same day, Plaintiff's counsel forwarded emails that memorialized the undisputable terms of the parties' agreement to mediate. Krasnoo Aff. ¶23. Leblang did not respond. MSG cancelled the mediation, necessitating the filing of this lawsuit to recover Plaintiff's reliance costs incurred solely as a result of reasonably acting on MSG's promise to mediate.

## ARGUMENT

## I.    THE APPLICABLE LEGAL STANDARD

This Court's power to disqualify attorneys is "derive[d] from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. Of Valley Stream*, 409 F.3d 127,132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)).  When courts are presented with a disqualification motion, they are directed to take a measured approach that prioritizes protecting the integrity of a trial.  *See Papyrus Tech. Corp. v. N.Y. Stock Exch., Inc.*, 325 F. Supp. 2d 270, 276 (S.D.N.Y. 2004).  It is not a court's responsibility to opine on every violation of professional rules, but to ensure the proceeding before it is untainted from prejudicial behavior of advocates.  *See Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*, 366 F. Supp. 3d 567, 571 (S.D.N.Y. 2019) (stating that, "[i]n this Circuit, disqualification is called for only where an attorney's conduct tends to taint the underlying trial, because federal and state disciplinary mechanisms suffice for other ethical violations" (internal quotation marks omitted)); *U.S. Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1463 n.31 (S.D.N.Y. 1985) ("Courts are not policemen of the legal profession; that is a matter for the disciplinary arm of the bar. Disqualification is granted to protect the integrity of the proceedings, not to monitor the ethics of attorneys' conduct.").  Further, a court is expected "to balance 'a client's right freely to choose his counsel' against 'the need to maintain the highest standards of the profession.'" *Hempstead Video*, 409 F.3d at 132 (quoting *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978)).

Rule 3.7(a) of the New York Rules of Professional Conduct provides: "[a] lawyer shall not act as an advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a *significant* issue of fact.  22 N.Y.C.R.R. §1200 3.7(a) (emphasis added).  The Rule is referred to

as the "advocate-witness rule."  Disqualification under subsection (a) is triggered only when the attorney represents the client *before a jury* seeks to also serve as a fact witness in that very proceeding.  *See Murray v. Metro., Life Ins. Co.*, 583 F.3d 173, 179 (2d Cir. 2009). "Disqualification motions premised upon the advocate-witness rule are subjected to strict scrutiny because of the strong potential for abuse when a lawyer invokes the need to call opposing counsel as a witness and then acts to disqualify him as counsel."  *Berman v. Parco*, 1996 WL 465749, at *5 (S.D.N.Y. Aug. 15, 1996) (internal quotation marks omitted).  Because parties might use such disqualification as a "litigation tactic[, t]he Court must therefore be careful to determine whether the testimony of the implicated attorney is genuinely necessary or merely a fabrication of his adversary.").  *Id.*

When a court is considering the necessity of an attorney's testimony, "[a] court should consider factors such as the significance of the matters, weight of the testimony, and availability of other evidence." *Reyes v. Golden Krust Caribbean Bakery, Inc.*, 2016 WL 4708953, at *10 (S.D.N.Y. Sept. 1, 2016); *see also Paramount Commc'ns, Inc. v. Donaghy*, 858 F. Supp. 391, 394 (S.D.N.Y. 1994) ("Testimony may be relevant and even highly useful but still not strictly necessary.").  Moreover, the party seeking to disqualify the attorney must demonstrate there is a substantial likelihood the testimony would be prejudicial to the advocate-witness's client.  *See* 22 N.Y.C.R.R. § 1200.3.7(b)(1); *see also Williams v. Rosenblatt Securities Inc.*, 2016 WL 590232, at *7 (S.D.N.Y. Feb. 11, 2016) (same).

## II.    KRASNOO'S TESTIMONY IS UNNECESSARY TO ESTABLISH PLAINTIFF'S MEDIATION AND PROPERTY CLAIMS

The mere fact that Krasnoo was involved in pre-suit settlement discussions does not bar him from advocating for Plaintiff because Krasnoo's testimony is not needed, and even if it were useful, there is ample evidence available to replace Krasnoo's testimony.  The inquiry before this

Court does not rely on whether Krasnoo has discoverable knowledge, which, though extremely limited, Plaintiff does not deny, "but rather whether trial of the case will in fact *require* his testimony." *Wachaovia Bank*, 896 F. Supp. 2d at 332 (emphasis added). *See also GateGuard, Inc. v. Goldmont Realty Corp.*, 641 F. Supp. 3d 66, 71 (S.D.N.Y. 2022) (reflecting the "heavy burden" of the movant seeking disqualification in holding that "[n]o disqualification should occur until it is apparent the attorney's testimony is itself admissible and necessary") (internal citation omitted)); *see also Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir.1994) ("Disqualification may be required only when it is likely that the testimony to be given by [counsel] is necessary") (internal citation omitted)).  As detailed below, Defendants have not met this burden.

