UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONALD INGRASSELINO,

Plaintiff,

v.

MADISON SQUARE GARDEN ENTERTAINMENT CORP. and JOHN EVERSOLE, individually,

Defendants.

Case No. 1:25-cv-7980-VSB-HJR

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STRIKE CERTAIN ALLEGATIONS IN PLAINTIFF'S FIRST AMENDED COMPLAINT**

Shawn Patrick Regan
James J. La Rocca
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178-0060
Tel: (212) 309-6000
Fax: (212) 309-6001
shawn.regan@morganlewis.com
james.larocca@morganlewis.com

Christopher M. Pardo
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, Massachusetts 02110-1726
Tel: (617) 341-7700
Fax: (617) 341-7701
christopher.pardo@morganlewis.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

ARGUMENT ........ 4

I. LEGAL STANDARD. ........ 4

II. THE FOLLOWING PARAGRAPHS IN THE AMENDED COMPLAINT CONTAIN ALLEGATIONS THAT SHOULD BE STRICKEN IN WHOLE OR IN PART. ........ 6

A. Paragraphs 9, 10, 11, 76-79, and 80-82. ........ 6

B. Paragraphs 12, 83, 84, 85, 101, and 138. ........ 8

C. Paragraphs 15 and 90. ........ 10

D. Paragraphs 16, 91, and 92. ........ 11

E. Paragraph 41. ........ 11

F. Paragraph 43. ........ 12

G. Paragraphs 8, 48, 71, 75 and 99. ........ 12

H. Paragraph 87. ........ 14

I. Paragraphs 86, 88, 89, 13 and 14. ........ 15

CONCLUSION ........ 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allocco v. Dow Jones & Co.*,
2002 WL 1484400 (S.D.N.Y. July 10, 2002) ..........5

*Birner v. Kensington Vanguard*,
2025 WL 963311 (S.D.N.Y. Mar. 31, 2025) ..........14

*Britt v. Buffalo Mun. Hous. Auth.*,
2008 WL 4501929 (W.D.N.Y. Sep. 30, 2008) ..........6

*Brock Cap. Grp. LLC v. Siddiqui*,
2022 WL 2047589 (S.D.N.Y. June 7, 2022) ..........6

*Cabble v. Rollieson*,
2006 WL 464078 (S.D.N.Y. Feb. 27, 2006) ..........5

*Dent v. U.S. Tennis Ass'n*,
2008 WL 2483288 (E.D.N.Y. June 17, 2008) ..........14

*Fed. L. Enf't Officers Ass'n v. Att'y Gen. N.J.*,
93 F.4th 122 (3d Cir. 2024) ..........13

*Footbridge Ltd. Trust v. Countrywide Home Loans, Inc.*,
2010 WL 3790810 (S.D.N.Y. Sep. 28, 2010) ..........4

*G-I Holdings v. Baron & Budd*,
238 F. Supp. 2d 521 (S.D.N.Y. 2002) ..........14

*Gross v. Madison Square Garden*,
2024 WL 103235 (S.D.N.Y. Jan. 9, 2024), *R.&R. adopted in part*, 2024 WL 2055343 (S.D.N.Y. May 7, 2024) ..........7

*GWG MCA Cap., Inc. v. Nulook Cap., LLC*,
2019 WL 1084777 (E.D.N.Y. Mar. 7, 2019) ..........6, 9

*Kumaran v. Northland Energy Trading, LLC*,
762 F. Supp. 3d 322 (S.D.N.Y. 2025) ..........5, 12

*Lipsky v. Commonwealth United Corp.*,
551 F.2d 887 (2d Cir. 1976) ..........4

*Low v. Robb*,
2012 WL 173472 (S.D.N.Y. Jan. 20, 2012) ..........5, 8

*M'Baye v. World Boxing*,
2007 WL 844552 (S.D.N.Y. Mar 21, 2007) ....................14

*Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc.*,
2025 WL 2916153 (S.D.N.Y. Oct. 14, 2025) ....................4

*In re Merrill Lynch & Co., Inc. Rsch. Reports Secs. Litig.*,
218 F.R.D. 76 (S.D.N.Y. 2003) ....................5

*Metrokane, Inc. v. Wine Enthusiast*,
160 F. Supp. 2d 633 (S.D.N.Y. 2001) ....................5

*Morse v. Weingarten*,
777 F. Supp. 312 (S.D.N.Y. 1991) ....................5

*In re MTBE Prods. Liab. Litig.*,
402 F. Supp. 2d 434 (S.D.N.Y. 2005) ....................4

*Nachmany v. FXCM, Inc.*,
2020 WL 178413 (S.D.N.Y. Jan. 9, 2020) ....................12

*Ortiz v. Ciox Health LLC*,
2018 WL 1033237 (S.D.N.Y. Feb. 22, 2018) ....................6

*Patrick v. Local 51, Am. Postal Workers Union*,
2022 WL 445801 (S.D.N.Y. Feb. 14, 2022) ....................14

*Pattanayak v. Mastercard*,
2023 WL 2358826 (2d Cir. Mar. 6, 2023) ....................16

*Salahuddin v. Cuomo*,
861 F.2d 40 (2d Cir. 1988) ....................5

*Sanfo v. Avondale Care Grp., LLC*,
2022 WL 3448100 (S.D.N.Y. Aug. 17, 2022) ....................5

