UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONALD INGRASSELINO,

                    Plaintiff,

          v.

MADISON SQUARE GARDEN
ENTERTAINMENT CORP. and JOHN
EVERSOLE, individually,

                    Defendants.

Case No.: 1:25-cv-7980-VSB-HJR

 

**PLAINTIFF DONALD INGRASSELINO'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS MADISON SQUARE GARDEN
ENTERTAINMENT CORP. AND JOHN EVERSOLE'S MOTION TO STRIKE
CERTAIN ALLEGATIONS IN PLAINTIFF'S FIRST AMENDED COMPLAINT**

 

**REAVIS PAGE JUMP LLP**

41 Madison Avenue, 41st Floor
New York, New York 10010

*Attorneys for Plaintiff Donald Ingrasselino*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................................1

ARGUMENT.................................................................................................................................3

   I.  THE APPLICABLE LEGAL STANDARD.........................................................................3

   II.  DEFENDANTS' MOTION TO STRIKE
       PORTIONS OF THE FAC SHOULD BE DENIED ..........................................................5

       A.  Paragraphs 9-11, 76-79, and 80-82...............................................................7

       B.  Paragraphs 12, 83-85, 101, and 138 ...........................................................13

       C.  Paragraphs 15 and 90...................................................................................17

       D.  Paragraphs 16, 91, and 92............................................................................18

       E.  Paragraph 41 ................................................................................................19

       F.  Paragraph 43 ................................................................................................21

       G.  Paragraphs 8, 48, 71, 75, and 99.................................................................22

       H.  Paragraph 87 ................................................................................................24

       I.  Paragraphs 86, 88, 89, 13 and 14................................................................25

   CONCLUSION ...............................................................................................................28

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Davis Polk & Wardwell LLP*,
  850 F. Supp. 2d 392 (S.D.N.Y. 2012) ..................................................................... 4

*Bay St. Advisors, LLC v. Mahoney*,
  2025 WL 2793684 (S.D.N.Y. Sept. 30, 2025) ..................................................... 2, 4

*Bellavia v. Orleans County*,
  2023 WL 11915835 (W.D.N.Y. Jan. 13, 2023) ......................................................... 8

*Brady v. Basic Research, L.L.C.*,
  101 F. Supp. 3d 217 (E.D.N.Y. 2015) .................................................................. 4, 8

*Broadrick v. Gilroy*,
  786 F. Supp. 3d 487 (2d Cir. 2025) ......................................................................... 4

*Burban v. City of Neptune Beach, Fla.*,
  2018 WL 1493177 (M.D. Fla. Mar. 27, 2018),
  *aff'd*, 920 F.3d 1274 (11th Cir. 2019) ............................................................ 23, 24

*Cooney v. City of New York Department of Sanitation*,
  127 A.D.3d. 629 (1st Dep't 2015) .......................................................................... 21

*Curtis v. George J. Meyer Malt & Grain Corp.*,
  6 F.R.D. 444 (W.D.N.Y. 1947) ......................................................................... 16 n.3

*Dignitti v. Brattleboro Retreat*,
  2020 WL 4432945 (D. Vt. July 31, 2020) ...................................................... 15, 16 n.3

*Doe v. Bell*,
  194 Misc. 2d 774 (Sup. Ct. N.Y. Cnty. 2003) ........................................................ 21

*E.E.O.C. v. Bloomberg L.P.*,
  778 F. Supp. 2d 458 (S.D.N.Y. 2011) .................................................................... 25

*eShares, Inc. v. Talton*,
  727 F. Supp. 3d 482 (2d Cir. 2024) ............................................................... 3, 4, 18

*Gregory Wayne Designs, LLC v. Lowry*,
  2024 WL 3518584 (S.D.N.Y. July 24, 2024) ............................................................ 7

*Gross v. Madison Square Garden Ent. Corp.*,
  2024 WL 103235, (S.D.N.Y. Jan. 9, 2024),
  *adopted as modified*, 2024 WL 2055343 (S.D.N.Y. May 7, 2024) ........................ 12

*Hall v. Paine, Webber, Jackson & Curtis, Inc.*,
  No. 82 CIV. 2840, 1984 WL 812 (S.D.N.Y. Aug. 27, 1984) .................................... 20

*Hotaling v. Martuscello*,
  2025 WL 2607661 (N.D.N.Y. Sept. 9, 2025) ................................................................... 23, 24

*Howard v. Rosales*,
  2014 WL 969683 (S.D.N.Y. Mar. 12, 2014) .............................................................................. 8

*Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*,
  596 F. Supp. 2d 821 (S.D.N.Y. 2008) ...................................................................................... 4

*Kim v. BTG Pactual Asset Mgt. US, LLC*,
  2022 WL 4115955 (S.D.N.Y. Sept. 9, 2022) .................................................................... 16 n.3

*Koeller v. Numrich Gun Parts Corporation*,
  675 F. Supp. 3d 260 (N.D.N.Y. 2023) ................................................................................. 5, 13

*Kumaran v. Northland Energy Trading, LLC*,
  762 F.Supp.3d 322 (S.D.N.Y. 2025) ......................................................................................... 5

*Lipsky v. Commonwealth United Corp.*,
  551 F.2d 887 (2d Cir. 1976) ...................................................................................................... 4

*Lytle v. JPMorgan Chase*,
  810 F. Supp. 2d 616 (S.D.N.Y. 2011) ..................................................................................... 16

*McCrae Associates, LLC v. Universal Capital Mgt., Inc.*,
  554 F. Supp. 2d 249 (D. Conn. 2008) ...................................................................................... 5

*Mitchell v. New York City Dept. of Educ.*,
  2025 WL 978366 (2d Cir. Mar. 31, 2025). ............................................................................ 11

*Nimmons v. U.S. Tennis Assn.*,
  2019 WL 8197772 (E.D.N.Y. Jan. 7, 2019)............................................................................. 6

*Oram v. SoulCycle LLC*,
  979 F. Supp 2d 498 (S.D.N.Y. 2013) .................................................................................. 4, 16

*Rackley v. Constellis, LLC*,
  2024 WL 3498718 (S.D.N.Y. June 17, 2024),
  *R&R adopted as modified*, 2024 WL 3824108 (S.D.N.Y. Aug. 14, 2024).............................. 13

*Rentos v. Oce-Office Systems*,
  1996 WL 737215 (S.D.N.Y. Dec. 24, 1996)............................................................................. 3

*Schoolcraft v. City of New York*,
  299 F.R.D. 65 (S.D.N.Y. 2014)........................................................................................... 5, 19

*Snellinger v. Federal Nat. Mortgage Assoc.*,
  2022 WL 1711696 (S.D.N.Y. May 27, 2022)........................................................................... 4

iii

*Thomas v. Town of Mamakating, New York*,
  2019 WL 1017318, (S.D.N.Y. Mar. 4, 2019),
  *aff'd*, 792 F. App'x 24 (2d Cir. 2019) .................................................................................. 6

*Tonra v. Kadmon Holdings, Inc.*,
  405 F. Supp. 3d 576 (S.D.N.Y. 2019)................................................................................. 12

*Tosha Restaurants, LLC v. New York State Div. of Hum. Rts.*,
  79 A.D.3d 1337 (3d Dep't 2010) ....................................................................................... 21

*Tucker v. Am. Intern. Group, Inc.*,
  936 F. Supp. 2d 1 (D. Conn. 2013) ............................................................................. *passim*

*United States v. City of New York*,
  631 F. Supp. 2d 419 (S.D.N.Y. 2009)................................................................................ 25