Defendants claim that Krasnoo's testimony is necessary because he was the sole person for Plaintiff who negotiated the mediation agreement and its terms, and advised and assisted Plaintiff with performing under the contract.  Mot. at 11.  But the terms of the agreement between Plaintiff and MSG that is at the center of Plaintiff's Mediation Claims are all maintained in two short emails, one from Plaintiff's counsel on August 21, 2024, and one email from Defendants' counsel on September 3, 2024, in the same email chain.  Krasnoo Aff. ¶¶11-13.  While Defendants allege, without basis, that Krasnoo's testimony is necessary to determine the details of the sole phone call between him and MSG's outside counsel, this call was wholly superseded in significance by the subsequent emails between the parties accepting the offer and detailing the terms of the agreement to mediate, and thus are not necessary trial testimony.  Compl. ¶¶ 103-104.  Plaintiff does not allege that he relied on any portion of the phone call in his claim—rather, he relied on the email exchange forming the agreement between the parties.  *Id.*  Indeed, Plaintiff attached the two material emails to his Complaint as an exhibit.  Compl. ¶ 103, Compl. Ex. A.

It is nonsensical, and Defendants have failed in their "heavy burden" to explain why, at this early pleading stage, they have concluded that Krasnoo must testify at trial about a phone call including their former counsel; particularly when that call is wholly superseded by a straightforward email chain accepting and confirming the agreement to mediate that forms the basis of the Mediation Claims. Defendants argue that Krasnoo's testimony is critical to determining whether there was a meeting of the minds and a performance of the condition precedent within a breach of contract analysis. Mot. at 11-12. However, any ambiguity in the two brief emails forming the parties' agreement to mediate may be addressed through Plaintiff's own testimony. Further, Plaintiff can rely on the documentary evidence emails, and substantive attachments or linked documents thereto, that irrefutably reflect Plaintiff fulfilled his condition precedent and bargained requirements under the parties' agreement to mediate. Defendants have raised no authenticity issues with the emails, and actual transmission of the emails by RPJ personnel could be established without Krasnoo's testimony by multiple means.

Defendants fail to consider all the evidence available to establish each element of the claims. Krasnoo's knowledge regarding Plaintiff's Mediation (and Property) Claims is cumulative at best, and not necessary for testimony given Krasnoo merely committed to writing Plaintiff and MSG's agreement terms, which speak for themselves in the simple and clear emails that form the terms.

New York courts do not require testimony when an exchange of e-mails is "sufficiently clear and concrete to establish an intent to contract." *Townsquare Media, Inc. v. Regency Furniture, Inc.*, 2022 WL 4538954, *11 (S.D.N.Y. Sept. 28, 2022) (holding email exchanges between the parties were sufficiently clear to establish an intent to contract, resulting in the creation of several contracts between the parties) (quoting *Brighton Inv., Ltd. v. Har-ZVI*, 932 N.Y.S.d 214,

216 (3rd Dep't 2011) (cleaned up)); *see also Williamson v. Delsener*, 59 A.D.3d 291, 291 (1st Dep't 2009) (ruling "sufficiently clear and concrete" email exchanges constitute an enforceable contract, even if a party subsequently fails to execute implementing documents).  Krasnoo and Leblang's 2024 emails establish their intent to be bound and lack of ambiguity.  Contract formation is not dependent on a party's subjective intent, but objective manifestations of the intent of the parties as gathered by their expressed words and deeds.  *See Brown Bros. Elec. Constr. v. Beam Constr.*, 41 N.Y.2d 397, 399 (N.Y. 1977).  Here, as Defendants aptly identified in Plaintiff's Complaint, MSG "made unequivocal and express verbal and written promises . . . to attend mediation."  Mot. at 7.  If the written communications establish a contract (which they do), no other testimony is necessary.

The "meetings of the mind" was met solely over email.  On August 21, 2024, Krasnoo committed to writing by email Defendants' oral offer for mediation and laid out the terms of the parties' agreement to mediate.  Compl. ¶104; Krasnoo Aff. ¶11.  Then, on September 3, 2024, Leblang confirmed in writing his client's intention to be bound by the offer drafted by Krasnoo (which Leblang had already proposed on their prior telephone conference), and verified the terms of the agreement to mediate.  Compl. ¶ 104.  Further, even if the Court ruled that direct emails reflecting the agreement to mediate between the parties are deemed to have any ambiguity, as addressed above, Plaintiff is available to testify regarding his position, as communicated in writing by his agent, Krasnoo.  *See Rothman v. Complete Packaging & Shipping Supplies, Inc.*, 2023 WL 2740862, at *2 (E.D.N.Y. Mar. 31, 2023) (plaintiff's own knowledge defeats a claim that counsel's testimony is necessary when plaintiff is available to testify at trial).