*Scheuer v. U.S. Liab. Ins. Co.*,
2023 WL 4275114 (S.D.N.Y. June 27, 2023) ....................12

*Smith v. AVSC Int'l, Inc.*,
148 F. Supp. 2d 302 (S.D.N.Y. 2001) ....................14

*Tucker v. Am. Int'l Grp., Inc.*,
936 F. Supp. 2d 1 (D. Conn. 2013) ....................5

*Wood v. Mike Bloomberg 2020, Inc.*,
2024 WL 3861828 (S.D.N.Y. Aug. 19, 2024) ....................9

**Statutes**

18 U.S.C. § 926C ....................13, 14

N.Y. Penal Law § 265.01-d ....................14

N.Y. Lab. Law § 740 ....................8, 11

**Rules**

Fed. R. Civ. P. 8 ....................1, 4

Fed. R. Civ. P. 12 ....................4

**Other Authorities**

5A Charles Alan Wright & Arthur R. Miller, Fed. Practice and Procedure § 1380 (2d ed. 1990) ....................5

Defendants Madison Square Garden Entertainment Corp. and John Eversole submit this Memorandum of Law in support of their motion to strike certain allegations in Plaintiff Donald Ingrasselino's First Amended Complaint (the "Motion").

## PRELIMINARY STATEMENT AND FACTUAL BACKGROUND

For the purposes of this Motion, Defendants incorporate by reference the factual background set forth in their motion to dismiss the Amended Complaint (ECF No. 55) and state as follows.

This case should be straightforward. Plaintiff asserts that Eversole made occasional remarks about Plaintiff's age and diabetes that purportedly constituted discrimination. *See* ECF No. 53 ("Amended Complaint" or "FAC") ¶¶39, 46, 49, 51, 56. He further alleges that he raised concerns and made internal complaints about purported "unethical and illegal" activities or practices by MSG, which resulted in retaliation against him. *Id.* ¶138. Plaintiff also alleges that MSG has been unjustly enriched because it retained or damaged some of his personal property post-termination. *Id.* ¶152.

But Plaintiff's Amended Complaint is not "short and plain," and its allegations are not "simple, concise, and direct." Fed. R. Civ. P. 8. Instead, it remains full of irrelevant and sensationalized assertions largely untethered to the underlying claims and which serve no purpose other than to generate inappropriate media attention. The Amended Complaint spans 56 pages and 152 paragraphs, with some allegations running a half-page or more. *See generally* FAC. Plaintiff gratuitously identifies more than 30 individuals by name, some accused of malfeasance and others alleged victims, but none party to this action with the exception of Eversole. *See, e.g.*, FAC ¶¶14, 60, 62, 78, 79, 83, 86, 89. Plaintiff rehearses needless detailed incidents that serve to aggrandize his claims, capture media attention, and cast Defendants (and other MSG employees and executives) in a negative light. *See, e.g.*, *id.* ¶¶11, 12, 78, 79, 82, 83, 84, 85, 101. For instance, in

support of his N.Y. Labor Law (NYLL) § 740 claim, Plaintiff spends nearly two pages detailing two incidents—one involving alleged sexual abuse and the other involving a transgender woman—even though he does not claim to have engaged in protected activity for either alleged incident and both are described in excessive, needless detail to garner attention for his lawsuit. *See id.* ¶¶78, 79, 82. Unsurprisingly, Plaintiff's retelling of these events has found traction in the press.[1] Plaintiff includes other allegations about Eversole—meant to portray him as scary, cruel, violent, and racist—that are wholly extraneous to any asserted claims. *See id.* ¶¶41, 43, 48, 75, 87, 99. And yet further allegations are made about purportedly unlawful or wrongful conduct, couched in terms of NYLL § 740 claims, despite Plaintiff fatally conceding that he did not engage in any protected activity with respect to that conduct and such conduct therefore being incapable of supporting such claims. *See id.* ¶¶16, 91, 92.

The overall impact of Plaintiff's pleading choices has been media coverage largely focused on the salacious details spread throughout the Amended Complaint, rather than Plaintiff's discrimination or retaliation claims. For example, Gothamist, a prominent N.Y.C.-focused blog, published an article titled, "Dolan, MSG targeted transgender woman, sexual assault accuser

---

[1] *See, e.g.*, Matt Moret & Zach Powell, *Lawsuit accuses Madison Square Garden of discrimination, illegal fan surveillance*, THE ATHLETIC (Sep. 26, 2025), Lawsuit accuses Madison Square Garden of discrimination, illegal fan surveillance - The Athletic. Paige Oamek, *Dolan, MSG targeted transgender woman, sexual assault accuser according to federal lawsuit*, GOTHAMIST (Sep. 27, 2025), Dolan, MSG targeted transgender woman, sexual assault accuser according to federal lawsuit - Gothamist; Robert Silverman, *How MSG became Maximum Spy Garden under Knicks owner James Dolan*, THE NEW YORK GROOVE (Oct. 2, 2025), How MSG became Maximum Spy Garden under Knicks owner James Dolan; Teri Robinson, *MSG Accused of Misusing Facial Recognition, Mishandling Data*, SECURITY BOULEVARD (Oct. 20, 2025), MSG Accused of Misusing Facial Recognition, Mishandling Data - Security Boulevard; Noah Shachtman & Robert Silverman, *The Shocking Secrets of Madison Square Garden's Surveillance Machine*, WIRED (Apr. 17, 2026), The Shocking Secrets of Madison Square Garden's Surveillance Machine - Wired.