*Villalba v. Houslanger & Associates, PLLC*,
  2022 WL 900538 (E.D.N.Y. Mar. 28, 2022) ..................................................................... 20

*Wilson v. Phoenix House*,
  42 Misc. 3d 677 (Sup. Ct. Kings Cnty. 2013)................................................................... 21

*Wood v. Mike Bloomberg 2020, Inc.*,
  2024 WL 3861828 (S.D.N.Y. Aug. 19, 2024) ................................................................... 15

**Statutes & Rules**

Fed. R. Civ. P. 9(b) ................................................................................................................. 12

Fed. R. Civ. P. 12(f)......................................................................................................... *passim*

NYLL § 740 ...................................................................................................................... *passim*

Plaintiff Donald Ingrasselino ("Plaintiff" or "Ingrasselino") respectfully submits this memorandum of law in opposition to the Motion to Strike Certain Allegations in Plaintiff's First Amended Complaint ("FAC"), pursuant to Fed. R. Civ. P. 12(f), of defendants Madison Square Garden Entertainment Corp. ("MSG" or the "Company") and John Eversole ("Eversole") (together, the "Defendants").

## PRELIMINARY STATEMENT

For the purposes of this opposition, Plaintiff incorporates by reference the factual background set forth in his Memorandum of Law in Opposition to Defendants' Motion to Dismiss the First Amended Complaint (Dkt. No. 60) and states as follows:

Defendants seek to gut Plaintiff's FAC of many of its directly relevant allegations because those allegations necessarily detail negative facts concerning Defendants' actions and inactions. But the law is clear that relevant facts do not warrant striking simply because they are unfavorable to the defendants. The allegations Defendants seek to strike in the FAC are directly relevant and, in many instances, form the backbone of Plaintiff's claims of illegal actions for which he seeks recourse. Although Defendants decry that the FAC has received media coverage (which Defendants are free to address with the media publications outside this litigation), they neither allege – nor could they demonstrate – that Plaintiff had any role in how the media has characterized the substantive facts to which Defendants are objecting. Plaintiff filed this action to seek justice for the illegal wrongs committed against him. In order to plausibly state his claims, Plaintiff was required to plead the underlying facts, regardless of whether Defendants believe those facts portray them unfavorably.

Defendants seek to have it both ways with respect to the facts alleged in the FAC. In their Motion to Dismiss, Defendants repeatedly argue without merit that Ingrasselino failed to plead

specific information to allow the claims to proceed, criticizing, among other thing, the purported absence of specific names of individuals involved and contextual information. Yet here, in the subject motion, Defendants ask the Court to strike precisely those specific factual details that support the plausibility of the claims, including the identities of individuals with relevant information and the substance of Plaintiff's complaints constituting his protected activity.

The law is clear that relevant facts should not be stricken. *Bay St. Advisors, LLC v. Mahoney*, 2025 WL 2793684, at *9 (S.D.N.Y. Sept. 30, 2025) ("Courts are loathe to strike[] allegations that supply background or historical material or other matter of an evidentiary nature . . . [if they] have some bearing on the relevant issues") (internal citations and quotation marks omitted)). Defendants' Motion is particularly befuddling because the relevant allegations they target are not only relevant to Plaintiff's claims, but also plainly form the basis of many of his actionable legal claims. Instead of acknowledging and arguing under the proper standard for a motion to strike, Defendants waste everyone's time making arguments suitable in a motion for summary judgment, interpreting facts with bias (and incorrectly) in their favor without the benefit of any discovery in the case. At the same time, Plaintiff is now paradoxically forced, in responding to the subject Motion, to bring further light to the facts Defendants do not want exposed in order to demonstrate their clear relevance.

It is challenging to see how Plaintiff could present his legal claims and the basis for them without providing much of the information Defendants seek to strike. As detailed below, the allegations describe the precise conduct and practices Plaintiff observed, objected to, and reported, and the basis thereof, plain and simple. Plaintiff brought this litigation to obtain recourse for his illicit termination and the damages thrust upon him by Defendants, not to slander or prejudice them. As the facts alleged in the original Complaint show, Plaintiff attempted to settle this matter

2

before filing publicly.  Plaintiff has not contributed substance to any media coverage cited in Defendants' Motion, nor have Defendants alleged otherwise.  Indeed, the lengthiest media exposé published to date regarding the allegations in this action – which detailed independently-sourced evidence supporting Plaintiff's claims, confirmed no source (including former MSG employees) had challenged Plaintiff's allegations, and reportedly prompted investigations by New York City's Mayor and Attorney General into Plaintiff's claims as expanded by that independent reporting – expressly states "[t]hrough his attorney, Ingrasselino declined to comment in any way for this story."[1]

As the law makes clear, negative portrayals of a defendant's words and actions – an inevitable and inherently necessary feature of litigation alleging wrongdoing against an opposing party – do not warrant striking where those facts are related, or could later be determined to be related, to a plaintiff's legal claims.  Here, the provisions Defendants seek to strike are not collateral or gratuitous;  they form the backbone of Plaintiff's legal claims and should remain.

## ARGUMENT

### I.     THE APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure 12(f) permits a court to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  However, motions to strike are "a drastic and disfavored remedy" and aside from being "disfavored[, should be] granted only if there is a strong reason to do so." *Rentos v. Oce-Office Systems*, 1996 WL 737215, at *3 (S.D.N.Y. Dec. 24, 1996); *eShares, Inc. v. Talton*, 727 F. Supp. 3d 482, 498 (2d Cir. 2024) (internal quotation marks omitted).  *See also Broadrick v. Gilroy*, 786

---

[1]     Noah Shachtman & Robert Silverman, *The Shocking Secrets of Madison Square Garden's Surveillance Machine*, WIRED (Apr. 17, 2026); Pablo Torre, *"Did You Hear That, James?" We Survived MSG Surveillance... with Edward Snowden's Lawyer*, PABLO TORRE FINDS OUT (May 8, 2026).

F. Supp. 3d 487, 491 (2d Cir. 2025) (motions to strike "are generally disfavored and should be infrequently granted").

A motion to strike should be denied "unless it can be shown that no evidence in support of the allegations would be admissible." *eShares, Inc.*, 727 F.Supp.3d at 482 (quoting *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 416 (S.D.N.Y. 2012)). Allegations that are "narrative or contain[ ] generalized statements or matters of opinion" should not be stricken. *Oram v. SoulCycle LLC*, 979 F. Supp 2d 498, 512 (S.D.N.Y. 2013) (citing *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821 (S.D.N.Y. 2008)); *see also Mahoney*, 2025 WL 2793684 at *9.

To strike a portion of the FAC as "immaterial," the allegations must have "no essential or important relationship to the claim for relief." *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 225 (E.D.N.Y. 2015) (internal quotation marks omitted). *See also Snellinger v. Federal Nat. Mortgage Assoc.*, 2022 WL 1711696, at *2 (S.D.N.Y. May 27, 2022) (immateriality means the allegations lack any meaningful responsiveness or relevance to the legal issues in dispute). "Rule 12(f) should be construed strictly against striking portions of pleadings on the grounds of immateriality and if the motion is granted at all the complaint should be pruned with care." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 894 (2d Cir. 1976)). *See also id.* at 893 (courts should not "decide to strike a portion of the complaint on grounds that the material could not possibly be relevant on the sterile field of the pleadings alone.").