The documentary email evidence, and other witnesses' testimony, including MSG employees who approved and entered into the agreement, Plaintiff, and MSG's former counsel,

14

Leblang, presently available to both parties, demonstrates that Krasnoo's testimony at trial is outright unnecessary. *See Hogan v. Higgins*, 2008 WL 3200252, at *3 (E.D.N.Y. Aug. 5, 2008) ("defendants have failed to identify any significant testimony they seek to elicit from plaintiffs' counsel that could not be obtained from other witnesses. Accordingly, disqualification is not warranted[.]").

Further, as discussed above, the facts underlying Plaintiff's compliance with the condition precedent under the agreement is entirely housed in emails exchanged between the parties (including documentary evidence attached thereto supporting Plaintiff's claims) to which Plaintiff can attest to the contents of, if the documents are deemed insufficient to speak for themselves, and MSG's revocation of its agreement was also all orchestrated over emails issued by MSG's counsel, Leblang, on MSG's behalf. Krasnoo Aff. ¶¶19-23. As Leblang does not represent MSG in this litigation, to the extent that Defendants do not wish to rely on their employees (or Plaintiff) for their understanding of the agreement terms and fulfillment, they can rely on testimony from Leblang without issue of disqualification.

In *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, the moving party argued that attorney Neil Mooney should be disqualified from representing his client because his testimony was necessary, but the Court found that the moving party failed to provide the trial court a sufficient explanation as to why the moving party must offer the opposing attorney's testimony at trial. 126 F. Supp. 3d 413, 421 (S.D.N.Y. 2015). The court found that the moving party's arguments were unpersuasive as it related to attorney Mooney having necessary testimony, especially where it had other witnesses to testify who, as far as the Court could tell at that stage of the case, may be aligned with attorney Mooney. *Id.* at 421-22. In that case, the Court noted that the availability of other witnesses is essentially fatal to the "necessity" prong of the disqualification inquiry. *Id.* at 422. It

15

acknowledged that there were other witnesses, such as attorney Mooney's client, to testify on a dispute related to the breach of contract claims. *Id.*

Similarly, in the present case, Defendants, in alleging the purported need for Krasnoo's testimony, do not represent that they would call him as a witness to testify on their behalf regarding the Mediation Claims at a trial or give a sufficient basis to warrant doing so. As in *John Wiley & Sons, Inc.*, Krasnoo's client, with whom he confirmed discussion of the terms of the agreement to MSG's counsel, is another witness who can testify to the Mediation Claim, should the documentary evidence be insufficient. Krasnoo Aff. ¶11. The availability of another witness effectively halts the need for further inquiry into a disqualification analysis. *See Solow v. Conseco, Inc.*, 2007 WL 1599151, at *4 (S.D.N.Y. 2007) ("The rule requires that a lawyer's testimony be necessary, not simply that it be the best evidence, and to that end, courts deem a lawyer's testimony necessary only if there [are] no other witnesses to the circumstances at issue." (internal quotation marks omitted)); *Ritchie v. Gano*, 2008 WL 4178152, at *13 (S.D.N.Y. Sept. 8, 2008) ("[A]n attorney whose testimony would merely corroborate the testimony of others may not be subject to disqualification." (internal quotation marks omitted)).

Courts in the Second Circuit routinely refuse to disqualify attorneys involved in drafting agreements at issue in litigation. In *Paretti v. Cavalier Label Co.*, the court refused to disqualify an attorney who participated in negotiations between parties and drafted unexecuted documents, finding that his testimony was cumulative of other persons who were involved, did not in conflict with the opposing party's corporate lawyer's recollection of the negotiations, and the unexecuted documents spoke for themselves. 722 F. Supp. 985, 987 (S.D.N.Y. 1989). Similarly, in *Sea Tow Int'l, Inc. v. Pontin*, the court held that where a lawyer drafted a paragraph of a contract and his testimony would "merely corroborate the testimony of others," even though his testimony could

be useful, it was not necessary and thus he need not be disqualified.  2007 WL 4180679, at *4 (E.D.N.Y. Nov. 19, 2007) (quoting *Tuiman v. Canant*, 1994 WL 198690, at *4 (S.D.N.Y. May 19, 1994)).  In *Computer Assocs. Int'l, Inc. v. Computer Automation, Inc.*, this Court refused to disqualify an attorney who "negotiated and drafted the Agreement at issue" on behalf of the plaintiff, and received a letter at issue in the litigation.  678 F. Supp. 424, 429-31 (S.D.N.Y. 1987).  Even where that attorney's deposition was noticed and a party planned to call him as a witness at trial, the Court denied the disqualification request because the moving party did not meet its burden demonstrating that the alleged advocate-witness's testimony would taint trial or cause unfairness to the judicial process.  *Id.*