according to federal lawsuit."[2] Security Boulevard, an online technology website, wrote an article titled, "MSG Accused of Misusing Facial Recognition, Mishandling Data."[3] The New York Groove, another N.Y.C.-focused blog, titled its article, "How MSG became Maximum Spy Garden under Knicks owner James Dolan."[4] The Athletic, meanwhile, perhaps the preeminent online sports publication in the country, falsely stated in its title that Plaintiff's lawsuit accuses MSG of "illegal fan surveillance" (none of Plaintiff's causes of action assert a claim for illegal surveillance) and dedicated the majority of its article to the conduct underlying Plaintiff's NYLL § 740 claim despite such conduct being largely immaterial.[5] Wired, a digital magazine, recently published an article entitled, "The Shocking Secrets of Madison Square Garden's Surveillance Machine" that opens with "[f]amously vengeful Knicks owner Jim Dolan has long spied on people at his iconic arenas. WIRED goes deep inside the operation that allegedly tracked a trans woman, lawyers, protesters, and more."[6] And, a podcast called Pablo Torre Finds Out recently aired an episode entitled, "We Got Inside Knicks Surveillance—and MSG's Deep State Is Stranger Than You

---

[2] *See, e.g.*, Paige Oamek, *Dolan, MSG targeted transgender woman, sexual assault accuser according to federal lawsuit*, GOTHAMIST (Sep. 27, 2025), Dolan, MSG targeted transgender woman, sexual assault accuser according to federal lawsuit - Gothamist.

[3] Teri Robinson, *MSG Accused of Misusing Facial Recognition, Mishandling Data*, SECURITY BOULEVARD (Oct. 20, 2025), MSG Accused of Misusing Facial Recognition, Mishandling Data - Security Boulevard.

[4] Robert Silverman, *How MSG became Maximum Spy Garden under Knicks owner James Dolan*, THE NEW YORK GROOVE (Oct. 2, 2025), How MSG became Maximum Spy Garden under Knicks owner James Dolan.

[5] *See* Matt Moret & Zach Powell, *Lawsuit accuses Madison Square Garden of discrimination, illegal fan surveillance*, THE ATHLETIC (Sep. 26, 2025), Lawsuit accuses Madison Square Garden of discrimination, illegal fan surveillance - The Athletic.

[6] Noah Shachtman & Robert Silverman, *The Shocking Secrets of Madison Square Garden's Surveillance Machine*, WIRED (Apr. 17, 2026), The Shocking Secrets of Madison Square Garden's Surveillance Machine - Wired.

Think."[7] The episode focuses on numerous allegations that appear in the Amended Complaint, including allegations about facial recognition, a transgender woman, and police dogs.

Plaintiff, whose employment tenure lasted five months, attempts to transform a meritless employment dispute into a public referendum on MSG's efforts to secure one of the most visible public entertainment venues in the country and its alleged internal corporate policies. To prevent prejudice, avoid distraction and enforce Fed. R. Civ. P. 8, the Court should strike the scandalous, immaterial, and impertinent allegations, and those set out in needless detail, from the Amended Complaint.

## ARGUMENT

### I. LEGAL STANDARD.

Under Fed. R. Civ. P. 12(f), a court should "strike from a pleading…any redundant, immaterial, impertinent, or scandalous matter." *See Footbridge Ltd. Trust v. Countrywide Home Loans, Inc.*, 2010 WL 3790810, at *5 (S.D.N.Y. Sep. 28, 2010) (quoting Fed. R. Civ. P. 12(f)). While courts generally "should not tamper with the pleadings," they can when there is a "strong reason for doing so." *Id.* (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)).

Under Rule 12(f), immaterial means having "no essential or important relationship to the claim for relief" and impertinent means "consist[ing] of statements that do not pertain to, and are not necessary to resolve, the disputed issues." *Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc.*, 2025 WL 2916153, at *3 (S.D.N.Y. Oct. 14, 2025) (quoting *In re MTBE Prods. Liab. Litig.*, 402 F. Supp. 2d 434, 437 (S.D.N.Y. 2005)). Scandalous material includes that which

[7] Pablo Torre, *We Got Inside Knicks Surveillance—and MSG's Deep State Is Stranger Than You Think*, PABLO TORRE FINDS OUT (Apr. 17, 2026), We Got Inside Knicks Surveillance—and MSG's Deep State Is Stranger Than You Think - Pablo Torre Finds Out.

"reflects unnecessarily on the defendant's moral character" or serves no purpose other than to inflame readers. *Kumaran v. Northland Energy Trading, LLC*, 762 F. Supp. 3d 322, 330-31 (S.D.N.Y. 2025); *Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991).