For an allegation to be "impertinent," it likewise must be "neither responsive nor relevant to the issues involved in the action." *Snellinger*, 2022 WL 1711696 at *2. Further, "impertinent material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues." *Brady*, 101 F. Supp. 3d at 225 (E.D.N.Y. 2015) (internal quotation marks omitted).

Scandalous allegations are those that "reflect[] unnecessarily on a defendant's moral character or uses repulsive language that detracts from the dignity of the court." *Kumaran v. Northland Energy Trading, LLC*, 762 F.Supp.3d 322, 331 (S.D.N.Y. 2025). But even scandalous statements that "offend[] the sensibilities of the objecting party" should not be stricken "if the challenged allegations describe acts or events that are relevant to the action." *Schoolcraft v. City of New York*, 299 F.R.D. 65, 67 (S.D.N.Y. 2014). *See also Tucker v. Am. Intern. Group, Inc.*, 936 F. Supp. 2d 1, 26 (D. Conn. 2013) (declining to find allegations "scandalous" and stating in regard to "negative allegations regarding Defendants business conduct[ that a] certain degree of negativity of thought and expression is inherent" in an action alleging business wrongdoing); *McCrae Associates, LLC v. Universal Capital Mgt., Inc.*, 554 F. Supp. 2d 249, 254 (D. Conn. 2008) ("Motions to strike are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation" (internal quotation marks omitted)).

In light of this heightened standard, to succeed on their motion to strike, Defendants must generally demonstrate that "(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Koeller v. Numrich Gun Parts Corporation*, 675 F. Supp. 3d 260, 273 (N.D.N.Y. 2023) (internal quotation marks omitted). Thus, in addition to showing that the allegations are immaterial, redundant, impertinent, or scandalous, Defendants must demonstrate actual prejudice for them to be stricken. *Id.* For the reasons set forth herein, Defendants have failed to make this showing and their Motion should be denied.

## II.    DEFENDANTS' MOTION TO STRIKE
## PORTIONS OF THE FAC SHOULD BE DENIED

Defendants' Motion fails at the threshold for multiple reasons.

5

*First*, Defendants' claim that vast portions of the FAC should be stricken because the allegations have drawn media attention is without support or relevance and not a legal basis under Rule 12(f).  Rather, the Court must look to the actual standard for striking the FAC, as recounted above, including whether the challenged allegations are redundant, immaterial, impertinent, or scandalous – not whether Defendants are displeased with how the allegations portray them.  Nor does the length of Plaintiff's 56-page pleading warrant striking the allegations therein.  *See Thomas v. Town of Mamakating, New York*, 2019 WL 1017318, at *1 n.1 (S.D.N.Y. Mar. 4, 2019), *aff'd*, 792 F. App'x 24 (2d Cir. 2019) (refusing to strike a complaint which "spans a whopping 105 pages with an additional 700 pages of exhibits . . . despite its length and largely unnecessary repetition").

*Second*, with at most one arguable exception, Defendants fail to satisfy their threshold requirement to identify with specificity the portions of the FAC they seek to strike.  Instead, Defendants overwhelmingly cite entire paragraphs – many of which form the sole factual basis for Plaintiff's claims – and then vaguely gesture at an allegation contained somewhere therein.  In several instances, the material Defendants appear to challenge consists of only a few phrases in an otherwise lengthy paragraph, yet Defendants nevertheless seek to strike the paragraph wholesale without articulating the precise language for removal.  "To invoke Rule 12(f), a party must identify *with specificity* the portion of a pleading that it seeks to strike, and failure to do so bars relief under the rule." *Nimmons v. U.S. Tennis Assn.*, 2019 WL 8197772, at *5 (E.D.N.Y. Jan. 7, 2019) (denying motion to strike, including where defendants moved to strike entire paragraphs of complaint).  Defendants have failed in their burden.

As detailed below, the challenged paragraphs are directly relevant and vital to Plaintiff's claims, plead essential factual predicates for his causes of action, and are neither scandalous nor

6

immaterial.  Accordingly, they should not be stricken.

### A.  Paragraphs 9-11, 76-79, and 80-82

Amongst others, Defendants seek to strike in full all four paragraphs supporting the section titled "Mr. Ingrasselino Complained About Defendants' Instructions and Related Actions Seeking to Invade the Privacy of Private Citizens Without Legitimate Business or Safety Reasons," and all three paragraphs supporting the section titled "Mr. Ingrasselino Complained About Defendants' Unlawful Use of Facial Recognition Software."  Their request essentially seeks to obliterate the basis for the whistleblower complaints Ingrasselino made concerning the unlawful conduct he opposed.  Defendants fail to identify any specific language therein they contend should be stricken.  This failure alone is dispositive, as Defendants bear the burden on a Rule 12(f) motion to identify discrete allegations that are, among other things, irrelevant and prejudicial.

Defendants' argument is further undermined by their concession that "these paragraphs are purportedly in support of Plaintiff's NYLL §740 claim."  Mot. at 6-7.  In doing so, Defendants admit the challenged allegations "directly bear[ ] on the issues in the case," which is fatal to a motion to strike.  *Gregory Wayne Designs, LLC v. Lowry*, 2024 WL 3518584, at *7 (S.D.N.Y. July 24, 2024) (internal quotation marks omitted).

Defendants further admit these paragraphs contain allegations that MSG and its employees spied on and invaded the privacy of guests and misused facial recognition software in illicit ways – precisely the illegal practices about which Plaintiff complained.  These allegations directly support Plaintiff's NYLL §740 claims by pleading the conduct he reasonably believed to be unlawful and unsafe and triggering Defendants' retaliatory response.

Unable to meet the governing standard, Defendants resort to characterizing the allegations as "aimed at harming" them but don't specifically characterize them as "salacious," "scandalous,"

7

or containing "unnecessary detail," nor do they target any specific allegedly improper language. Instead, Defendants seek the extraordinary remedy of striking entire paragraphs central to the whistleblower claims. A scandalous allegation may be stricken only if it "reflects unnecessarily on the defendant's moral character, or uses repulsive language," not merely because it portrays the defendant negatively. *Brady*, 101 F. Supp. 3d at 225. The challenged facts are narrowly tailored to detail the specific conduct Ingrasselino complained of, including what he objected to, why he believed it was unlawful, and to whom he complained – facts squarely relevant to pleading a §740 claim.

That the allegations reflect poorly on Defendants merely speaks to the nature of the duties Plaintiff alleges he was assigned and opposed. If negative facts alone justified striking, plaintiffs could never bring claims alleging wrongdoing by defendants, including whistleblower claims by definition. Courts consistently reject such argument, holding that "negative allegations regarding [a d]efendant's business conduct . . . is inherent in the nature of the action" and cannot be stricken as scandalous. *Tucker*, 936 F. Supp. 2d at 26; *see also Howard v. Rosales*, 2014 WL 969683, at *2 (S.D.N.Y. Mar. 12, 2014) (same). The law is clear that so-called scandalous facts can be stricken only if they are "irrelevant and immaterial to the issues in controversy." *Bellavia v. Orleans County*, 2023 WL 11915835, at *1 (W.D.N.Y. Jan. 13, 2023) (declining to strike allegations that are not completely unrelated to claims in the action regardless of whether they are scandalous). Here, as detailed below, the allegations go to the heart of Plaintiff's claims in detailing Defendants' business conduct and related matters.