In *Motown Rec. Corp. v. Mary Jane Girls, Inc.*, this Court also held that an attorney who was involved in the underlying agreement between the parties would not be disqualified where other sources of the same facts existed to establish the attorney's activities, and that the correspondence that attorney prepared was created at the direction of his client.  118 F.R.D. 35, 38 (S.D.N.Y. 1987).  *See also Wachovia Bank*, 896 F. Supp. 2d at 331-32 (holding that disqualification was unwarranted because there was no showing that the attorney had unique knowledge of material facts or that the trial would actually require the attorney's testimony).  As in these cases, because any testimony by Krasnoo would be cumulative, in addition to the fact that the simple agreement terms and emails reflecting fulfilment and breach wholly speak for themselves, under the "strict scrutiny" standard this Court must impose, disqualification is unwarranted.  *See also Orbetta v. Dairyland USA Corp.*, 2022 WL 134873, at *1 (S.D.N.Y. Jan. 14, 2022) (denying a defendants' motion to disqualify plaintiff's counsel who negotiated the collective bargaining agreements that set the wages that were subject to the plaintiff's wage and hour claims, noting the negotiations were of marginal relevance, other witnesses can testify on the

same facts, and defendants failed to demonstrate prejudice); *Matter of Bodkin*, 128 A.D.3d 1526, 1527 (4th Dep't 2015) (ruling that disqualification was unwarranted where the attorneys who drafted the contested will and witnessed its execution were from the same law firm that later represented the will's petitioner against the objectors, because the objectors failed to show that the attorney's trial testimony would be prejudicial to the petitioner).

Defendants' cases are distinguishable.  For instance, in *Anderson & Anderson LLP-Guangzhou v. North Am. Foreign Trading Corp.*, the moving party filed their motion to disqualify attorneys that were involved in the negotiation, drafting, and execution of multiple formal agreements where ambiguity was central to the dispute.  2014 WL 5394465, at *4 (Sup. Ct. N.Y. Cnty. 2014).  The moving party filed the motion following discovery and summary judgment motions. *Id.*  Comparatively, Defendants cannot in good faith claim there is dispute over ambiguity over a plain, two-email exchange agreement to mediate.  Further, unlike Defendants here, the moving party in *Anderson* was able to articulate necessity to testify at trial and prejudice to attorney's client *after discovery and summary judgment*, at a time when, unlike the present in this case, the analysis was ripe for determination.

In *Air Italy S.p.A. v. Aviation Techs., Inc.*, there were extensive telephone conversations, at least three, between Attorney Gallagher and Attorney Bridgeman that resulted in conflicting interpretations of the conversation.  2011 WL 96682, at *3 (E.D.N.Y. Jan. 11, 2011).  The basis of the parties' dispute lied within the telephone conversations, and the Court noted Attorney Bridgeman's inability to call into question Attorney Gallagher's version of facts at trial without providing his own live testimony. *Id.*  The instant case differs because (1) the agreement at issue is committed to a simple writing by both parties in two emails, and telephone conversations between counsel are not necessary to identifying the terms of the email agreement or compliance

therewith, and (2) Leblang is available to testify without disqualification as he has been substituted by new counsel for MSG.  Similarly, Defendants' reliance on *Falk v. Gallo* is misplaced as the dispute therein surrounds a verbal contract.  73 A.D.3d 685, 686 (2d Dep't 2010).  Here, Defendants have not and cannot claim in sincerity that the agreement to mediate was a verbal contract; the simple 2024 emails undermine this notion.  Krasnoo Aff. ¶¶13-17.