"To have redundant, immaterial or impertinent matters stricken from a pleading, the defendant must demonstrate that no evidence in support of the allegation would be admissible, that the allegations have no bearing on the issues in the case, and that to permit the allegations to stand would result in prejudice to the movant." *Allocco v. Dow Jones & Co.*, 2002 WL 1484400, at *1 (S.D.N.Y. July 10, 2002) (quoting *Metrokane, Inc. v. Wine Enthusiast*, 160 F. Supp. 2d 633, 641-42 (S.D.N.Y. 2001)). Prejudice, in turn, has been found where allegations, if publicized, "harm [the defendant] in the public eye and could influence prospective jury members." *Sanfo v. Avondale Care Grp., LLC*, 2022 WL 3448100, at *3 (S.D.N.Y. Aug. 17, 2022) (quoting *Low v. Robb*, 2012 WL 173472, at *9 (S.D.N.Y. Jan. 20, 2012)).

Rule 12(f) also "is designed to reinforce the requirement in Rule 8(e) that pleadings be simple, concise, and direct." *In re Merrill Lynch & Co., Inc. Rsch. Reports Secs. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) (quoting 5A Charles Alan Wright & Arthur R. Miller, Fed. Practice and Procedure § 1380 (2d ed. 1990)). Thus, where allegations are prolix or set out in "needless detail," they are subject to Rule 12 relief. *See, e.g.*, *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant and immaterial."); *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 16 (D. Conn. 2013) ("Even where matter in a pleading is relevant to the controversy, it nonetheless may be stricken if it is scandalous or set out in 'needless detail.'" (quoting *Cabble v. Rollieson*, 2006 WL 464078, at *11 (S.D.N.Y. Feb. 27, 2006))).

Additionally, where a complaint levies allegations against a non-party unable to defend himself, those allegations are ripe for striking. *See, e.g.*, *Brock Cap. Grp. LLC v. Siddiqui*, 2022 WL 2047589, at *6 (S.D.N.Y. June 7, 2022) (striking allegations against individual who was not party to case but alleged to have schemed to defraud community); *Ortiz v. Ciox Health LLC*, 2018 WL 1033237, at *5 (S.D.N.Y. Feb. 22, 2018) (denying motion to strike as moot but observing that inclusion of names of defendant's managers was "gratuitous").[8]

## II. THE FOLLOWING PARAGRAPHS IN THE AMENDED COMPLAINT CONTAIN ALLEGATIONS THAT SHOULD BE STRICKEN IN WHOLE OR IN PART.

Plaintiff has chosen to forsake the "short and plain statement" pleading standard in Fed. R. Civ. P. 8(a) in favor of a verbose complaint rife with salacious allegations that serve no legitimate purpose beyond inflaming the reader, painting Defendants in a negative light and attracting media attention. The following paragraphs should be stricken, in whole or in part, because they: (1) are scandalous, (2) have no bearing on the issues of the case and would prejudice Defendants, (3) are set out in needless detail, and/or (4) gratuitously name or allege wrongdoing to non-parties.

### A. Paragraphs 9, 10, 11, 76-79, and 80-82.

These paragraphs concern Plaintiff's allegations that MSG: (i) conducted "background checks" on individuals who Plaintiff believed "were of no threat to MSG" but, upon information and belief, were "personal enemies" of MSG's CEO, FAC ¶¶9, 76; (ii) lacked "appropriate storage…protocols" and "disseminat[ed]" personal information of "guests, vendors, customers, and employees," *id.* ¶¶10, 77; (iii) sought to secretly record a conversation, *id.* ¶¶78-79; and (iv) used facial recognition software, *id.* ¶¶80-82. The allegations in these paragraphs are purportedly

[8] *See also GWG MCA Cap., Inc. v. Nulook Cap., LLC*, 2019 WL 1084777, at *11 (E.D.N.Y. Mar. 7, 2019) (observing that challenged allegations were against non-party who was "largely without recourse"); *Britt v. Buffalo Mun. Hous. Auth.*, 2008 WL 4501929, at *3 (W.D.N.Y. Sep. 30, 2008).

in support of Plaintiff's NYLL § 740 claim, but they concern the conduct itself—and Plaintiff's supposed potential rationales underlying the conduct—rather than the necessary elements of a NYLL § 740 claim, *i.e.*, protected activity, retaliation, and causation. This focus is perhaps unsurprising, because a salacious allegation that MSG and its employees were spying on their "personal enemies," invading the privacy of guests, covertly recording a conversation, and using facial recognition software in purportedly illicit ways is much more attention-getting than specific allegations about how, when and to whom Plaintiff reported the supposed conduct. *Id.* ¶76-82. While those specific reporting details are what matter, they are few and far between in the Amended Complaint, eschewed in favor of conclusory assertions that Plaintiff "reasonably believed" MSG's actions were "unlawful" (*e.g., id.* ¶¶77, 81).

Yet, *the Amended Complaint fails to mention a single law that purportedly was violated, let alone allege Plaintiff reasonably connected MSG's actions with any law when he purportedly had concerns. Id.* ¶¶9-11, 76-82. Plaintiff thus fails to explain "why" he believed these actions were unlawful and present facts that would make such a belief plausible and reasonable. As Plaintiff, a trained law enforcement officer, should know, N.Y. law does not bar facial recognition software and provides no common law claim for invasion of privacy. It only provides a narrow statutory claim where a person's image or likeness is used in advertising without authorization—not the case here. *See Gross v. Madison Square Garden*, 2024 WL 103235, *6-8 (S.D.N.Y. Jan. 9, 2024) (dismissing claim for, *inter alia*, invasion of privacy premised on use of facial recognition software), *R.&R. adopted in part*, 2024 WL 2055343 (S.D.N.Y. May 7, 2024) (dismissing all claims).