Paragraph 9 of the FAC provides a summary of Plaintiff's complaints about directives from his supervisor, Eversole, requiring Plaintiff to unlawfully surveil individuals "who were of no threat to MSG itself, but were personal enemies of Eversole or MSG's CEO, James Dolan." The

8

paragraph explains how Ingrasselino believed these actions violated individuals' privacy and lacked any legitimate safety justification, particularly because the targets were individuals engaging in conduct that would not warrant such intrusion.   Paragraph 76 includes similar discussions and expands on these allegations, providing additional detail regarding the substance of Plaintiff's complaints on point.  Should the paragraphs be stricken, absent amendment of the FAC, Plaintiff would effectively be deprived of the factual basis for part of his §740 whistleblower claim.

Similarly, Paragraphs 10 and 77 of the FAC detail other whistleblower complaints Ingrasselino made, including what he complained of, the frequency of his complaints, the individuals to whom he complained within MSG, and the reasons for his complaints – as related, most notably, to MSG's failure to properly safeguard sensitive personal information collected on individuals through invasive surveillance practices.   Paragraph 77 further details that when Plaintiff questioned these assignments, he was yelled at by Eversole in response, told to stop asking questions, and instructed to obey orders – facts relevant to both protected activity and retaliation. Defendants have no basis for striking the entire claims underlying Plaintiff's whistleblower complaints and allegation that he was terminated for making such complaints.

Paragraph 77 also identifies multiple high-level MSG employees Ingrasselino complained to about the privacy concerns that Defendants take issue with in this Motion.

Defendants seek to strike paragraphs 78 and 79 which address "an example of Eversole's directives that Ingrasselino believed to be far reaching, unethical and illegal" – specifically, Eversole's directive to Plaintiff and two other employees to secretly tape phone conversations and eavesdrop on a litigation complainant and alleged victim of sexual harassment by MSG's CEO. Paragraph 79 details the steps taken by Plaintiff's colleague to effectuate that directive,

9

Ingrasselino's observation thereof, and his refusal to participate in these actions which he believed to be unlawful. NYLL §740 protects Plaintiff's alleged retaliation when he "objects to, or refuses to participate in any such activity, policy or practice."

While Defendants blatantly misrepresent the FAC by stating (without relevance to the motion standard) that "Plaintiff does not allege that he raised any complaint or objection" (Mot. at 13), the FAC details several whistleblower complaints and objections with respect to the allegations in these paragraphs. *See* FAC ¶77 (exemplifying how and why "Ingrasselino consistently and repeatedly voiced his concerns" to Eversole and senior leadership concerning his being "ordered to conduct what he believed to be unethical and overreaching surveillance" of individuals); *id.* ¶79 (alleging that upon being instructed to secretly record the alleged sexual harassment victim, "Ingrasselino informed Eversole that they needed to be wary of potential witness tampering," only to be silenced by Eversole). Any dispute over whether Plaintiff's warnings or objections occurred (either of which may form the basis of a §740 claim), is a factual issue unripe for adjudication and irrelevant to the subject motion. The allegations are necessary to Ingrasselino's whistleblower claims, for which he seeks damages and justice, and are not pled solely to inflame or harm Eversole.

Paragraphs 11, 80, and 81 detail Plaintiff's whistleblower complaints alleging he "complained about the unlawful use of MSG's facial recognition software." FAC ¶ 11. The three paragraphs detail when, how, and why Ingrasselino complained regarding what he believed to be an illegal discriminatory use of the software, and further describes MSG's after-the-fact attempt to construct a false narrative to legitimize the unlawful practices. The paragraphs include supporting facts explaining why Plaintiff believed the use was discriminatory against protected classes, and thus illegal, including MSG's failure to implement operating policies and procedures

10

consistent with its claimed safety justification and Defendants' refusal to respond to Ingrasselino's repeated complaints and inquiries.  These allegations further support his complaints and efforts to refocus the facial recognition program toward legitimate public-safety purposes rather than discriminatory targeting.  Paragraphs 11 and 82 detail why Plaintiff thought the software use was illegal, highlighting facts demonstrating that MSG used the software to target individuals who posed no safety risk or for discriminatory reasons.  Contrary to Defendants' claim, the FAC repeatedly alleges Plaintiff complained about and questioned the software misuse, squarely constituting protected activity under NYLL §740.  FAC ¶¶ 11, 80-82, 138.

As Defendants themselves recount in their Motion, Paragraphs 11 and 82 detail how MSG higher-up personnel closely monitored and used facial recognition software to ban a transgender woman named "Mia" based on her gender identity rather than any legitimate security concern.[2] Paragraph 82 contrasts this distinguished treatment of Mia with MSG's tolerance and acceptance of others who socialized with Knicks players despite having histories of engaging in criminal activity – facts that reinforced Ingrasselino's belief that the software was being used discriminatorily and unlawfully, affirming the basis of his complaints.  Plaintiff is entitled, and indeed required, to plead facts as these to demonstrate the plausibility of his reasonable belief that Defendants' conduct was unlawful.  *See Mitchell v. New York City Dept. of Educ.*, 2025 WL 978366, at *2 (2d Cir. Mar. 31, 2025).

Defendants' reliance on *Gross v. Madison Square Garden Entertainment Corp.* is misplaced.  *Gross* did not involve a whistleblower retaliation claim and did not address whether an employee could reasonably believe MSG's use of facial recognition technology was unlawful, discriminatory, or unsafe.  Rather, *Gross* addressed whether consumer plaintiffs had stated direct

---

[2]     Numerous media outlets have recently reported that this mistreatment has been independently verified through documentary evidence.

claims under the N.Y.C. Biometrics Law and unjust enrichment based on MSG's use of biometric data to enforce its attorney-ban policy. *See generally Gross v. Madison Square Garden Ent. Corp.*, 2024 WL 103235, (S.D.N.Y. Jan. 9, 2024), *adopted as modified*, 2024 WL 2055343 (S.D.N.Y. May 7, 2024). The dismissal of those direct claims does not establish that Plaintiff's complaints were unreasonable, nor does it render irrelevant allegations explaining why Plaintiff believed MSG's facial-recognition practices were being misused for discriminatory and non-safety-related purposes. At most, *Gross* held that the particular plaintiffs there failed to plead viable claims under the specific statutes and theories asserted; it does not support striking allegations bearing directly on Plaintiff's protected activity, reasonable belief, and Defendants' retaliatory motive.

Further, rather than seek to focus on the standard for a motion to strike (*i.e.*, potential relevance of the statements at issue), Defendants argue that the paragraphs should be stricken because they allegedly fail to meet a doubly-inapplicable FRCP 9(b) motion to dismiss standard. Even if the subject motion were a motion to dismiss, the argument would still be wholly inapposite as the heightened pleading standard is not applicable to the FAC. *See* Opposition to Motion to Dismiss (Dkt. No. 60) at 23.

Defendants also misrepresent Plaintiff's allegations which do allege the recipients of many of his complaints, why he believed the actions complained of to be unlawful, and the types of laws that he believed to be violated (or public safety concerns, as applicable). Allegations specifying the law, rule or regulation believed to have been violated are not required, and certainly not detrimental on a motion to strike at this stage. *See Tonra v. Kadmon Holdings, Inc.*, 405 F. Supp. 3d 576, 586 (S.D.N.Y. 2019) ("at the pleadings stage of the case, the complaint 'need not specify the actual law, rule or regulation violated'") (internal citations omitted)). Nor need Plaintiff ever prove that a law was violated – merely that he reasonably believed it to be the case. *See Rackley*

*v. Constellis, LLC*, 2024 WL 3498718, at \*26 (S.D.N.Y. June 17, 2024), *R&R adopted as modified*, 2024 WL 3824108 (S.D.N.Y. Aug. 14, 2024).  Regardless, numerous laws prohibit the conduct of which Ingrasselino objected and complained, as he will demonstrate at such time as may actually be required.