As with the Mediation Claims, Defendants' reference to Property Claims overestimates Krasnoo's involvement.  Krasnoo and RPJ were not engaged until after MSG unlawfully terminated Plaintiff and sent him away without allowing him to retrieve all his belongings.  The best witness to testify regarding the stolen or destroyed belongings is the owner who was restricted from collecting them upon his termination and who has not received them back since that time: Ingrasselino.  Compl. ¶ 100.  Defendants' assertion that MSG will "only be able to understand the contours of Mr. Krasnoo's communication(s) with MSG about Plaintiff's property by seeking his testimony" (Mot. at 10) is a clear ruse to disqualify Krasnoo as a litigation tactic that the law forbids.  Plaintiff informed Krasnoo what to include in the list of specifics, making him best suited to testify on the topic.  Compl. ¶ 100.  Further, Defendants have not disputed that they received notice of the conversion claim and property they withheld from Plaintiff in a letter prior to call between counsel, nor that there is any disagreement over the contents of the call between Krasnoo and MSG's in-house counsel regarding the list of property, to which in-house counsel who joined the call can testify at trial if warranted.  Krasnoo Aff. ¶¶5-7.  In addition, the in-house counsel's expected internal written follow-up communications with colleagues regarding the property, which is expected to be produced in discovery, should be more than sufficient evidence concerning the discussion.  Again, Defendants fail in meeting the "strict scrutiny" required for disqualification, especially prior to alleging any dispute that would warrant consideration of any testimony on point.

Further, it is standard practice for employment lawyers to communicate to adversaries a list of their client's missing property brought to and retained by the client's former employer, which is all that Krasnoo is alleged to have done in the Complaint. Compl. ¶ 100. A disqualification precedent would deter this standard practice and incentivize employers to withhold property in response to such a request to concoct disqualification claims. For these policy reasons, the motion to disqualify also should be denied.

Defendants have not met their burden of demonstrating Krasnoo's testimony at trial is necessary for the Mediation or Property Claims. If trial occurs and the claims remain active, then documentation and other witnesses, including Plaintiff, MSG employees, and MSG's former counsel can establish evidence.

### III. KRASNOO'S FACTUAL TESTIMONY WOULD ALIGN WITH PLAINTIFF'S POSITION AND RESULT IN NO PREJUDICE NOR IMPAIR THE INTEGRITY OF THE ADVERSARY PROCESS

Even if Defendants determined that they needed to and indeed called Krasnoo to testify at a trial regarding the Mediation and Property claims (which as discussed above should not be necessary, and, below, is a premature determination that has not been made or supported at this time by Defendants), Defendants have not sufficiently shown how prejudice to them or Plaintiff may arise, as to what issues, or that there is a substantial likelihood of prejudice. *See Kriss v. Barock Grp. LLC*, 2014 WL 2212063, at *10 (S.D.N.Y. May 29, 2014).

Defendants claim that calling Krasnoo as a witness would "force" them into an undesirable position or cause risk that his testimony would be believed by a jury, but these claims are without merit where Defendants have no genuine need for calling Krasnoo as a witness when the emails speak for themselves. Krasnoo Aff. ¶¶11-13. Defendants do not allege that Krasnoo's testimony would contradict the available evidence in support of his and his client's position. However,

Defendants' unsupported speculation indicating that Krasnoo, if forced to testify at their command, could distort truth is baseless. Defendants have not pled a shred of support for this offensive insinuation. Based on the documentary evidence (Krasnoo Aff. ¶ ¶19-21), the only witnesses in danger of impeachment regarding the Mediation Claims are Leblang and MSG employees. Two days before mediation statements were due, Leblang shockingly declared as purported support for MSG's breach that Plaintiff did not "change [MSG's] view of the merits of [Plaintiff's] allegations," which the email agreement to mediate shows on its face was never relevant nor a condition precedent to mediation occurring, as demonstrated by Leblang's 2024 emails regarding the agreement to mediate. Krasnoo Aff. ¶22.

All of Defendants' purported concerns of prejudice arising from any compelled testimony by Krasnoo are speculative. *See Finkel v. Frattarelli Bros., Inc.*, 740 F. Supp. 2d 368, 376 (E.D.N.Y. 2010) ("Speculation as to the testimony that counsel would give is not sufficient to support a motion to disqualify."). Defendants ask the Court to speculate that if Krasnoo were to testify, Krasnoo *may* contradict testimony given by Plaintiff. This Court has ruled against motions to disqualify with similar approaches to the substantial likelihood of prejudice prong. *See Nimkoff Rosenfeld & Schechter, LLP v. RKO Props., Ltd.*, 2014 WL 1201905, at *9 (S.D.N.Y. Mar. 24, 2014) (denying a motion to disqualify where the moving party failed to articulate high risk of prejudice from advocate-witness attorney's trial testimony to client, and instead invited the court to speculate as to the prejudice after merely listing potential prejudice to the moving party).

Therefore, this Court should not disqualify Krasnoo from representing Plaintiff because the parties and this Court may rely on the available, unambiguous emails noting the parties' intent to be bound. Even if Krasnoo was compelled to testify at trial, which is not expected from Plaintiff and for which Defendants have not committed to nor provided any support for what basis they

would seek Krasnoo's testimony when they could rely on their own witnesses to support their defenses, his testimony would not jeopardize Plaintiff's position or the judicial process.