Similarly, Plaintiff spends nearly a page and a half discussing the allegations regarding "secret[] tape" recording, which are devoid of any basis for their inclusion in the Amended

Complaint. Plaintiff does not allege that he raised any complaint or objection. He pleads that he sat quietly in a meeting when the topic was discussed and, upon returning from the purchase of equipment, told Eversole that he needed to depart for another meeting. The allegations appear aimed at harming Eversole, MSG, and other MSG executives in the public eye and inflaming readers, with no relevance to his whistleblower retaliation claim. Additionally, Plaintiff therein unnecessarily names a handful of individuals who are accused of wrongdoing, not party to this litigation and unable to defend themselves.

Further, in Paragraphs 11 and 82, Plaintiff alleges that Eversole directed the use of facial recognition software to monitor the activities of a transgender woman. This allegation is purportedly in support of Plaintiff's NYLL § 740 claim, but Plaintiff does not allege that he raised the concern about the transgender woman with anyone or engaged in protected activity. The allegations, built on nothing more than Plaintiff's purported speculation, are a clear attempt to cast Eversole in a negative light, with no tie to the claims themselves, which the Court should not allow. *See Low*, 2012 WL 173472, at *10 (striking statements that "appear to be an attempt to gin up resentment against [defendant]"). Defendants should not have to waste resources and time taking discovery and rebutting the truth of allegations immaterial to an underlying claim.

**B. Paragraphs 12, 83, 84, 85, 101, and 138.**

Plaintiff alleges that certain MSG executives awarded a security contract to Xtract One Technologies because of, upon some unmentioned information and belief, a purported conflict of interest. These paragraphs also are included in a NYLL § 740 claim, which requires, in relevant part, that a plaintiff disclose to a supervisor, threaten to disclose to a supervisor, objects to or refuses to participate in an employer's activity, policy or practice that the plaintiff reasonably believes violates the law or poses a substantial and specific danger to the public health or safety. NYLL § 740(2). Notably absent as an actionable claim is a belief that the employer violated its

own internal policy, such as a conflict of interest policy. So Plaintiff's assertion that MSG executives have a relationship with Xtract One is wholly immaterial and impertinent, particularly because Plaintiff acknowledges that MSG uses other weapons technology systems and he did not complain about them. FAC ¶85.

Regarding the "danger to public health and safety" prong, Plaintiff's Amended Complaint cannibalizes itself. Despite spilling much ink about the system's alleged "failure rate in detecting" weapons, FAC ¶¶12, 83, and a formulaic recitation that he "flagg[ed] concerns to his superior" about alleged risks, *id.* ¶84, his theory that these facts are relevant ends with a fatal whimper: Plaintiff alleges that, as a result, MSG "continue[d] utilizing its old technology," *id.* ¶85. Plaintiff revised this allegation from the initial complaint, adding a sentence explaining that "traditional metal detectors…, when used in tandem with [Xtract One], resulted in mass delays[.]" *Id.* In other words, even crediting Plaintiff's theory, the alleged efforts to employ this system *never* posed a danger to public safety. Plaintiff makes no allegation that he complained about MSG's older (existing) systems or that he reasonably believed those posed a risk to public safety.

Therefore, Plaintiff had no reason to raise Xtract One in the Amended Complaint. This immateriality renders the allegations scandalous because Plaintiff effectively pleads that MSG executives put their financial interest above the safety of Madison Square Garden guests without any basis. *See Wood v. Mike Bloomberg 2020, Inc.*, 2024 WL 3861828, at *3 (S.D.N.Y. Aug. 19, 2024) (explaining that only conceivable purpose of certain allegations was "to portray [defendant] and the candidate in a negative light"). Finally, because of the immaterial, impertinent, and scandalous nature of the allegations in these paragraphs, Plaintiff should be required to remove the name of the non-party executive against whom Plaintiff alleges misconduct. *See GWG MCA Cap.,*

*Inc.*, 2019 WL 1084777, at *11 ("[T]he challenged allegations not only reflect on the character of the defendants, but on a non-party, who is largely without recourse.").[9]

**C. <u>Paragraphs 15 and 90</u>.**

Plaintiff speculates that Eversole planned to restrict police dogs from Madison Square Garden because of the views of one executive. FAC ¶¶15, 90. The allegation is cloaked as a NYLL § 740 claim, but an utterly meritless one, rendering it immaterial and impertinent. The allegation is based on Plaintiff's rank speculation as to what he purportedly believed to be Eversole's plan. In addition, there is no allegation that Plaintiff disclosed or threatened to disclose Eversole's purported scheme to a supervisor, or that Plaintiff objected or refused to participate in such plan. And, Plaintiff acknowledges that MSG uses other weapons detection systems (*id.* ¶85) such that there were no safety concerns, let alone substantial and specific ones. The allegation is also scandalous where, as here, it involves views regarding animals likely to inflame the reader and attributed to an individual who is not even a named defendant.