Defendants cannot meet their burden where, as here, the challenged allegations are "inherent in the nature of the action" (*Tucker*, 936 F. Supp. 2d at 26), "evidence in support of the allegations would be admissible . . . [and have] bearing on the issues in the case" (*Koeller*, 675 F. Supp. 3d at 273).  Accordingly, Defendants' motion to strike these paragraphs should be denied in its entirety.

## B.  Paragraphs 12, 83-85, 101, and 138

As Defendants acknowledge in their Motion, these paragraphs relate directly to Plaintiff's §740 claim, based on his complaints concerning MSG's use of weapons detection technology supplied by Xtract One Technologies at its venues.  Specifically, they allege Ingrasselino uncovered that the products failed to detect unauthorized objects, such as weapons, approximately 70% of the time, and that when he raised these concerns with Eversole, he was instructed to refrain from discussing his findings with anyone else.  The FAC alleges Plaintiff's complaints about the public-safety risks posed by this defective technology resulted in his termination.

Plaintiff alleges he raised these concerns because he believed the continued use of the Xtract One system, given its failure rate, posed a substantial and specific danger to the public attending events at MSG venues.  FAC ¶84.  While Defendants make much of the allegation that Defendants used old technology to compensate for the faulty Xtract One system (FAC ¶¶84-85), this is entirely irrelevant to the basis for Ingrasselino's complaints that the Xtract One system use posed a danger to the public or that he was retaliated against by Defendants for making that

complaint (in addition to being silenced by Eversole).  Further, if somehow deemed relevant to Plaintiff's claims, discovery is needed to ascertain whether, following Plaintiff's actionable complaints, MSG's use of Xtract One and its old technology together while at the same time continuing to increase use of the Xtract One faulty system allowed Plaintiff to reasonably believe continued danger to the public rather than reliance on Defendants' "say so" pre-discovery.

Plaintiff further alleges he complained that the decision to continue using the Xtract One system was unlawful because it was influenced by conflicts of interest between MSG executives, including Eversole, and Xtract One. *Id.* ¶¶ 83-85.  Defendants do not clearly articulate, as required, whether they seek to strike all of the challenged paragraphs in their entirety or only the unspecified portions therein related to the alleged conflict of interest.  The former would improperly eliminate the entirety of Ingrasselino's whistleblower claim based on his Xtract One Technologies-related complaints altogether.  The latter would target only the provisions supporting the second set of claims, meaning the allegations that Eversole was an investor in Xtract One and that another MSG Senior Vice President (named in some of the relevant paragraphs) served on the Xtract One Advisory Board.

The allegations concerning the conflict of interest are pertinent to Plaintiff's claims.  They provide the alleged factual basis for why Eversole responded negatively to Ingrasselino's complaints of illegality – namely, because those complaints threatened the financial interests of Eversole and his colleague – and why Ingrasselino was terminated for making the complaint.  FAC ¶¶83-85.  These facts provide required plausibility for Plaintiff's claims of wrongful action, including retaliation, by Defendants in response to his complaints.  Contrary to Defendants' assertion, such allegations that explain motive and retaliation are not "scandalous" because they do not reflect "unnecessarily on a defendant's moral character," but instead consist of "negative

14

allegations regarding Defendants' business conduct . . . [which is] inherent in the nature of this action." *Tucker*, 936 F. Supp. 2d at 26.

Defendants reliance on *Wood v. Mike Bloomberg 2020, Inc.*, 2024 WL 3861828, at *3 (S.D.N.Y. Aug. 19, 2024) is misplaced.  In that case, the court struck allegations in an amended complaint that related solely to causes of action that had already been dismissed from the case. *See id.* at **2-3.  Here, in contrast and as detailed above, the challenged facts are directly relevant and necessary to pleading Ingrasselino's active causes of action.

For the same reasons, contrary to Defendants' claims, Paragraph 101 sets forth nothing that could be construed as improper or scandalous in alleging that the MSG SVP worked for Xtract One.  Even if his work could be construed negatively, the allegation is necessary to counter Defendants' false claims (as alleged in the FAC (¶¶2, 93, 99, 101) and by Defendants in their Motion to Dismiss (at 10-11, 17-19)) that Ingrasselino was terminated for performing work for a third-party while employed by MSG.  Defendants cannot both dispute these factual allegations in their papers, while simultaneously arguing that Plaintiff should be barred from pleading them.  The allegation exemplifies the contrast between the treatment of other employees who were known to perform work for third-parties while employed at MSG, yet were not terminated, and Ingrasselino, who was terminated under these false pretenses despite having never actually performed any such work.

Finally, Defendants also seek to redact the name of the MSG Senior Vice President whom Plaintiff alleges served on the Board of Xtract One and advocated for MSG to continue using the defective and dangerous Xtract One technology to protect his own financial interests.  FAC ¶¶83-84.  Because the allegation is relevant, material, and not scandalous as it relates to Plaintiff's whistleblower claim, the name should not be stricken.  *See Dignitti v. Brattleboro Retreat*, 2020

15

WL 4432945, at *2 (D. Vt. July 31, 2020) (denying motion to strike the name of non-party employee discussed in the complaint and finding the individual's identity was material to demonstrating that a reason for plaintiff's termination was pretextual and the allegations regarding the individual's role were neither sufficiently "scandalous" nor "impertinent" to warrant striking under Rule 12(f) because "Defendant has not shown that the inclusion of the male nurse's name serves 'no purpose except to inflame the reader' and will cause prejudice to Defendant in this litigation" (citing *Oram*, 979 F. Supp. 2d at 512); *see also Kim v. BTG Pactual Asset Mgt. US, LLC*, 2022 WL 4115955, at *2 (S.D.N.Y. Sept. 9, 2022) (denying defendants' request to redact the names of the non-parties referenced in the complaint and holding that a complaint "is plainly a judicial document . . . entitled to a strong presumption of access") (internal quotation marks omitted)); *Lytle v. JPMorgan Chase*, 810 F. Supp. 2d 616, 626 (S.D.N.Y. 2011) (denying defendants' request to redact employee and employer third-party names in discrimination case).[3]

---

[3]    In footnote nine in the Motion (at 10), Defendants also ask to strike the names of MSG employees and executives in allegations contained in Paragraphs 9, 11, 13, 14, 15, 54, 62, 76, 78-80, 83-86, and 89-90 that Defendants allege are peripheral to Plaintiff's claims. Defendants provide no further context or support for this request and have thus failed in their burden in seeking to strike them. The individuals are directly relevant to the allegations underlying Plaintiff's causes of action and thus striking is not warranted. *See Kim*, 2022 WL 4115955, at *2; *see also Curtis v. George J. Meyer Malt & Grain Corp.*, 6 F.R.D. 444, 449 (W.D.N.Y. 1947) (denying motion to strike allegations concerning defendant's alleged "participation, collaboration and conspiracy" with non-parties where the allegations did not fall within Rule 12(f)'s categories).

For example, Paragraphs 9 and 76 provide the name of MSG's CEO, for whose benefit Plaintiff was tasked with conducting surveillance – of his personal enemies – and about which Plaintiff complained of illegality and was terminated for doing so.

Paragraphs 14, 86, and 89 list the names of female employees that Ingrasselino alleges Defendant Eversole discriminated against based on their sex and for whom Plaintiff sought protection through his whistleblower complaints. As the court in *Dignitti* determined, there is no basis to strike the names of sexual harassment victims related to plaintiff's claims. 2020 WL 4432945 at **1-2.