## IV.    DISQUALIFICATION IS PREMATURE

Defendants' Motion to Disqualify comes immediately following Plaintiff's filing of his Complaint.  Yet, Rule 3.7 is primarily concerned with "preventing potential taint at trial."  *Prout v. Vladeck*, 316 F. Supp. 3d 784, 809 (S.D.N.Y. 2018).   "[W]here there has been only limited discovery and it is not yet clear the extent to which an attorney's testimony might be necessary or prejudicial, numerous courts have found that motions to disqualify counsel are premature." *Cassini v. County of Nassau*, 2023 WL 6958795, at *3 (E.D.N.Y. Oct. 20, 2023) (citing *Prout*, 316 F. Supp. 3d at 809; *see also Gormin v. Hubregsen*, 2009 WL 508269, at *3 (S.D.N.Y. Feb. 27, 2009) (same).

Here, no discovery has occurred.  As examined in detail above, Defendants' assertion that Krasnoo's testimony will be necessary or prejudicial, is highly speculative.  *See Shabbir v. Pakistan Int'l Airlines*, 443 F. Supp. 2d 299, 309 (E.D.N.Y. 2005) ("[g]iven the 'strict scrutiny' under which motions for attorney disqualification are to be evaluated . . . plaintiff has failed to carry his burden and declines to grant plaintiff's motion [to disqualify an attorney who plaintiff indicated should be called to testify about his role in drafting an agreement, the existence of which was contested between the parties] based on the witness-advocate rule at this time [but held that] should it became clear that [the attorney's] testimony regarding this release becomes material to the issues in the case, such that [defendant] should call [him] as a witness at trial, the Court will reconsider the issue at that time."); *Stratavest Ltd. v. Rogers*, 903 F. Supp. 663, 668 (S.D.N.Y. 1995) ("it is too early at this point in the proceeding to determine [disqualification]. There may be other witnesses to the transactions who can provide sufficient evidence.").

In fact, on summary judgment, Plaintiff expects that the Court will review the evidence already presented to the court as exhibits to the Complaint (Compl. Exs. A-C) and exhibits to the Krasnoo Affirmation submitted with this Opposition (Exs. A-E; Krasnoo Aff. ¶¶19-21) that will fully demonstrate the clear elements of the simple contract, Plaintiff's compliance with the contract in supplying documents supporting his claims to Defendants (Krasnoo Aff. ¶¶19-21), and Defendants' failure to comply with its promised and contractual obligations to mediate in response (*id.* ¶22), thereby avoiding the need for ***any*** testimony at trial regarding the merits of the Mediation Claims.

Similarly, Plaintiff expects documentation exchanged in discovery to support granting summary judgment for his Property Claims as well, such as the May 15, 2024 letter notifying MSG of the withheld property and conversion claim, Ms. Holtzman's (Defendants' in-house counsel) expected internal communications evidencing Krasnoo's communication regarding the return of the Plaintiff's personal belongings, as well as Ms. Holtzman's testimony if required. Plaintiff would also certainly consider voluntarily withdrawing the claims should the Court conclude that disqualification of Krasnoo would be warranted as a result of their existence, given the comparative value of damages associated therewith.[1] As such, disqualification is premature.

*See Lyman v. City of Albany*,

> [I]t is unclear at this early stage of the proceedings which, if any, of the events to which [the attorney] was a witness will ultimately remain contested issues at trial. The parties may well agree to the existence of certain facts which would obviate the necessity for [the attorney's] testimony on those matters. Other issues may be dismissed from the litigation of the case through voluntary dismissal, defendants' presently pending motion to dismiss a portion of the amended complaint . . . or on a motion for summary judgment pursuant to Fed.R.Civ.P. 56. Thus, at this stage the scope of the [plaintiff's] claims which will remain at issue for trial has not been resolved nor have the factual issues which will be in dispute at trail. [sic] Absent such determinations, it would require undue speculation to determine whether

---

[1]     Defendants likewise note in the Motion that withdrawal of such claims would render the Motion moot. Mot. at 1 fn.1.

> issues will remain for trial as to which [the attorney] ought to testify.  For these
> reasons, then, defendants' motion to disqualify [counsel] is premature").

2007 WL 496454, at *4 (N.D.N.Y. Feb. 12, 2007).  For the afore-addressed reasons, this Court

should deny Defendants' motion.

## V.    IMPUTATION OF DISQUALIFICATION TO RPJ IS UNWARRANTED

Any imputation of a disqualification of Krasnoo to Reavis Page Jump LLP is unwarranted.

Rule 3.7(b) orders imputed disqualification "sparingly, and only when the concerns motivating the

rule are at their most acute." *Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir.