Moreover, Plaintiff does not allege, nor could he, that he reasonably believed MSG violated a law, rule, or regulation by not employing police dogs for security purposes. Nor does he present a viable theory that the circumstances posed a substantial and specific danger to public health/safety. Despite the sensational tone of the Amended Complaint, Plaintiff does not even allege that MSG failed to use canines or rejected a proposal from Plaintiff that they be used more. Plaintiff alleges merely that Eversole *raised* "*concerns* regarding the…use of K-9s for bomb sniffing and other security measures on MSG premises," that Eversole was "*seeking* to *restrict*

---

[9] As a general matter, the Complaint repeatedly and gratuitously names MSG employees and executives in allegations that are at best peripheral to Plaintiff's claims. To the extent the Court strikes certain allegations from the Complaint, it should also require Plaintiff to redact or remove the names of non-parties in at least the following paragraphs: 9, 11, 13, 14, 15, 54, 62, 76, 78, 79, 80, 83, 84, 85, 86, 89, and 90.

[MSG's] K-9 program," and Eversole "*attempt[ed]* to fire the company MSG works with that [actually] provided K-9s, in an *effort* to entirely ban dogs from MSG property." FAC ¶90. He does not allege that MSG changed its practices as to canines let alone that a change jeopardized public safety. The fact that Plaintiff "express[ed] concerns" about these issues does not transform his opinions into protected activity giving rise to a claim of unlawful retaliation. Nor does his allegation, "on information and belief," that MSG's CEO disliked police dogs matter. *Id.* These allegations are not material or pertinent to a viable theory, are merely designed to inflame, sensationalize, and expand the scope of discovery, and should be struck.

**D. <u>Paragraphs 16, 91, and 92</u>.**

In these paragraphs, Plaintiff alleges wrongdoing about purported directives to track employees' personal email accounts and report to human resources fewer hours than he actually worked. Although cast as NYLL § 740 claims, Plaintiff effectively concedes that there is no basis for these allegations because he "did not formally object" or "complain" about the directives. *See id.* ¶¶91, 92. In the Amended Complaint, Plaintiff inserts three new sentences in paragraph 91 that reiterate that he did not complain because, he believed, it would have been futile to do so. *Id.* ¶91. However, Section 740 does not excuse an employee's failure to disclose to a supervisor, for any reason, under these circumstances. NYLL § 740(2)(a). In contrast, the legislature made limited exceptions regarding notice to an employer only when an employee makes a disclosure to a public body. *Id.* § 740(3). Therefore, the conduct described in these paragraphs serves only to inflame the reader and paint Defendants in a negative light.

**E. <u>Paragraph 41</u>.**

Paragraph 41 alleges that Eversole "made it known" that he "was annoyed" when a former employee "requested to work from home" to "help care for his sick child" and that Eversole "decided to 'phase out' this employee….even though [Plaintiff]…believed the employee's

performance to have been exemplary, with great leadership skills." FAC ¶41. Plaintiff alleges that Eversole's alleged hostility toward accommodating Plaintiff's diabetes is "supported" by Eversole's purported opposition to permitting an employee to work from home "to care for his sick child." An allegation that Eversole refused to provide flexibility to care for an ill child has no bearing on Plaintiff's disability discrimination claim.

Moreover, Eversole's decision was purportedly based on a "personal policy" of "not allowing" his security team employees "to work from home," which would be unsurprising given their primarily responsibility is to provide on-premises security during live events. *Id.* Nowhere does Plaintiff allege that this employee was even prohibited from taking the day off. *Id.* The allegations in this paragraph are therefore immaterial and impertinent, and also scandalous because they seek to portray Eversole in a negative light without a legitimate attendant purpose. *See Nachmany v. FXCM, Inc.*, 2020 WL 178413, at *8 (S.D.N.Y. Jan. 9, 2020) (allegation is scandalous when it has no purpose but to inflame reader); *Kumaran*, 762 F. Supp. 3d at 330-31 (allegation is scandalous when it reflects unnecessarily on defendant's moral character).

**F. Paragraph 43.**

Plaintiff introduces allegations about a "face rash" about which he "was embarrassed," but a face rash is not an actionable disability under the N.Y. State Human Rights Law or the N.Y.C. Human Rights Law. The sole purpose of this paragraph appears to be to inflame the reader, by using words such as "aggressive," "without empathy," "berated," "mock," and "disgustingly." *See Scheuer v. U.S. Liab. Ins. Co.*, 2023 WL 4275114, at *4 (S.D.N.Y. June 27, 2023) (striking allegation that was "inflammatory and irrelevant to plaintiffs' claims").