Paragraph 89 also details the name of the HR employee to whom Ingrasselino complained about issues related to the discrimination. Paragraphs 54 and 62 contain the names of Plaintiff's colleagues who form the basis of facts underlying an incident, namely the assault of a co-worker, that were put in an email Eversole chastised Ingrasselino for not seeing before his work day commenced and that, despite requiring no action, caused Eversole to tell Ingrasselino "If you are too old to handle this level of work, I will fire you immediately for this and find someone else who is capable" (FAC ¶56), which is relevant to Ingrasselino's age discrimination claim. In addition, the paragraphs reference Plaintiff's younger colleague whose name Defendants seek to strike as irrelevant. However, Defendants

C. **Paragraphs 15 and 90**

These paragraphs concern the allegations that Eversole restricted the use of K-9 dogs (used for bomb sniffing and other security measures) from MSG's venues because he was aware of MSG's CEO's dislike for them. As alleged therein, this restriction raised significant public safety and security concerns, as well as possible violations of practices contractually required by certain sports organizations, which Plaintiff opposed and believed to be unlawful. Defendants' assertion that the paragraphs should be stricken because the claims are speculative is without merit. Plaintiff has drawn a direct link between the exclusion of police dogs, the known reason for that exclusion – the CEO's detest of them and the decision maker's (Eversole) knowledge of that fact – and the resulting violations of safety and law. The soundness of the claim is not ripe for dismissal or striking at this stage.

Defendants also incorrectly argue that the allegations should be stricken because Plaintiff did not complain about the illegality of these actions. That argument is both inappropriate for this motion and directly refuted by Paragraphs 15 and 90, which make clear that Plaintiff opposed the practice of withholding K-9 dogs based on public-safety concerns and violations of mandated practices by sport organizations with whom MSG had partnerships. This is all that is required

_____

neglect the fact that Plaintiff has alleged this colleague, unlike Plaintiff, was not disciplined for his conduct in relation to this incident despite his failures, therefore serving a necessary role in a comparative treatment analysis, as Plaintiff alleges the disparate discipline was based on age, underlying his discrimination claim.

Defendants also seek to strike the name of the Senior Vice President to whom Ingrasselino directed his inquiry regarding this distinguished treatment of him and the younger employee in Paragraph 62 despite, in Defendants' Motion to Dismiss, seeking to dismiss the FAC due to instances where Ingrasselino purportedly failed to detail the identity of individuals to whom he complained. Paragraphs 76 and 77 identify MSG's CEO and another employee who, along with Plaintiff, was tasked with secretly taping conversations over telephone of a woman alleging she was sexually harassed by MSG's CEO. These facts are wholly relevant to Ingrasselino's complaints that the directive was illegal, that he refused to participate in this unlawful activity, and that he was terminated for doing so. Paragraphs 11 and 80 again mention MSG's CEO in connection with his related involvement underlying Ingrasselino's whistleblower complaints about the distriminatory use of MSG's facial recognition technology. Additionally, contrary to Defendants' claim, as Plaintiff already notified Defendants in Plaintiff's prior Opposition to Defendants' Motion to Strike, Paragraph 13 contains no non-party names.

under NYLL §740(2) (retaliation in response to objection to a policy, practice or activity constitutes violation of law). To the extent Defendants dispute whether Plaintiff's objections constituted protected activity, that is a merits issue that is not ripe at this pleading stage nor appropriate on a motion to strike. *eShares, Inc.*, 727 F. Supp. 3d at 498 (courts should not "decide to strike a portion of the complaint – on the grounds that the material could not possibly be relevant – on the sterile field of the pleadings alone" (internal quotation marks omitted)). Defendants further contend – without citation or logic – that the allegations about withholding K-9 dogs from MSG venues are "scandalous" because they involve "views regarding animals," a claim that is nonsensical. Regardless, the allegations are wholly relevant and plainly concern business and security decisions affecting public safety and form a direct basis for Plaintiff's whistleblower claims; they are therefore under the applicable legal standard neither scandalous not subject to striking.

Further, while Defendants argue that Plaintiff could not have reasonably believed the restricted use of K-9 dogs posed a substantial and specific danger – although completely irrelevant to the subject motion's relevance standard – it is unclear why else he would have raised objection to that policy, and discovery is essential to making a determination as to whether Plaintiff's belief was objectively reasonable. Discovery will show that K-9s are among the most effective bomb-detection tools available, and it is objectively reasonable for Plaintiff to oppose efforts to exclude them from venues where up to 20,000 people may gather for sporting events and entertainment, given his belief that their absence could pose a substantial and specific danger that bombs would go undetected and cause public harm.

### D. Paragraphs 16, 91, and 92

Defendants seek to strike these paragraphs on the ground that they concern complaints

18

Ingrasselino allegedly withheld from his supervisors.  But the FAC alleges that Plaintiff opposed the practices addressed in these paragraphs, including Eversole's directions that Plaintiff falsify his hours worked to HR, if asked, and that he and others track MSG employees' personal email accounts to monitor them. These allegations are relevant because, as reflected in Paragraph 16, which Defendants also seek to strike, they demonstrate Eversole's "wanton disregard of legal and ethical obligations and the general environment of noncompliance that permeated Mr. Ingrasselino's employment for Defendants."  In pleading these unlawful directives, Plaintiff provides context for his other claims of similarly unlawful and unethical behavior of which he did complain and object, and for which he alleges he was retaliated against.  Furthermore, Plaintiff's allegations that he believed reporting the wrongs alleged in these paragraphs would have been futile supports the negative responses he received when he did complain about other wrongful behavior by Eversole, which is relevant to the causal link between Plaintiff's protected activity and Defendants' retaliation.

Accordingly, for the reasons articulated herein, Paragraphs 16, 91, and 92 support Plaintiff's actionable whistleblower claims and do not constitute personal attacks; rather, they describe Defendants' business conduct and workplace practices.  The allegations therefore "have some bearing on the relevant issues," and "describe acts or events that are relevant to the action." *Schoolcraft*, 299 F.R.D. at 67; *Tucker*, 936 F. Supp. 2d at 26.  As such, striking is unwarranted.

### E.  Paragraph 41

Defendants seek to strike Paragraph 41 of the FAC, or some unspecified portion thereof, which provides factual support for Plaintiff's disability discrimination and failure-to-accommodate claims.  Specifically, Defendants take issue with allegations detailing Eversole's pattern and practice of refusing to accommodate other employees' disability-related

accommodation requests, including his refusal to permit an employee to work from home "to care for his sick child," and Eversole's decision to "phase out" that exemplary employee based on his personal policy against remote work, notwithstanding MSG's policy allowing it. FAC. ¶ 41.

These allegations are not scandalous and directly support Plaintiff's claims that: (a) Eversole refused to let him take a sick day to attend an endocrinologist appointment for his disability and to address his face rash (FAC ¶¶36-38, 43); (b) Eversole openly mocked Plaintiff's disability through his words and actions (*id.* ¶39); (c) Plaintiff suffered damages as a result of Defendants' discriminatory actions, including exacerbation of his medical condition, a related stress-induced rash stemming from Eversole's conduct, and his avoidance of medical treatment due to fear of retaliation (*id.* ¶42); and (d) like the other employee described in Paragraph 41, Plaintiff's employment was terminated as a result of disability-based discrimination (*id.* ¶¶105-34). Contrary to Defendants' assertion, these allegations concern business decisions and decision-maker conduct that are plainly relevant to Plaintiff's claims and serve a clear pleading purpose.