2009) (internal citation omitted).  A law firm will only be disqualified in the rare occasion by

imputation if the moving party proves by clear and convincing evidence that (A) the witness will

provide testimony prejudicial to the client, and (B) the integrity of the judicial system will suffer

as a result.  *Id.* at 178-79.  The Courts view imputation as "an extreme remedy."  *GBML LLC v.*

*M2B Investors, Ltd.*, 2022 WL 3566549, at *2 (E.D.N.Y. Aug. 18, 2022).  As noted above, neither

Plaintiff nor Defendants must call Krasnoo to testify on the Mediation and Property Claims

because of the alternative, available evidence, such as emails and other witnesses with personal

knowledge.  But if Krasnoo were to testify, his testimony would not jeopardize Plaintiff's position

because they both share the same understanding of the terms and performance expectations in the

parties' agreement to mediate.  These facts do not necessitate the extreme cure of imputation of

the entire firm.

Defendants' one federal case cite is highly distinguishable in finding imputation to the

entire firm because the Court found that "several of the Firm's lawyers will be essential trial

witnesses" and because "the witnesses will offer testimony adverse and prejudicial to their own

client."  *Giuffre v. Dershowitz*, 410 F. Supp. 3d 564, 580-81 (S.D.N.Y. 2019).  Defendants have

not asserted that other members of RPJ would have to testify – in fact, Defendants allege that only

Krasnoo has relevant involvement – nor that Krasnoo or any other attorney would take an adverse position to Plaintiff with any testimony.

Further, other attorneys at RPJ possess similar experience to Krasnoo, and could satisfy Plaintiff's right to choose his counsel over alternative counsel. *See Gandler v. Nazarov*, 1994 WL 702004, at *3 (S.D.N.Y. Dec. 14, 1994) (denying disqualification of entire firm upon reflecting that disqualification of a firm when one of its attorneys will testify "should occur only rarely . . . [to serve public policy and avoid] unduly interfering with the client's ability to be presented by counsel of the client's choice.") (internal citations omitted)). Defendants have failed to demonstrate the severe need for imputation.

## VI.    THIS COURT SHOULD DENY DEFENDANTS' REQUEST TO PRECLUDE KRASNOO FROM PARTICIPATION

In addition to denying Defendants' request to disqualify Krasnoo and RPJ, this Court should also deny Defendants' demand to preclude Krasnoo's participation in depositions, trial, or appearing as an advocate for Plaintiff. Plaintiff is asking the Court to constructively disqualify Krasnoo from participation, even if they do not meet their burden on their Motion to Disqualify, without providing any authority for the Court to do so. The advocate-witness rule does not bar Krasnoo's participation in pre-trial proceedings. *See Interphram, Inc. v. Wells Fargo Bank, N.A.*, 2010 WL 1141201, at *4 (S.D.N.Y. Mar. 25, 2010); *see also Amusement Indus., Inc. v. Stern*, 657 F. Supp. 2d 458, 461 (S.D.N.Y. 2009) ("Allowing an attorney to continue his representation pre-trial does nothing to undermine th[e] interests [of the advocate-witness rule], and protects the client's right to choose their own counsel.").

Defendants attempt to rely, without basis, on *Air Italy S.p.A.*, 2011 WL 96682 at *5. The attorney in *Air Italy S.p.A.* was partially disqualified from serving as trial counsel, meaning he could not "appear before the jury as a trial lawyer." *Id.* However, nothing in the ruling precludes

the attorney from participating in tasks such as motions, strategy, discovery, or even working on the trial team. *Id.* The Court did not order the firm to screen the attorney from assistance on the case during discovery, motion practice, and trial. *Id.* Here, if Krasnoo was disqualified as counsel, but RPJ continued representing Plaintiff in his action (as Plaintiff would desire), Krasnoo should continue to be allowed to advise as long as he does not appear before the jury at a trial. Again, Defendants include no legal support for the contrary. If Krasnoo is not testifying at trial, nor appearing on the record, there is no risk to violating Rule 3.7.

Even if Krasnoo were to appear on the record at trial as Plaintiff's counsel, he is not at risk of mixing advocacy with facts. Krasnoo may clarify for the record, or a jury, that his understanding and representation of the facts is most accurately reflected in his emails, and that his line of questioning is not to persuade the audience of his own version of the facts. Therefore, there is no threat to the judicial process.