**G. Paragraphs 8, 48, 71, 75 and 99.**

Defendants seek to strike the allegations in these paragraphs that reference Eversole's carrying of a firearm. Plaintiff asserts that he and other unnamed former and current MSG

employees allegedly feared Eversole because of his alleged tendency to carry a firearm. These allegations are inflammatory and clearly included to paint Eversole as threatening and violent. As part of his NYLL § 740 claims, Plaintiff asserts that some employees should not have carried guns, even though they—and Plaintiff and Eversole—were allowed to do so pursuant to federal law. FAC ¶¶71, 74-75. But Plaintiff does not allege that he complained about Eversole carrying a gun in the manner required by Section 740. Plaintiff alleges that he told Eversole that "*he* did not feel comfortable carrying a firearm." *Id*. ¶75 (emphasis added). And he states that he requested from Eversole and other executives "that he be allowed to put in writing clear standards and guidelines." *Id.* Neither of these allegations satisfies the standard imposed by section 740(2)(a).

In the Amended Complaint, Plaintiff inserted a statement in paragraph 75 that he "voiced his opposition to the dangerous practice of allowing and expecting employees to carry weapons." *Id*. The statement is conclusory and the pleading does not state to whom he purportedly voiced opposition or when. Furthermore, the Amended Complaint does not allege any law that would have been violated by allowing these employees (his direct reports) to carry a firearm (particularly when the same paragraph states that the same employees "were authorized through [the Law Enforcement Officers Safety Act ("LEOSA")] to carry weapons.") *Id.*; *see* 18 U.S.C. § 926C. Similarly, Plaintiff does not allege facts showing that he could have reasonably believed retired officers carrying weapons "poses a substantial and specific danger to the public health or safety." NYLL § 740(2)(a). Given the rights conferred by LEOSA on retired law enforcement officers about which Plaintiff was aware and its preemption of contrary state law, Plaintiff would be hard-pressed to do so. *See* 18 U.S.C. § 926C; *Fed. L. Enf't Officers Ass'n v. Att'y Gen. N.J.*, 93 F.4th 122, 134 (3d Cir. 2024) ("[LEOSA] opens by stating: 'Notwithstanding any other provision of the law of any State or any political subdivision thereof' a [qualified retired officer] carrying the

requisite identification may concealed-carry a firearm…. It is difficult to imagine a clearer statement of preemption." (citations and quotations omitted)); *see also* N.Y. Penal Law § 265.01-d(1) and d(2)(c) (McKinney) (prohibiting carrying a firearm on private property, unless the owner or lessee gives consent, and entirely exempting from the law "qualified retired law enforcement officers who are authorized to carry concealed firearms pursuant to 18 U.S.C. 926C").

Thus, the repeated references to Eversole having a gun are immaterial, impertinent, scandalous, serve to sensationalize, and are likely to "influence prospective jury members." *G-I Holdings v. Baron & Budd*, 238 F. Supp. 2d 521, 555-56 (S.D.N.Y. 2002) (granting motion to strike where allegations "harm[ed] [the moving party] in the public eye and could influence prospective jury members"); *Patrick v. Local 51, Am. Postal Workers Union*, 2022 WL 445801, *2 (S.D.N.Y. Feb. 14, 2022) (same); *Dent v. U.S. Tennis Ass'n*, 2008 WL 2483288, *4 (E.D.N.Y. June 17, 2008).

**H. <u>Paragraph 87</u>.**

In the first two sentences of paragraph 87, Plaintiff alleges that Eversole made an offhanded remark about the race of a former MSG employee. Plaintiff does not assert claims for race discrimination (nor could he) and this allegation serves only to imply that Eversole is somehow racist. "[A]llegations about" a defendant's behavior towards employees in a *different* protected class "are not relevant." *Smith v. AVSC Int'l, Inc.*, 148 F. Supp. 2d 302, 317 (S.D.N.Y. 2001) (granting motion to strike certain allegations, explaining "behavior toward other employees who were not also older white men are not relevant to any of [Plaintiff's] claims."). Whether Eversole made a statement about another individual based on *race* (he did not) is not pertinent to Plaintiff's claims of *age or disability* discrimination and should be struck. *See Birner v. Kensington Vanguard,* 2025 WL 963311, *9 (S.D.N.Y. Mar. 31, 2025) (striking allegations that "bear no material relationship" to the asserted claims, which threaten "unnecessary discovery costs and

reputational harm"); *M'Baye v. World Boxing*, 2007 WL 844552, *4 (S.D.N.Y. Mar 21, 2007) (striking allegations that would "impermissibly widen the scope of discovery"). These allegations in Paragraph 87 are immaterial, impertinent, and scandalous. The Court should strike them.

### I. **<u>Paragraphs 86, 88, 89, 13 and 14</u>.**

Finally, Paragraphs 86, 88, 89, 13 and 14 assert that Plaintiff "complained" about "discrimination against women employed by MSG," including referring to two women in derogatory terms, FAC ¶86, and what Plaintiff salaciously describes as "sexualization" of an employee, overburdening her with work "for no apparent legitimate reason," *id.* ¶89. He claims to have "attempted to raise" these issues with Eversole and that he "voiced his concerns" to six other persons that he asserts, in conclusory fashion, are in "Company leadership and HR." *Id.* ¶88.

The fact that Plaintiff's purpose is to slander and prejudice Eversole is manifested in the degree to which Plaintiff's own statements contradict themselves. He alleges that one of the women, Alexandria Baker, would "seek his help" when overburdened with work and that he complained on her behalf. *Id*. ¶89. But he also claims that Ms. Baker is one of the leaders *to whom* he allegedly complained, while also claiming that she was his "direct report." *See id*. ¶¶88-89. Similarly, he asserts that Cameron Watkins was also among the members of "Company leadership and HR" to whom he "voiced concerns," *id.* ¶88, apparently forgetting that he earlier concedes that Mr. Watkins "was *Mr. Ingrasselino's direct report*," *id.* ¶55.