Courts do not support striking allegations concerning a defendant's similar wrongful treatment of others because "similar acts can be probative of a defendant's state of mind." *Hall v. Paine, Webber, Jackson & Curtis, Inc.*, 1984 WL 812, at *3 (S.D.N.Y. Aug. 27, 1984); *see also Villalba v. Houslanger & Associates, PLLC*, 2022 WL 900538, at **23-24 (E.D.N.Y. Mar. 28, 2022) (declining to strike allegations identifying other instances where the defendant allegedly engaged in similar misconduct toward others). While Defendants dispute Plaintiff's allegation that Eversole's treatment of the other employee was discriminatory, that factual dispute requires discovery. It provides no basis for striking relevant allegations at the pleading stage, particularly where the Rule 12(f) inquiry turns on relevance and prejudice, not Defendants' preferred

20

interpretation of disputed facts.  For these reasons, Paragraph 41 should not be stricken.

### F.    Paragraph 43

There is no merit to Defendants' request to strike this paragraph, or some unspecified portion thereof, based on their incorrect assertion that it is irrelevant and not actionable under the law.  Paragraph 43 addresses Eversole's refusal to accommodate Plaintiff's request to take a day off to address his face rash, which manifested due to "work-related stress caused by Eversole's unlawful actions."  Defendants assert – without any legal support, contrary to clear law, and despite having been corrected by Plaintiff in prior motion practice – that a face rash is not an actionable disability under the New York State Human Rights Law ("NYSHRL") or the New York City Human Rights Law ("NYCHRL").  That assertion is incorrect.

Actionable disabilities under these laws are far broader than under their federal counterpart. The NYSHRL "covers . . . merely diagnosable medical anomalies which impair bodily integrity and thus may lead to more serious conditions in the future."  *Doe v. Bell*, 194 Misc. 2d 774, 779 (Sup. Ct. N.Y. Cnty. 2003).  Significantly, an individual can be "disabled" under the NYSHRL if their impairment is demonstrable by medically accepted techniques, without requiring that the impairment substantially limit normal activities.  *See Wilson v. Phoenix House*, 42 Misc. 3d 677, 697 (Sup. Ct. Kings Cnty. 2013).  Skin conditions have repeatedly been recognized as disabilities under the applicable law.  *See Tosha Restaurants, LLC v. New York State Div. of Hum. Rts.*, 79 A.D.3d 1337, 1342 (3d Dep't 2010) (employee's psoriasis and cellulitis affecting the back of his head sufficient to establish a prima facie case of disability discrimination); *Cooney v. City of N.Y. Dept. of Sanitation*, 127 A.D.3d. 629, 629-30 (1st Dep't 2015) (job applicant's psoriasis condition on his hands was sufficient to allege disability discrimination).

Regardless, Paragraph 43 separately alleges that Plaintiff's rash was caused by Defendants'

illegal treatment, making it wholly relevant to Plaintiff's emotional distress and related monetary damages.   The allegation further supports Defendants' broader pattern of disability-based mistreatment, including their treatment of Plaintiff's diabetes and Eversole's discriminatory state of mind.   Under the governing standard, Paragraph 43, or any portion thereof, should not be stricken.

### G. Paragraphs 8, 48, 71, 75 and 99

Defendants arguments seeking to strike all or portions of these paragraphs – again, without clearly identifying specific language at issue – are confusing, nonsensical, and rest on blatant misrepresentations of the FAC.   Defendants appear to have narrowed their challenge from their prior motion to strike to allegations concerning Eversole's carrying of a firearm.   But even that scope is unclear, as Defendants also seek to strike Paragraph 71, or a portion thereof, even though it does not reference Eversole carrying a firearm.

Defendants' argument that allegations concerning Eversole's carrying of a firearm are inflammatory is false and irrelevant to the applicable standard.   The FAC expressly pleads the relevance of those allegations to Plaintiff's claims, stating that "Ingrasselino further complained about Eversole open carrying his own gun while at work, which in of itself Ingrasselino believes to pose a separate violation of law since Eversole did not, on information and belief, have a New York license to carry a concealed weapon or to openly carry a firearm, which is a legal requirement wholly outside of any protections warranted by the Law Enforcement Officers Safety Act" ("LEOSA").  FAC ¶8; *see also id.* ¶74 (basis for illegality view); *id.* ¶74 (detailing that Plaintiff objected to Eversole "carrying a firearm in acting in an enforcement capacity for MSG's benefit," "voiced his opposition to the dangerous practice," requested standards and guidelines on point,

22

and raised the issue with other employees).

Defendants (for the second time, having done so in their prior incantation of the Motion) blatantly misrepresent the FAC by asserting (Mot. at 12-14) it alleges Eversole was allowed to carry a firearm under federal law.   The FAC alleges the opposite: Plaintiff believed Eversole lacked the separate authorization required under New York law and that LEOSA did not authorize Eversole to carry a firearm in an enforcement capacity on behalf of MSG.  FAC ¶¶8, 74.  Plaintiff's belief was objectively reasonable.  As courts have recognized, LEOSA is limited in scope and was intended to create "a mechanism by which [former] law enforcement officers may travel interstate with a firearm" (*Hotaling v. Martuscello*, 2025 WL 2607661, at *4 (N.D.N.Y. Sept. 9, 2025)) and to "exempt traveling officers from state laws prohibiting the carrying of concealed weapons" (*Burban v. City of Neptune Beach, Fla.*, 2018 WL 1493177, at *7 (M.D. Fla. Mar. 27, 2018), *aff'd*, 920 F.3d 1274 (11th Cir. 2019)) for qualifying individuals who possess the required identification. LEOSA does not require all states to issue concealed carry permits to any retired law enforcement officer, nor supersede state law license requirements, nor allot private enforcement authority.  *Id.*

The challenged allegations are integral to Plaintiff's whistleblower complaints about Eversole's carrying of a weapon and explain both the basis for his complaints and the safety concerns that motivated them.  The fact that Plaintiff and other employees feared Eversole's unlawful firearm possession further underscores the seriousness of the conduct complained of and is plainly relevant.

Further, the reference in Paragraph 48 to Eversole carrying a firearm in the office in an intimidating manner is also relevant to Plaintiff's allegations that he was "demeaned, yelled at, and insulted by Eversole" as part of his age and disability discrimination claims, and is sufficiently intertwined with his emotional distress damages.  Similarly, Paragraph 99's allegation that

23

Eversole brandished his firearm while terminating Plaintiff for the purpose of intimidating him, as well as Eversole's intent in delivering the pretextual notice, is relevant. None of these allegations should be stricken.

Defendants appear to have abandoned the argument from their prior motion to strike allegations concerning Eversole's direction and encouragement of other MSG employees to improperly and illegally carry firearms. Yet Defendants confusingly continue to seek to strike paragraphs that concern those allegations, not Eversole's own carrying of a firearm. To the extent Defendants still seek to strike these claims, their request is equally unwarranted. Those allegations directly support Plaintiff's whistleblower claim that he "complained about his direct reports being armed on behalf of MSG and on Company premises, which Eversole directed, as this was not only illegal, but also raised safety concerns due to potential escalation resulting from brandishing such weapons." FAC ¶8; *see also id.* ¶71 (detailing how and why Plaintiff feared for the safety of his direct reports as a result of their mandated unlawful arming about which he complained) and ¶75 (detailing aspects of his complaints). As discussed above, although irrelevant to the subject motion standard, Plaintiff had a sound basis to believe that LEOSA did not authorize employees to carry firearms with any enforcement authority on behalf of a private entity (MSG). FAC ¶¶71-74. *See Hotaling* and *Burban* (discussed supra).