## VII.    KRASNOO AND RPJ'S DISQUALIFICATION CAUSES SUBSTANTIAL HARDSHIP TO PLAINTIFF

Even if Krasnoo was an advocate-witness under Rule 3.7, at least one exception to disqualification[2] under the Rule applies to the situation at hand due to Defendants' own actions. Specifically, disqualification of Krasnoo would create substantial hardship for Plaintiff. 22 N.Y.C.R.R. § 1200.3.7(a). As detailed above *supra*, Plaintiff has faced hardship at the hands of Defendants since the infancy of his case. Upon his unlawful termination, he recognized the need

---

[2]    Rules 3.7(a)(1) & (2) are also expected to apply as exceptions to the advocate-witness rule: "(1) the testimony relates solely to an uncontested matter; (2) the testimony relates solely to the nature and value of legal services rendered in the matter." If the need to authenticate the emails related to the agreement to mediate arises, and other RPJ representatives cannot testify, Krasnoo's testimony should be appropriate, and non-prejudicial because he will only be testifying as to confirm the emails were sent and by whom they were sent, if Defendants are to refuse to accept authenticity of the emails. To date, they have not done so. Exception two will apply if Plaintiff must prove damages at trial to demonstrate whether Plaintiff's attorneys' fees are reasonable. In both situations, while another RPJ representative is likely to be able to testify to those matters, should Krasnoo's testimony be needed, it would not jeopardize the legitimacy of trial.

for legal counsel, and reached out to five different law firms.  Plaintiff Decl. ¶6.  Ultimately, four of the five law firms declined to represent Plaintiff *because of* Defendants' reputation in litigation and their lawyer ban imposed on lawyers at firms that sue MSG from attending their venues (through exclusion by use of facial recognition software).  *Id.* ¶7.  In addition to outright refusing to represent Plaintiff, prior to Krasnoo's representation, Plaintiff engaged another firm, to which MSG and its counsel effectively threatened Plaintiff if he did not stay quiet.  *Id.* ¶12. Consequently, the firm re-evaluated its representation and decided to withdraw because it was not willing to subject its attorneys to the lawyer ban, the firm having recently been removed from the ban after resolving litigation against MSG.  *Id.* ¶13.  After the firm withdrew from Plaintiff's representation, he was uneasy that he had the stamina, or support, to prosecute his case against Defendants.  Plaintiff Decl. ¶14.

Thereafter, Plaintiff connected with Krasnoo and RPJ who were willing to take on the case. *Id.* ¶16; Krasnoo Aff. ¶4.  After being retained, Plaintiff's counsel committed much time and effort to drafting correspondence and the Complaint, in addition to communicating Plaintiff's settlement negotiations.  Plaintiff Decl. ¶17.  Plaintiff, Krasnoo, and RPJ have worked together for nearly two years.  To suggest Plaintiff is not vulnerable to substantial hardship because the parties have not undergone discovery ignores the involved legal strategy, knowledge, and commitment implemented on behalf of Plaintiff prior to filing of this suit.  Plaintiff trusts his counsel and fears having to seek new counsel, once again.  *Id.* ¶22.  Further, Plaintiff has invested significant time, effort, and money in connection with his representation by Krasnoo and RPJ.  *Id.* ¶¶25-26.  The unanticipated financial costs and time commitment to finding, retaining, and informing a new law firm of Plaintiff's case could hinder his case.  *Id.*  Considering the speculative, premature nature

of this Motion to Disqualify, Plaintiff believes Defendants filed the instant motion to prevent or delay him from litigating his claims, instead of genuine ethical concern. *Id.* ¶25.

## **<u>CONCLUSION</u>**

For the reasons set forth above, Defendants' Motion should be denied in its entirety.  In the alternative, should the Motion be granted, Plaintiff seeks leave to amend the Complaint to nullify the effect of such Order.

Dated: New York, New York
       January 16, 2026

                         REAVIS PAGE JUMP LLP

By:     *Ethan Krasnoo*
               Ethan M. Krasnoo, Esq.
               Alice K. Jump, Esq.
               Hannah R. Brefeld, Esq.
               41 Madison Avenue, 41st Floor
               New York, New York 10010
               Tel.: (212) 763-4100
               EKrasnoo@rpjlaw.com
               AJump@rpjlaw.com
               HBrefeld@rpjlaw.com

               *Attorneys for Plaintiff Donald Ingrasselino*

**ATTORNEY CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 7.1**

I, Ethan M. Krasnoo, an attorney duly admitted to practice law before the United States District Court for the Southern District of New York, hereby certify that this memorandum of law complies with the word count limitations as set forth in Rule 7.1(c) of the Local Rules of the United States District Court for the Southern District of New York. In determining compliance, I relied on the word count function of the word-processing system used to prepare this document. The total number of words in this memorandum of law, exclusive of the table of contents, table of authorities, caption, and signature block is 8,654 words.

Dated: January 16, 2026
      New York, New York

                                                Ethan M. Krasnoo