At best,[10] the non-conclusory factual allegations set forth in these paragraphs allege that Plaintiff complained to Eversole about derogatory terminology Eversole used when referring to two female employees and a time-off request Eversole denied from one female employee. *Id*. ¶¶13, 89. But Plaintiff alleges that Eversole directed negative terminology toward Plaintiff and denied

---

[10] Paragraph 88 says Plaintiff "*attempted* to raise" concerns about the "mistreatment" of these employees with Eversole, not that he actually did. *Id*. ¶88 (emphasis added).

Plaintiff time-off also. *Id.* ¶43 (alleging "[Plaintiff] requested a day off, which Mr. Eversole (as expected) denied, claiming that he needed [Plaintiff] in the office."). Indeed, Plaintiff alleges that he "complained" to Human Resources about both "this [treatment of the female employees] *and his own mistreatment* by Mr. Eversole." *Id.* ¶89. Thus, as a matter of law, Plaintiff cannot plausibly claim to have a reasonable belief that Eversole's actions were based on *gender*. *Pattanayak v. Mastercard*, 2023 WL 2358826, *4 (2d Cir. Mar. 6, 2023) (distinguishing treatment by supervisor who is "harsh, unjust, and rude" from actions that are unlawfully based on employee's gender, race, etc.).

As such, Plaintiff's conclusory assertions of gender discrimination, "sexualization" of female employees, and Plaintiff's scurrilous allegations that one of his subordinates was kept employed because Eversole and MSG's CEO "liked to look at her" and that Eversole had the door of two employees' offices removed, serve no purpose other than to incite and sensationalize. FAC ¶¶14, 88, 89. As to the "sexualization" allegation, the factual allegations are that Plaintiff "inquired as to [the employee's] job description, etc." in a discussion with Eversole, which is not a complaint, and raised with HR the aforementioned time-off denials. *Id.* ¶¶14, 89. Paragraphs 86 and 87 do not contain a factual allegation about any complaint, just conclusory and vague assertions that Plaintiff "complained about [Eversole's] unlawful discrimination against women" (*id.* ¶86), and "expressed concern to [Eversole] regarding his distain[*sic*] and mistreatment of female employees" (*id.* ¶87). Paragraph 88 contains a conclusory allegation about complaints Plaintiff purportedly made about Eversole's purported removal of two female employees' office doors. But Plaintiff's allegations at paragraph 52 about similar annoying conduct to which Eversole subjected him (a male)—*e.g.*, Eversole had Plaintiff "fetch food," "swip[ed] [Plaintiff's] phone," and "pretend[ed] to strike

[Plaintiff]…to make him flinch"—shows that Eversole's alleged behavior had nothing to do with gender. *Id*. ¶52.

Combined with the fact that Plaintiff alleges nothing about when he complained, where, how and what was said (other than the implausible assertion in paragraph 88 that the six individuals to whom he voiced concerns all specifically said the exact same thing, namely "to keep quiet and not get involved or that he would be fired"), the scurrilous and nonsensical nature of these allegations show that their real purpose is to prejudice Defendants.

## CONCLUSION

For the reasons stated above, the Court should grant Defendants' Motion in its entirety.

DATED: New York, New York
May 7, 2026

Respectfully submitted,

By: */s/ Shawn Patrick Regan*

Shawn Patrick Regan
James J. La Rocca
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178-0060
Tel: (212) 309-6000
Fax: (212) 309-6001
shawn.regan@morganlewis.com
james.larocca@morganlewis.com

Christopher M. Pardo
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, Massachusetts 02110-1726
Tel: (617) 341-7700
Fax: (617) 341-7701
christopher.pardo@morganlewis.com

*Attorneys for Defendants*

**WORD COUNT CERTIFICATION**

I hereby certify that this brief complies with the word count limitations as set forth in Local Rule 7.1(c) of the United States District Court for the Southern District of New York. In determining compliance, I relied on the word count function of the word processing system used to prepare this document. The total number of words in this brief, exclusive of the table of contents, table of authorities, caption, and signature block is 5,326 words.

DATED: New York, New York
May 7, 2026

*/s/ Shawn Patrick Regan*
Shawn Patrick Regan

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONALD INGRASSELINO,<br><br>Plaintiff,<br>v.<br><br>MADISON SQUARE GARDEN ENTERTAINMENT CORP. and JOHN EVERSOLE, individually,<br><br>Defendants. | Case No. 1:25-cv-7980-VSB-HJR<br><br>**CERTIFICATE OF SERVICE** |

I certify that, on the date set forth below, I caused the foregoing to be e-filed with the Court via the CM/ECF system, which sent notification of such filing to the attorneys of record.

DATED: New York, New York
May 7, 2026

By: */s/ Shawn Patrick Regan*

Shawn Patrick Regan
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178-0060
Tel: (212) 309-6000
Fax: (212) 309-6001
shawn.regan@morganlewis.com
*Attorneys for Defendants*