## H. Paragraphs 87

Defendants seek to strike the first two sentences of this paragraph which allege that Eversole told Plaintiff he wanted to fire Plaintiff's predecessor for mentoring female Intelligence team employees, but did not do so "because he's Black," and that Plaintiff's predecessor independently confirmed this account to Plaintiff. FAC ¶87. Unlike their other requests to strike paragraphs, Defendants appear to limit their request to only these two sentences. The request

24

should be denied.

The allegations and quoted statement directly support Plaintiff's claims that Eversole treated employees differently based on protected characteristics, including his discriminatory treatment of female employees, about which Plaintiff complained and for which he alleged he was retaliated against as part of his whistleblower claim. It is common and permissible in discrimination cases for plaintiffs to rely on "testimony from protected class members detailing specific instances of discrimination" to establish a practice of intentional discrimination. *United States v. City of New York*, 631 F. Supp. 2d 419, 425 (S.D.N.Y. 2009); *see also E.E.O.C. v. Bloomberg L.P.*, 778 F. Supp. 2d 458, 477 (S.D.N.Y. 2011) (reflecting that establishing a "standard operating procedure of discrimination" may be part and parcel of discrimination lawsuits) (internal citations omitted)). Defendants' case citations are distinguishable where, unlike there, the challenged allegations here are relevant and have some bearing on Plaintiff's claims. Eversole's own statement explains his differential treatment of Plaintiff's predecessor, who allegedly engaged in similar conduct as Plaintiff in supporting female employees, but was treated differently based on his race.

Further, the full allegations are necessary to explain why Plaintiff's predecessor did not suffer the same retaliatory treatment as Plaintiff, who alleges he was terminated for opposing gender-based discrimination involving the same female team members. Eversole's statement supplies that explanation and support Plaintiff's allegations concerning Eversole's discriminatory state of mind and the broader discriminatory environment in which Plaintiff worked. As such, because the comment and discussion thereof are relevant to Plaintiff's claims that Eversole discriminated against women on the basis of gender, and against Plaintiff on the basis of disability

25

and age (in addition to retaliating against him), it should not be stricken.

### I.   Paragraphs 86, 88, 89, 13 and 14

Wholly without basis, Defendants appear to seek to strike the entirety of these paragraphs, which collectively plead the factual foundation of Plaintiff's whistleblower claims concerning Defendant Eversole's discriminatory treatment of female employees.  Paragraph 86 begins by alleging that "Ingrasselino also complained about Eversole's unlawful discrimination against women employed by MSG," and then continues to detail how he witnessed Eversole target two female members of his team, instruct Plaintiff not to interact with them, refer to them as "toxic and crazy" and "crazy bitches," and make similar remarks in the presence of others.  FAC ¶86. Paragraph 13 similarly alleges that Plaintiff complained to Eversole and others about Eversole's discrimination of women, including his use of such crude gender-related language.  FAC ¶13.

Paragraph 86 further provides specific evidence of discriminatory animus towards women that Plaintiff opposed and complained about, underlying and fully necessary and relevant to his whistleblower claim.  Paragraph 88 continues this narrative by alleging how upset the women were by Eversole's mistreatment of them; reiterating Eversole's discriminatory instructions to Plaintiff pertaining to his interactions with these women, along with new discriminatory directives he initiated; alleging that "Ingrasselino again voiced his concerns to Company leadership and HR" and naming the particular higher-ups to whom Plaintiff complained "about the targeting of these women, which he indicated could cause legal and liability issues"; and further detailing the response Plaintiff received to his complaints in being told to "keep quiet and not get involved or that he would be fired."  FAC ¶88.  All of these allegations – and it is unclear what subset if not the entirety of which Defendants seek to strike – are wholly relevant and form the basis of Plaintiff's complaints underlying his whistleblower claim.  They provide plausibility and detail

26

the basis for his reasonable belief and complaints that unlawful discrimination was occurring, and further support the damages Plaintiff claims under the associated whistleblower cause of action – retaliation in the form of being terminated for complaining.

Paragraphs 14 and 89 also address Plaintiff's reaction to the sexualization of female employees, including a specific example involving one of Plaintiff's female subordinates. As detailed therein (following and preceding a recounting of the unlawful behavior by senior personnel), Ingrasselino approached Eversole with the intent of taking actions to avoid the sexualization of his female subordinate through practical scheduling changes, and "informed Eversole that he believes [she] was being unfairly singled out by him" and she "had concerns about [Eversole's] inappropriate treatment of her." The Paragraphs further detail how Ingrasselino's attempts to stop the discrimination and report it were dismissed, and that Plaintiff raised his complaints to specific individuals in HR including a week prior to his termination. FAC ¶¶14, 89.

Defendants again mischaracterize the FAC by suggesting Plaintiff's allegations are undermined because he also discussed this mistreatment with his subordinates. That allegation does not negate, let alone undermine, Plaintiff's pleaded complaints to four senior personnel as named and detailed in the FAC. *Id.* ¶¶88-89. Defendants' claim that Plaintiff's complaints about Eversole's mistreatment of women could not have been gender-based because Plaintiff also complained about his own mistreatment (based on age and disability, as well as based on retaliation in response to his whistleblower claims) is unsupported, illogical, and preposterous. Certainly, an individual can discriminate against women based on their gender while also discriminating against a man on the basis of age or disability, or retaliating against him for protected complaints.

Defendants also mystifyingly and without legal support argue that the FAC is deficient because it does not identify the precise location where Plaintiff made each complaint and/or quote

his exact words, therefore warranting striking. But, aside from being inappropriate on a motion to strike, that argument fails on its own terms. New York whistleblower claims are governed by a notice-pleading standard and do not require Plaintiff to plead his protected complaints with particularity. In any event, even if Defendants believe Plaintiff's allegations are insufficient – they are not – that argument would be properly raised in a motion to dismiss, not a motion to strike. There is no basis to excise well-pleaded allegations directly related to Plaintiff's protected activity and retaliation claims, as detailed above.

Accordingly, Defendants' motion to strike these paragraphs should be denied in its entirety.

## CONCLUSION

For the reasons set forth above, Defendants' Motion should be denied. In the alternative, Plaintiff should be granted leave to amend the FAC to address any deficiencies identified by the Court.

Dated: New York, New York
May 18, 2026

REAVIS PAGE JUMP LLP

By:    */s/ Ethan M. Krasnoo*
Ethan M. Krasnoo, Esq.
Alice K. Jump, Esq.
Hannah R. Brefeld, Esq.
41 Madison Avenue, 41st Floor
New York, New York 10010
Tel.: (212) 763-4100
EKrasnoo@rpjlaw.com
AJump@rpjlaw.com
HBrefeld@rpjlaw.com

*Attorneys for Plaintiff Donald Ingrasselino*

28

**ATTORNEY CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 7.1**

I, Ethan M. Krasnoo, an attorney duly admitted to practice law before the United States District Court for the Southern District of New York, hereby certify that this memorandum of law complies with the word count limitations as set forth in Rule 7.1(c) of the Local Rules of the United States District Court for the Southern District of New York.  In determining compliance, I relied on the word count function of the word-processing system used to prepare this document.  The total number of words in this memorandum of law, exclusive of the table of contents, table of authorities, caption, and signature block is 8,715 words.

Dated: May 18, 2026
　　　　New York, New York

　*/s/ Ethan M. Krasnoo*　
　Ethan M. Krasnoo
